**FILED**

SEP 2 0 2007

Antolin Andrew Marks
1623 E. J. Street, Suite 5
Tacoma, Washington 98421

Case: 1:07-cv-01660
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/20/2007
Description: CIVIL RIGHTS-NON. EMPLOY.

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF COLUMBIA

Antolin Andrew Marks,

Plaintiff,

vs

John P. Torres, Director of ICE

Jack Bennett, AFOD

Neil Clark, Field Office Director

Defendant

Case No.: _____

**SUIT FOR AN INJUNCTION
FOR: DENIAL OF DUE PROCESS
GUARANTEED BY THE FIFTH
AMENDMENT AND UNDER THE PRIVACY
ACT AND THE FOIA**

**FACTS**

**WHAT MAKES THIS MATTER EVEN WORSE, IS THE FACT THAT THE DEFENDANTS HAS POSSESSION OF A MONEY ORDER IN THE AMOUNT OF 100. THAT THE PLAINTIFF HAS ASKED THAT THEY UTILIZE FOR DEFRAYING THE COST OF THE MAILING OF THE LETTERS AND THEY HAVE REFUSED TO ALLOW THE POSTAGE TO BE SENT TO CONGRESS DESPITE THE FACT THAT THEY HOLD A MONEY ORDER IN THE NAME OF THE PLAINTIFF, PAYABLE TO THE PLAINTIFF IN THE AMOUNT OF 100.**

1.  The Plaintiff is currently held by Immigration and Custom Enforcement Agency. He is held at the Northwest Detention Center headed by ICE. Plaintiff brings this Complaint to the Court because his rights have been violated, deliberately violated by Michael Melendez of ICE and the Plaintiff seeks an injunction against the actions that injure the Plaintiff.

**RECEIVED**

AUG 3 1 2007

2. Plaintiff claims that all defendants here are federal employees and acted within the framework of their respective positions.

**VIOLATION OF THE RIGHT TO PETITION**

Plaintiff claims that he is an American and has a greater right to Petition Congress and the President of the United States than any person who is an alien..

1. Plaintiff claims that John P. Torres has failed to adequately train his subordinates, Neil Clark and Jack Bennett and the failure to train has violated the Plaintiff's rights to due process by denying the Plaintiff his right to petition.

2. In particular, the Plaintiff claims that the failure to train has resulted in the Plaintiff being the victim of the Defendants action to deny him his constitutional right to petition congress and to petition the President.

3. Plaintiff claims that John P. Torres has failed to train Neil Clark and Jack Bennett and as a result they have violated National Detention Standards to the detriment of the Plaintiff's rights.

4. Plaintiff claims that he was informed by the Defendants that the policy at issue is the determinations of John P. Torres and if so, then John P. Torres himself is unaware of the true nature of the policy regarding the ability of the detainee to contact Congress.

5. Although Plaintiff is not a prisoner, even prisoners have a First Amendment right to be free from certain interference with their "legal" mail. Wolff v. McDonnell, 418 U.S. 539, 577, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Watson v. Cain, 846 F. Supp. 621, 626 (N.D. Ill. 1993); see also Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. Wolff, 418 U.S. at 577; Bach v. People of State of Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974); cert. denied, 418 U.S. 910, 94 S. Ct. 3202, 41 L. Ed. 2d 1156 (1974). For example, correspondence between an inmate and an attorney (even a potential attorney or legal representative) is deemed confidential and therefore must be opened in the presence of the inmate. Wolff, 418 U.S. at 577; Bach, 504 F.2d at 1102; Watson, 846 F. Supp. at 629, 631.

6. Likewise, the Plaintiff has the right to his privileges and immunities as a citizen of the United States, Twining v. New Jersey, 211 U.S. 78, 53 L. Ed. 97, 29 S. Ct. 14 (1908). Twining gave these examples of privileges and immunities of national citizenship, viz.:

7. "The right to pass freely from state to state"; "the right to petition Congress for a redress of grievances"; "the right to vote for national officers"; "the right to enter the public lands"; "the right to be protected against violence while in

the lawful custody of a United States marshal." 211 U.S. at
97. See also, <u>United States v. Cruikshank, 92 U.S. 542, 553,
(23 L.Ed. 588; Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L.
Ed. 745 (1867.</u> It is the claim of the Plaintiff that the
defendants here have denied him the twin rights of the right
to petition the government secured to him by the First
Amendment and the right to seek redress.

8. The Plaintiff further asserts that the Defendants have
violated his rights to due process and denied him meaningful
access to the Courts, Congress and to legal entities that
could affect his incarceration.

9. Plaintiff claims that he has a right under the Fifth
Amendment to have the Defendants obey their own administrative
rules and that right has been violated by the defendants here.

1

10. First, the Plaintiff claims that it is unquestionable that
he has a right to Petition Congress under the First Amendment.
The question here is whether the Petitioner here has a right
to have the Government Agency that holds him pay for the
postage of the mail that he has submitted for delivery to
Congress where he is an immigration detainee who seeks a
private bill to his benefit for assistance in his immigration
case and where their written policies state that the Plaintiff
has such a right.

11. It is the claim of the Plaintiff that he has an unqualified right to petition the Congress of the United States.

12. We begin with the fact that the Plaintiff is an immigration detainee being held by the government. He is indigent and has submitted letters to be delivered to Congress because the Immigration and Naturalization Act contemplates the fact that Congress can grant relief to any immigration detainee through a private bill. As such, the Plaintiff must Petition Congress and Petition each member of Congress for a private bill which would alleviate the conditions of his confinement.

13. The last denial of this right came on the date of 7-17-07 when Jack Bennett, the newly installed Assistant Field Office Director of NWDC denied the Plaintiff the ability to send letters to Congressional Representatives, the Senate Representatives of the Plaintiff's Party.

14. On or about February 2nd, 2007 the Plaintiff provided to defendants a document that sought that the document be copied. This document included a letter to the members of Congress who are Democrats, a copy of the Visa Application for Rudder, Wayne, a scan of four pictures showing the Plaintiff at the age of 19, one document showing Rudder at the age of 14, and the exact same documents to the Senators who are Democrats and Independents. Michael Melendez refused to copy the letters stating that it was unreasonable for the Plaintiff to seek copies of the letters. Nonetheless, the Plaintiff received

1    copies of the letters from another source and ultimately

2    presented 285 letters to Melendez to be mailed to Congress.

3    After substantial resistance, over a period of a month, the

4    letters were purportedly sent. Yet, it is the date of June 29,

5    2007, 120 days later, and not one single response has come

6    from those letters. None of the letters have been returned and

7    this leads the Plaintiff to believe that Melendez did not mail

8    the letters as he stated he did.

9    **15.** It is the Plaintiff's claim and belief that the letters

10    were not sent by Melendez as he stated and he is charged here

11    with deliberately infringing upon the Plaintiff's right to

12    seek to Petition Congress.

13    **16.** Thus, on the date of June 10th, 2007 the Plaintiff spoke to

14    the Postmaster of the Tacoma Mail Office. That individual

15    informed the Plaintiff to resubmit the letters for mailing and

16    he would keep an eye out to determine whether or not the mail

17    was being sent. NWDC, under Melendez, has been very adept at

18    listening to conversations on the telephone and acting on what

19    they hear. Thus, on the date 6-28-07 the Plaintiff prepared

20    another 285 letters-one for each Democrat in Congress and one

21    for each Democrat in the Senate, plus the two independents,

22    and submitted them for mailing. In the follow-up letters

23    presented for mailing the Plaintiff questioned why he had not

24    been granted any responses to the previous letters. Because

25    the Plaintiff must submit the letters for copying to Melendez,

1   there is no question that Melendez read the letters and then
2   realized that the Plaintiff was questioning why his mail had
3   not been responded to. Thus, on the date of 6-28-07 Michael
4   Melendez stated that the letters would not be mailed. What Mr.
5   Melendez stated was the following:

6   **17.** "You receive postage of all legal mail to the Courts. The
7   documents to Congress are not legal and they are special
8   correspondence. You are hereby limited to five pieces of
9   special correspondence per week." Thereby, Melendez stated
10  that he was not going to send the letters to congress in any
11  timely manner, meaning that it would take Plaintiff a full
12  year, one month and one week to send all the letters to
13  Congress that he wishes to send. The question regarding this
14  part of the suit is whether the actions of Melendez qualifies
15  as a violation of the right to petition.

16  **18.** More than the right to petition, the Plaintiff claims that
17  the mail should have been sent as a first matter because it
18  was "Legal Mail" and the Supreme Court has held that the
19  facilities that hold individuals must bear the cost of the
20  postage where the postage is legal mail.

21  **19.** Plaintiff claims that since the Defendants now state that
22  they did mail the original 285 letters, the question is why
23  they state now that they will not do so.

24  **20.** In fact, the Defendants now state that they will allow the
25  Plaintiff to send five of the letters each week. At that pace

it would take over a year to send the letters to Congress. The
question becomes, (What is the difference if they send the
letters all at once or send them five a week? In any case they
are still paying for the letters to be sent.)

**21.** There is a further factor that defeats any pretension to
penological interest in that they state that they did send the
documents the first time. It is reasonable that the Plaintiff
follow up on the letters where he has not received a response
in almost six months to any of the 285 letters he sent to the
Congress and Senate. It is in the Plaintiff's interest to seek
that the Congress identify whether they received the letters
at all because the suspicion here is that they were never sent
in the first place.

**22.** The Defendants have stated that it is "unreasonable", but
the ICE Standards clearly state: **Indigent detainees will be
permitted to mail the following at government expense: 1. All
correspondence related to a legal matter, including
correspondence to a legal representative, potential legal
representative and any court."**

**23.** Mr. Bennett has claimed that the clause in the Section of
the ICE Standards where it states, "Indigent detainees will be
permitted to mail a reasonable amount of mail each week,
including at least five pieces of special correspondence and
three pieces of general correspondence" allows him to deny the
postage of the letters to Congress. Plaintiff asserts that the

reading of the rule is inconsistent with the intent that legal mail that is directed to such a place as Congress must be sent.

24. Plaintiff claims that is unreasonable that the Defendants will prevent him from sending the letters to Congress as a batch, but that they will still allow them to be all sent at a pace of five per week. This unreasonability comes through the fact that Congress works as a deliberative body and it is unreasonable that the Plaintiff be restricted to five pieces of mail each week where it is necessary to provide the letters to Congress all at once so that a quorum may be found and discussion on the issue may be had by all pertinent representatives.

25. Plaintiff claims that the reading by the Defendants could lead to the Plaintiff being restricted to five pieces of legal mail to the Courts and to the lawyers who are representing the parties where the Plaintiff has over ten cases pending.

26. Plaintiff claims that the restriction is a back door attempt by the Defendants to prevent the Plaintiff from sending his legal mail and Plaintiff claims that the mail is routinely returned for spurious causes by the Defendants in any case.

27. Moreover, it is absolutely important that the ICE Standards does not state "five pieces" as a limitation, but states that indigents will be able to send "At least five pieces of mail."

This is, the Plaintiff claims, consistent with the reading that the INS intended the indigents to mail all his legal material freely.

28. Plaintiff contends that the Defendants were, at the time this matter arose, holding a money order in the amount of 100. in the Plaintiff's name. The Plaintiff sought that they take the 100. money order and pay for the postage. They refused. This shows that their intent is to prevent the communication with Congress and they would rather defend the lawsuit rather than allow the Plaintiff to contact the Congress.

29. Another aspect here is the absolute fact that the correspondence in this case represents a legal document. The letters to Congress seeking a private bill must be respected as not just a vehicle of petition, but also a legal vehicle because any decision made by Congress is appealable.

30. Moreover, the Plaintiff claims that this is an avenue that he must exhaust. The Court will demand that the Plaintiff attempt at any and all relief that may be possible. If the Plaintiff did not seek this type of relief, the Government in their pleadings before the Ninth Circuit would then state, "He could have asked Congress for a Private Bill but he failed to do so."

31. On another vein, any pretended penological interest by the Defendants is rebuttable by the fact that the Plaintiff, if he were so inclined, could select persons from among the

1   population who are indigent and have them each send five

2   letters to Congress on his behalf. The letters, according to

3   the Standards cannot be opened, so the Defendants purportedly,

4   if they obeyed their own rules, they would not open the

5   letters and the letters would be automatically sent.

6   32. The Defendants here, the Plaintiff claims, are unreasonable

7   in their behavior and their behavior is meant to deny the

8   Plaintiff the opportunity to reach Congress because they know

9   that Congress will investigate and the Plaintiff will be found

10  to be a citizen of the United States.

11  33. In particular, the Plaintiff claims that the actions of the

12  defendants is meant to further the conspiracy against the

13  Plaintiff and to keep the Plaintiff confined despite his right

14  to be free from custody.

15  34. In particular, the Plaintiff claims that on the date of 7-

16  19-07 Neil Clark and Jack Bennett prevented him from sending

17  his letters to Congress.

18  35. In particular, the Plaintiff claims that on the date of 7-

19  19-07 Neil Clark and Jack Bennett prevented him from sending

20  his letters to the President of the United States.

21  36. Plaintiff claims that the ICE National Standards speak

22  directly to the right to send five pieces of mail without

23  question and the four letters to the president should be sent,

24  irregardless of their content where that content is actually a

25

1    complaint that ICE officials will not send the letters to
2    congress or the President.

37. Plaintiff claims that he has been denied due process by the
4    failure of the defendants to send his letters to the President
5    of the United States.

38. The problem with this situation is that John P. Torres has
7    engaged a system of no accountability and that lack of
8    accountability has allowed the Defendants to skirt the ICE
9    National Standards and to deny the basic human rights of the
10   detainees. This Plaintiff has the right to contact congress,
11   not at five letters a week, but to contact congress to
12   petition congress in his case. Such petition must be made to
13   all members of the caucus of which the Plaintiff is a member,
14   the Democrats. However, it is claimed that he is prejudiced by
15   the Defendants who are Republicans and they discriminate
16   against the Plaintiff because he is a Democrat and deny the
17   Plaintiff the ability to contact his party's members.

39. The first question that must be answered then is whether
19   the mail qualified as legal mail and whether the mail should
20   have been regarded as legal mail, and whether Melendez should
21   have known that the mail was legal and that the Plaintiff had
22   a legal right to send the mail. Plaintiff is unaware of a
23   written definition of the term "legal mail," but here the
24   Plaintiff will state that where the mail states clearly that
25   it is legal mail, and it is directed to a party who can have

an impact, good or bad over the conditions of confinement or the confinement of the person, then the mail must be considered legal mail.

**40.** In this case, the mail to Congress clearly meets the definition of legal mail. First, a person wishing to have a private relief bill introduced must, of course, persuade a member of Congress that he or she has a meritorious claim for relief. If the Senator or Representative believes the matter merits legislative consideration, the member of Congress introduces the private bill for the relief of a named individual or individuals. The bill is referred to the Judiciary Committee of the house of Congress in which it is introduced. Most such bills are introduced in the House of Representatives. Note, Private Bills In Congress, 79 Harv. L. Rev. 1684, 1688 (1966). The Senate rules of procedure for private immigration bills are generally less formal than those of the House. Any private bill request must include basic biographical information on the proposed beneficiary. The requisite composition of a private bill request varies slightly based upon the status of the proposed beneficiary. Subcomm. on Immigration, Senate Judiciary Comm., 105th Cong., Rules of Procedure: Private Immigration Legislation 1 (1999). Having located the fact that there is the possibility that Congress and the Senate can act on a person's immigration matter and grant relief, the question becomes does the person

have the right to petition congress for the relief he seeks

and does that right bear the protection of the Constitution?

**41.** Plaintiff here claims that he has a right to Petition Congress, a secondary right to seek relief under the private bill and has a right to transmit that information to Congress because he must persuade a member of Congress to introduce such legislation to award relief. In order to gain the ear of Congress, the Plaintiff must be able to write the letter or the submission to the member of congress and he must be assured that the letter he writes will actually be transmitted to Congress. Plaintiff first states that for Michael Melendez to state that he will not mail the letter to Congress is a violation of the right to petition, the right to send legal mail, and the right to seek redress, and a violation of due process under the Fifth Amendment and the First Amendment.

**42.** In support of the right, ICE National Standards which state, "Indigent detainees will be permitted to mail the following at government expense: 1. All correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative and any court." It is clear here that the letters to Congress constituted legal mail as they were "correspondence related to a legal matter", where that legal matter is the Plaintiff's immigration matter.

43. Further, the Standards state, Special correspondence" is the term for detainees' written communications to or from private attorneys and other legal representatives, government attorneys, judges, courts, embassies and consulates, the president and vice president of the United States, members of Congress, the Department of Justice (including INS and Office of the Inspector General), the U.S. Public Health Service, administrators of grievance systems, and representatives of the news media." Thus, the mail to Congress was guaranteed to be sent due to the fact that it is special correspondence related to a legal matter. As the ICE Standards establish the right that the Plaintiff has to mail his letters to Congress, Melendez erred when he failed to allow the letters to be mailed.

44. Plaintiff claims that he has a right to have the Defendants follow their own rules where those rules provide for due process to the Plaintiff.

45. plaintiff claims that he has been harmed by the failure of the Defendants to follow their own rules.

### PRIVATE BILL BY CONGRESS OR THE SENATE

46. Initially, the Attorney General had no discretion in ordering deportation, and an alien's sole remedy was to obtain a private bill from Congress. See Foti v. INS, 375 U.S. 217, 222 (1963). The first measure of statutory relief was included in the Alien Registration Act of 1940, 54 Stat. 670. Under the

statutory predecessor of § 244, suspension of a deportation order could be granted only if the alien demonstrated "exceptional and extremely unusual hardship." Immigration and Nationality Act of 1952, § 244 (a)(1), Pub. L. 414, 66 Stat. 214. This provision was amended to require that the alien show that deportation would result in "extreme hardship," Act of Oct. 24, 1962, Pub. L. 87-885, § 4, 76 Stat. 1248.

**47.** The federal immigration laws are exceedingly complex. See Lok v. INS, 548 F.2d 37, 38 (2d Cir. 1977) (federal immigration laws bear "striking resemblance . . . to . . . King Minos' labyrinth in ancient Crete."). The INA enumerates thirty-three general categories of people who may not enter the United States. See 8 U.S.C. § 1182. Deportable persons can come from these or nineteen other categories. See 8 U.S.C. § 1251. Beyond this, the INA provides for many circumstances which prevent a "deportable alien" from actual deportation. See 8 U.S.C. § 1254 (petition to suspend deportation); 8 U.S.C. § 1158 (political asylum); 8 U.S.C. § 1255 (adjustment to lawful permanent resident status); INS O.I. § 242(a)(22) (deferred action status). Deportation cases may be reopened on petition to consider evidence previously unavailable, or an Immigration Judge or the Board of Immigration Appeals may reopen the case sua sponte. See 8 C.F.R. §§ 3.22, 242.22. A final administrative order of deportation can be stayed by the district director, 8 C.F.R. § 243.4, by a private bill in

1    Congress, INS O.I. § 107.1, or if departure is "prejudicial to

2    the interests of the United States," 8 C.F.R. § 215.3. All

3    these determinations are appealable to the BIA, the Circuit

4    Courts of Appeals and, potentially, to the Supreme Court. See

5    8 U.S.C. § 1105a(a) (review of deportation decisions may be

6    had in federal appellate court); 8 C.F.R. § 3.1(b) (appellate

7    jurisdiction of 314).

8    **48.** Because of this skein of provisions, there is no assurance

9    that a (person) subject to deportation will ever be deported.

10    An illegal entrant might be granted federal permission to

11    continue to reside in this country, or even to become a

12    citizen. In light of the discretionary federal power to grant

13    relief from deportation, [a governmental authority] cannot

14    realistically determine that any particular undocumented

15    (person) will in fact be deported until after deportation

16    proceedings have been completed. It would of course be most

17    difficult for the [governmental authority] to justify a denial

18    of [a benefit] to a [person] enjoying an inchoate federal

19    permission to remain. Plyler v. Doe, 457 U.S. 202, 226, 72 L.

20    Ed. 2d 786, 102 S. Ct. 2382 (1982) (citations omitted).

21    **49.** In the past, there was legislative participation in some of

22    the adjustment procedures we have discussed, such as

23    suspension of deportation and relief under the Displaced

24    Persons and Refugee Relief Acts. But these were primarily

25    devices for administrative dispensation, with a requirement

for legislative scrutiny when administrative action was favorable. However, the constitutionality of such legislative participation is now doubtful to the extent that such legislative approval is required before an administrative decision can become final, See Chadha v. INS, 462 U.S. 919 (1983).

50. For many years there were increasing requests for direct intervention by Congress in individual cases. When all other roads have been explored, when administrative relief has been denied and court action has proved fruitless, many persons have sought to avert the impact of the immigration law by special legislation. The introduction of a private immigration relief bill does not in itself block removal. But in many cases it will induce the administrative authorities voluntarily to stay their hands until Congress can act, (For a holding that court relief may be available if such a stay is denied, see Knauff v. McGrath, 181 F.2d 839 (2d Cir. 1950).)

51. Private immigration bills serve an array of functions. They allow for notions of fairness and equity to mitigate the frequently harsh operation of general immigration standards. More importantly, the proliferation of private bills of similar substance may expose a current law's deficiencies and spur Congress to amend the law of general applicability. Private bills have provided impetus for changes in the national origins quota system and exclusion laws, and have

highlighted systemic gender inequities under naturalization laws, Robert Hopper & Juan Osuna, Remedies of Last Resort: Private Bills and Deferred Action, 97-06 Immigr. Briefings 2-3 (June 1997). Conversely, general immigration laws may promote private bills. Restrictive immigration measures like the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA) (enacted as Division C of Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009) often prove overinclusive in practice, thus generating a bevy of private bill requests from individuals with sympathetic claims, Hopper & Osuna, supra note 3, at 1.

**52.** Statistics illustrate the ebb and flow in the popularity of private immigration bills. In the 78th Congress (1943-1944), 163 private immigration bills were introduced; only twelve were enacted, Immigration and Naturalization Service, Dep't of Justice, 1992 Statistical Yearbook of the Immigration and Naturalization Service 178 (1993) (Table 79). Thereafter the number of bills and enactments rose sharply. In the 90th Congress (1967-1968), 7,293 private immigration bills were introduced and 218 were enacted. In the 91st Congress (1969-1970), 6,266 private immigration bills were introduced and 113 were enacted, Office of Immigration Statistics, Dep't of Homeland Security, 2002 Yearbook of Immigration Statistics 212

1    (2003) (Table 55) [hereinafter 2002 Immigration Statistics],

2    available at uscis.gov/graphics/shared/aboutus/statistics/

3    ybpage.htm (last visited July 13, 2004). These bills accounted

4    for almost half of all bills, both public and private, introduced

5    in Congress during those years, See Sidney Rawitz, In the Hands

6    of Congress: Suspension of Deportation and Private Bills, 57

7    Interpreter Releases 76, 80 (Feb. 14, 1980).

8    **Legislative Procedure**

9    **53.** A person wishing to have a private relief bill introduced

10    **must, of course, persuade a member of Congress that he or she**

11    **has a meritorious claim for relief.** If the Senator or

12    Representative believes the matter merits legislative

13    consideration, the member of Congress introduces the private

14    bill for the relief of a named individual or individuals. The

15    bill is referred to the Judiciary Committee of the house of

16    Congress in which it is introduced. Most such bills are

17    introduced in the House of Representatives. Note, Private

18    Bills In Congress, 79 Harv. L. Rev. 1684, 1688 (1966).

19    **54.** It is this last item that Plaintiff claims that makes the

20    documents he sought to send to Congress legal mail, above and

21    beyond the directive by ICE National Standards and above and

22    beyond the rights to petition in the First Amendment.

23    **55.** Plaintiff claims that the Defendants violated that right.

24

25

**House Private Bills Procedures**

**56.** Since there are no statutory guides for such legislation, the standards for judgment are not fixed. However, the Subcommittee on Immigration and Claims of the House Judiciary Committee has published rules of procedure for private immigration legislation. Subcomm. on Immigration and Claims, House Judiciary Comm., 107th Cong., Rules of Procedure and Statement of Policy for Private Immigration Bills (2001) [hereinafter House Rules of Procedure], available at www.house.gov/judiciary/documents.htm (last visited July 12, 2004). All requests for a private immigration bill must begin with a letter to the chairman of the subcommittee detailing the relevant facts of the case and must include ``all pertinent documents.''  Id. at 1. These should include the basic biographical information of all proposed beneficiaries, close relatives, and interested parties, information detailing all entries and departures to and from the United States, the status of all pending petitions and immigration proceedings, occupational histories of proposed beneficiaries, and a signed statement from each beneficiary stating that he or she requests the relief sought by the private bill. Id. Most importantly, the request must include an exposition detailing how failure to provide for the desired relief will result in ``extreme hardship'' to the beneficiary. Id.

57. The showing above exposes the fact that the Plaintiff has the absolute right to seek relief through Congress and seeking such relief is a legal matter under the Fifth Amendment, not only a right of petition under the First Amendment.

58. Plaintiff claims that he resubmitted the documents for mailing on or about the date of June 20, 2007 and Melendez again refused to mail the documents and this prevented the Plaintiff from gaining due process in his immigration proceeding in that the Plaintiff had a right to seek the relief from congress under the law and that right was deliberately taken away from him by Melendez and now by Jack Benett[1].

## PREJUDICE FROM THE NOT MAILING OF THE DOCUMENTS

59. Plaintiff claims that he has suffered mass prejudice. He has been prevented from contacting the President of the United States where the President is in position to grant the Plaintiff a pardon or any other relief that the President can devise.

60. Plaintiff has a right to complain to the President and this right has been taken by John P. Torres and Jack Bennett and Neil Clark.

61. Plaintiff is a citizen of the United States who is held by ICE. He has a right to seek all available relief from the

---

[1] A sister suit was sent for filing days before this one. That suit targets Melendez and Clark and the Untied States and seeks damages under the FTCA. This suit is maintained primarily against the defendants for an injunction rather than for damages.

1    continuing confinement and he has the right to seek relief

2    through the act of Congress. Plaintiff, because he has been

3    denied the opportunity to send the letters to Congress, is

4    caused to spend an overlong time in custody. First, Melendez

5    was wrong for not sending the first batch of letters and

6    pretending that he had. Next, Melendez was wrong for

7    preventing the mailing of the second bunch of letters that

8    were to be sent to Congress and this has caused the

9    Petitioner's claim not to be heard.

10    **62.** A private bill is provided for in 8 CFR, see <u>INS v Jong Ha</u>

11    <u>Wang, 450 U.S. 139, 140 and n.1 (1981)</u>. Mr. Melendez responded

12    that it was "unreasonable" to approve those copies despite the

13    fact that plaintiff has an absolute right to reach the

14    senators and the congressmen and women under two amendments,

15    the Due Process Clause of the Fifth Amendment provides the

16    right to reach the senators and the congress and the First

17    Amendment right to petition provides the right to reach the

18    Senators and the Congress. Yet, Mr. Melendez proclaimed that

19    it was "unreasonable" to seek such copies and did not approve

20    them. When the copies were gained from other sources, Mr.

21    Melendez failed to mail the letters on two different occasions

22    that they were presented to him for mailing. Because Mr.

23    Melendez failed to mail the letters to Congress and wished to

24    place restrictions on the mailing of letters to Congress, he

25

violated my clearly established rights to petition and to seek

due process through a private bill from congress.

CLAIM TWO

ILLEGAL OPENING OF LEGAL MAIL/CONFIDENTIAL MAIL

**63.** Plaintiff claims that John P. Torres has allowed the

Defendants, Clark, Bennett and Melendez to act in union

conspiracy to deny the basic human rights of the detainees.

**64.** Plaintiff claims that Clark, Bennett and Melendez, aided by

John P. Torres' lack of training of the Defendants, have

engaged in illegal actions upon illegal actions to deny the

rights of the Plaintiff.

**65.** Plaintiff claims that Michael Melendez has either

personally opened legal/confidential mail, or authorized the

opening of confidential legal mail to the detriment of the

Plaintiff's rights.

**66.** Plaintiff claims that Jack Bennett has personally opened

correspondence directed to Congress, to Jack Bennett and the

President of the United States where the policy of ICE is that

mail shall not be opened.

**67.** In particular, the Plaintiff claims that Michael Melendez

has authorized and approved the opening of correspondence, the

copying of correspondence, the reading of correspondence where

that correspondence was headed to the Seattle Times Newspaper

and legal entities.

**68.** Plaintiff claims that he has a right to communicate with a reporter or the newspaper in a confidential letter. Moreover, he claims that he has the right to such privacy given by ICE National Standards which state, "Indigent detainees will be permitted to mail the following at government expense: 1. All correspondence related to a legal matter, including correspondence to a legal representative, potential legal representative and any court." Further, the Standards state, "Special correspondence" is the term for detainees' written communications to or from private attorneys and other legal representatives, government attorneys, judges, courts, embassies and consulates, the president and vice president of the United States, members of Congress, the Department of Justice (including INS and Office of the Inspector General), the U.S. Public Health Service, administrators of grievance systems, and representatives of the news media."

**69.** The ICE Standards state, specifically, "Staff shall neither read nor copy special correspondence." The fact is that the Plaintiff will establish the fact that his special correspondence was opened by Melendez, under Melendez's authorization, and Melendez knew or should have known that it was illegal and unconstitutional to breach the security of that instrument which was opened, and copied and then used by Melendez for his own purposes.

**70.** In fact, ICE National Standards state, "Outgoing special correspondence will not be opened, inspected or read." Here, Melendez went further than opening the mail, he authorized the copying of the mail and reading of the mail and using of the mailed letter in a disciplinary against the Plaintiff.

2

**71.** Melendez has also been involved in the opening of another piece of mail directed to the Australian Embassy. This mail was directed to the Australian Embassy and the mail was opened, the document removed and photocopied and used as an exhibit by ICE before the Immigration Court. Plaintiff claims that he was violated of his due process rights by the opening of his mail directed to the Australian Embassy.

**72.** Moreover, the Defendant may claim that he gained the document when it was presented for copying by the Plaintiff, but, even if the document was presented for copying, the Defendant has no right under the law to read that material where it is clearly a legal document on its face without it being read. The application to the Australian Embassy was a form seeking asylum in Australia away from the United States because of the problems he has been put through by the ICE agency. ICE has absolutely no right to read legal material presented for copying. In Wolff v. McDonnell, 418 U.S. at 575-77, the Court upheld a prison regulation that allowed staff to inspect, but not to read, inmates' legal mail. Lower courts

have held that legal mail may not be read nor copied without

the permission of the inmate. Jensen v. Klecker, 648 F.2d

1179, 1182 (8th Cir. 1981); Ramos v. Lamm, 639 F.2d 559, 582

(10th Cir. 1980), cert. denied, 450 U.S. 1041, 68 L. Ed. 2d

239, 101 S. Ct. 1759 (1981); Guajardo v. Estelle, 580 F.2d

748, 758-59 (5th Cir. 1978). The Ninth Circuit has previously

held that violation of confidentiality in legal documents

presented for copying violates the meaningful access to the

Courts, Casey v Lewis, 43 F. 3d 1261 (Overruled on other

grounds, Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S. Ct.

2174, 135 L. Ed. 2d 606 (1996). Although the matter was

overruled by the Supreme Court, it was not overruled on the

merits of the claims, but on the lack of standing to proceed

with the claims. In any case, the Supreme Court has previously

stated that the mail should be confidential and the copies

should be confidential.

73. Yet, the Plaintiff claims that Melendez has gone further

than this in his violations of the rights of the Plaintiff. In

particular, the Plaintiff complains to the fact that he, of

all 1,000 plus detainees at NWDC receives special treatment

for his copy requests. First, the Plaintiff alleges and will

prove that Melendez has allowed his staff to keep copies of

the legal papers submitted by the Plaintiff for copying. He

has allowed the reading of the papers, and he has allowed the

faxing of the papers to counsels adverse to the Plaintiff and

1    this will all be proven through discovery material held by ICE

2    and GEO.

3    **74.** Plaintiff has been injured by the continuing actions of

4    Melendez where the documents the Plaintiff prepares are

5    practically obsolete once he provides a document to be copies

6    because the documents are faxed to counsels by GEO under

7    Melendez's guidance and the counsels act on the content of the

8    documents and this leaves the Plaintiff at a marked

9    disadvantage.

10   **75.** Plaintiff has been bothered by stressful conditions of

11   confinement where he must present the materials to Melendez to

12   gain copies and must succumb to the illegal actions of

13   Melendez.

14   **76.** Plaintiff has not been the lone person whose mail is

15   tampered with by Melendez and whose copies confidence are

16   violated by Melendez. One detainee, in particular, Damion

17   Bromfield's legal mail was opened by Geo acting under

18   Melendez's guidance.

19   **77.** Other detainees have routinely been denied their right to

20   confidential mail when it is legal mail. Plaintiff

21   specifically claims and alleges that the Grievance files of

22   Geo and ICE will show the fact of the violations of law.

23                          **READING CONFIDENTIAL MAIL**

24   **78.** Plaintiff claims that the Court must enjoin the Defendants

25   of their behavior of reading and opening confidential mail and

1  the Court must state, specifically, that John P. Torres must

2  train his staff to not read correspondence that is clearly

3  legally related.

4  **79.** Plaintiff claims that on several occasions, the latest

5  being on 7-17-07 he was ordered to open special

6  correspondence.

7  **80.** Plaintiff claims that he was ordered by Jack Bennett to

8  open the letters directed to John P. Torres and once the

9  letters were opened the letters were not mailed to John P.

10  Torres.

11  **81.** Plaintiff claims that the letters to Torres contained a

12  complaint for exhaustion and also contained the 285 letters

13  that Bennett and Melendez and Clark refused to send to

14  Congress.

15  **82.** Plaintiff claims that he sought that Torres, the ultimate

16  supervisor of Clark, Bennett, and Melendez, order Clark,

17  Bennett and Melendez to mail the documents. The Complaint also

18  requested that Torres order the Defendants to fix the

19  telephones so that there would be communication to counsel

20  provided and that the communications be confidential.

21  **83.** Plaintiff claims that Bennett stated that Clark had ordered

22  him not to send the letter.

23  **84.** Plaintiff claims that Bennett stated that he had spoken to

24  Melendez and to Clark.

25

85. Interestingly enough, Bennett also stated that he believed that the original letters to Congress had been made and he also stated that he wondered at the reasonability of sending the letters once and not sending them the second time.

86. Plaintiff claims again that the Defendants must be made to follow their own rules where those rules are for the protection of the Plaintiff's due process rights.

87. Plaintiff claims that the ICE Standards state, "Special Correspondence is the term for detainees' written communications to or from private attorneys and other legal representatives; government attorneys; judges, courts, embassies and consulates; the president and vice president of the United States, members of Congress, the Department of Justice, including INS and Office fo the Inspector General; The U.S. Public Health Service; administrators of grievance systems and representatives of the news media." ...."Outgoing special correspondence will not be opened, inspected or read."

88. Yet, on 7-17-07 Bennett ordered the Plaintiff to open the letters directed to John P. Torres, Director of the INS Removal Unit, Bennett's ultimate boss.

89. Yet, previously, Melendez presided over the opening of the Plaintiff's mail to the Seattle Times.

90. Yet, Melendez presided over the opening of the Plaintiff's letter to Neil Clark of ICE.

  
**91.** Yet, the documents that are printed in the law library where they are special correspondence are read liberally by the Defendants.

**92.** Yet, the Defendants keep a copy of the Plaintiff's legal material routinely and read that material,

**93.** Yet, the Defendants fax a copy of the legal documents of the Plaintiff to their counsel for their own purposes.

**94.** Yet, previously, Melendez presided over the opening of the Plaintiff's mail to the Australian Embassy and the copying of that mail to the Australian Embassy where the ICE Standards state specifically, Special Correspondence shall not be read or copied.

## COPIES OF LEGAL DOCUMENTS

**95.** Plaintiff cannot complain enough of the lack of confidentiality in his legal documents. First, the documents that are printed off the Computer are read by the librarian under direction by Melendez.

**96.** Second, the documents that are submitted for copying are read by the Warden under guidance and direction by Melendez.

**97.** Third, the documents are copies under the Direction of Melendez for the personal purposes of Geo and ICE.

**98.** Fourth, the documents submitted for copies are used by ICE and Geo for their own purposes including faxing documents to

1    their counsels, and using the documents in "Declarations" to

2    the District Court and the Immigration Court.

3    **99.** Plaintiff claims that it violates his right to meaningful

4    access where the Defendants have copied his legal documents

5    for their own purposes, used those documents for their own

6    purposes, and faxed those documents to their counsels for

7    their own purposes.

8    **100.**    Plaintiff claims that when the documents printed in

9    the library is read by the librarian it is a violation of the

10    right to confidentiality.

11    **101.**    Plaintiff claims that when he spoke to Mr. Bennett on

12    7-17-07 Mr. Bennett stated that Plaintiff's copies were sent

13    to the Warden and held because the Plaintiff submits copies on

14    a regular basis and those copies must be reviewed by the

15    Warden. He did not state a reason why the Plaintiff's

16    documents receive more scrutiny than other detainees where the

17    other detainees copy requests are not sent to the Warden's

18    Office, are not held for over long periods, are not read and

19    are not faxed to the counsels of the Warden and ICE.

20                    **REJECTING MAIL WITHOUT DUE PROCESS**

21    **102.**    Plaintiff claims that the Defendants' policy of

22    returning mail without giving a person an opportunity to

23    object to the return of mail is a denial of due process.

24    **103.**    Plaintiff claims that his mail was returned on one

25    occasion when that mail was sent by a counsel.

**104.**  Plaintiff claims that the Defendant's policy of returning items received in the mail denies due process.

**105.**  In particular, the Plaintiff claims that the Defendants have returned mail that have been sent to the detainees where those mails held documents that are to be used to support the immigration case.

**106.**  Plaintiff claims that the Defendants must provide the Plaintiff and other detainees an opportunity to object to their mail being returned and they must be granted the right that the facility will hold that mail while the appeal is pending through the ultimate denial of that appeal by the Courts.

**107.**  Plaintiff claims that his rights have been injured by the failure to train and supervise and through deliberate action to deny his due process in that Melendez, Bennett, Clark and the Defendants has approved THE GEO GROUP INC.'s employees mishandling of the Plaintiff's mail. It is the position of the Plaintiff that the mail must be placed in the First Class mail when it is designated.

**108.**  It is further the Plaintiff's claim that the First Class mail, must actually be given to the Post Office Person who arrives to collect the mail.

**109.**  It is the Plaintiff's claim that the only alternative to such mailing is to hand the letter directly to the person it is directed to or to place it into a box where it is

general practice that the mail will be received by the person,
such as Melendez, Bennett, Clark and the Defendants.

**110.** What Melendez, Bennett, Clark and the Defendants has
done and has encouraged is to allow Geo Employees to not place
the letters into the mail, to return the letters and they then
demand that the Plaintiff place the First Class Mail into the
ICE box in the unit where that box is susceptible to opening
by detainees.

**111.** It is the Plaintiff's claim that when he mails
documents to any person, including Michael Melendez, Bennett,
Clark and the Defendants, the mail is to either be placed into
the U.S. Mails as directed, or alternatively placed into the
mailbox of Michael Melendez, Bennett, Clark and the Defendants
or the other person the Plaintiff seeks to mail the letter to
**especially** because these are legal defendants.

**112.** Plaintiff claims that his due process has been
violated by the failure to mail his documents and such failure
is a source of recurring stress upon the Plaintiff.

**113.** In fact, the Plaintiff claims that the American
Correctional Association's Recommended Standards include a
clause that allows for confidential communications with
Melendez, Bennett, Clark and the Defendants, Clark, or any
other custodian.

**114.** Moreover, ICE National Standards include a clause
that allow for confidential detainee communications with

Melendez, Bennett, Clark and the Defendants and any other person who works in the facility where that person has a significant impact ability over the Plaintiff's conditions of confinement or confinement.

115.    Plaintiff claims that his rights have been violated by the deliberate returning of his mail, repeatedly, by Melendez, Bennett, Clark and the Defendants and through approval by Melendez, Bennett, Clark and the Defendants.

116.    Plaintiff claims that the recurring activities with his legal mail is done specifically and solely to harass, molest and punish the Plaintiff for maintaining legal actions in the Courts. In particular, the Plaintiff claims that the mail is returned repeatedly over and over again only to cause him to be late in his filings, to be late in his letters to legal entities and to prevent him from communicating with entities in a timely manner.

117.    Plaintiff claims that Melendez, Bennett, Clark and the Defendants have copies of the grievances and Tort Claim demands that were filed in conjunction with all the matters herein and other matters but has failed to provide the Plaintiff with a copy of those documents in violation of the Freedom of Information Act and the Privacy Act and he maintains those copies of the documents solely to prevent the Plaintiff from receiving the documents to use in legal cases that are pending and in this case.

118.   Plaintiff specifically complains that he made demands for production under the Privacy Act and under the FOIA Act and the Defendants have refused to provide him with the following documents: Geo Custody File and ICE Grievance File where those files pertain to the Plaintiff.

119.   Plaintiff claims that he is injured because he has been denied the ability to meaningfully litigate his actions in the District Court because of the lack of the information in the grievances and Custody File.

120.   Plaintiff claims that he has an automatic right to the file under the Privacy Act and under the FOIA and the Defendants have violated that right.

### REMEDY

Wherefore, the Plaintiff prays that the Court provides the following remedies:

a) Order that the Defendants shall immediately mail all the letters that have been presented by the Plaintiff for delivery to Congress where he seeks a Private Bill. (Even after a hearing on this matter and the time that hearing would take, the letters would still be delivered prior to the time the Defendants contemplate by their five letter restriction.)

b) Order that the Defendants allow all detainees to petition Congress on behalf of their Immigration Status or any other matter.

c) Declare that the Detainees have the right to Petition Congress, and that Plaintiff has a special right as he is an American.

d) Declare that the right to Petition is a legal right given that Detainees may receive the benefit of a private bill from Congress upon such petition.

e) Declare that detainees who are indigent have a right to the mail to legal entities, such as Congress, be paid for by the facility that holds them.

f) Declare that the limitation of the Plaintiff to five special correspondence letters per week is unreasonable given the fact that the Plaintiff has over ten cases pending in the Courts of the United States.

g) Declare, specifically, that letters to Congress are protected communications under the First and Fifth Amendment.

h) Declare that it is unreasonable that the Plaintiff cannot send all his mail to Congress at once where, ultimately, Defendants will pay for each piece anyway if they are sent five at a time.

i) Cause the Defendants to provide proof that they mailed the original letters that the Plaintiff sent to Congress from which he has not received one answer.

j) Declare that it was unreasonable for the Defendants to not consider the Plaintiff's offer that the Defendants use the 100. Money Order for postage.

k) Declare that the fact that the Defendants purportedly sent the first 285 letters to Congress makes it unreasonable that they would not send the follow up letters.

l) Declare that mail to Congress meets the definition of legal mail and special correspondence.

m) Declare that the Plaintiff has a right to have the Defendants follow their own written rules where those rules protect the due process of the Plaintiff.

n) Declare that the routine of seeking and gaining a Private Bill from Congress is a legal mechanism available to detainees.

o) Declare that the Defendants shall not open legal mail or special correspondence that is outgoing from any detainee, consistent with the written rules of the Defendants.

p) Declare that the Defendants may not copy, read, or fax to their counsels any legal materials that is prepared by the Detainees unless the Detainee specifically requests that a member of the Defendants or their staff do so.

q) Declare that incoming special correspondence, as described by the ICE National Standards shall may be opened to check for contraband but shall not be read, copied by the Defendants or their staffs.

r) Declare that outgoing or incoming letters to newspapers, reporters or other print media may not be opened, read, copied by the Defendants, but may only be checked for contraband when the letter is incoming and such checking does not include reading the document or "scanning" the document.

s) Declare that communications to Embassies shall not be opened when the letter is outgoing and may only be inspected for contraband, without reading, if the letter is incoming.

t) Declare that Plaintiff's copies are to be copied immediately and shall not be held for overlong periods, and in any case shall be returned to the Plaintiff the same day or, at the very latest, the next day after being presented for copying.

u) Declare that documents printed in the library by the detainees shall not be subjected to reading or scanning by defendants or their employees. That all documents may be looked at on the face of the document to determine whether it is legal or not, but may not be read.

v) Declare that under no conditions are the defendants to read confidential legal mail or special correspondence.

w) Direct that detainees shall not be ordered to open their special correspondence that is outgoing for any reason.

x) Direct that the Defendants shall not return <u>any</u> item received in the mails without allowing the detainee an opportunity to appeal the matter and Defendants shall hold the item in question until such time that all appeals are exhausted administratively and, if court action is sought by the detainee, until such court action is exhausted through the first level of appeals with the Court.

y) Direct that when the detainees direct that their mail be sent by first class mail it must be sent by first class mail except that the defendants may place mail directed to an internal person into the mail box of that internal person.

z) Direct that the defendants provide the Plaintiff a copy of all the grievances that they hold with the Plaintiff's name (s) upon those grievances and that a full and complete copy of the Geo Custody File be presented to the Plaintiff.

NOTICE TO THE COURT:

ATTACHED TO THIS DOCUMENT ARE THE LETTERS THAT THE PLAINTIFF SOUGHT TO SEND TO CONGRESS AND THE PRESIDENT OF THE UNITED STATES. THE PLAINTIFF SOUGHT THAT THE DEFENDANTS PROVIDE HIM WITH A COPY OF EACH ENVELOPE SO HE COULD USE THE ENVELOPE AS EVIDENCE TOT HIS COURT. HOWEVER, THE DEFENDANTS HAVE REFUSED TO PROVIDE SUCH A COPY, SO THE PLAINTIFF DOES NOT HAVE A COPY OF EVERY ENVELOPE TO USE AS AN EXHIBIT. NEIL CLARK INFORMED THE PLAINTIFF TO SEND THE LETTERS TO THE COURT AND THE LETTERS ARE INCLUDED HERE AS AN EXHIBIT.

Submitted on the date of 7-19-07


Antolin Andrew Marks

1

2

3

4

5

6   PROOF OF SERVICE

7   &

8   **DECLARATION**

9   I, Antolin Andrew Marks, AVER THAT I AM  A PARTY TO THIS ACTION
10  DO HEREBY AVER THAT I HAVE PROVIDED A COPY OF THE FOREGOING
    DOCUMENT:

11
    **COMPLAINT FOR DAMAGES AND INJUNCTION**
12

13  **Kristen Johnson**
    **700 Stewart Street, Suite 5220**
14  **Seattle, Washington 98102**

15  **UNITED STATES ATTORNEY GENERAL**
    **801 I STREET, N.W. SUITE 900**
16  **WASHINGTON, D.C. 20036**

17

18

19  THE ITEMS WERE MAILED FIRST CLASS MAIL ON THE DATE BELOW. Under

20  the penalty of perjury of the laws of the United States.

21

22  SUBMITTED ON 7-19-07

23

24  Antolin Andrew Marks

25
    _____

JS-44
(Rev.1/05 DC)

F
07-1660
EGS

## I (a) PLAINTIFFS

Antolin Andrew Marks

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

John Torres, et al,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T

Case: 1:07-cv-01660
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/20/2007
Description: CIVIL RIGHTS-NON. EMPLOY.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency
Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

☐ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☒ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
administrative agency review or
Privacy Act

| ☐ G. Habeas Corpus/ 2255 | ☐ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

☒1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7Appeal to District Court from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS    ☐ ACTION UNDER F.R.C.P. 23     DEMAND $   0    Check YES only if demanded in complaint   JURY DEMAND: ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY

(See instruction)    ☐ YES   ☒ NO    If yes, please complete related case form.

DATE 9/20/07    SIGNATURE OF ATTORNEY OF RECORD   NCD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd