**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTOLIN ANDREW MARKS,<br>1623 E. J. Street, Suite 5<br>Tacoma, Washington,<br><br>Plaintiff,<br><br>v.<br><br>JOHN P. TORRES, Director of ICE;<br>JACK BENNETT, AFOD; NEIL<br>CLARK, Field Office Director,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No.: 07-1660 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT AS FRIVOLOUS OR
MALICIOUS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER, AND TO STAY
FURTHER PROCEEDINGS PENDING DISPOSITION OF MOTION**

Defendants hereby move this Court to dismiss the Complaint filed by Plaintiff, Antolin

Andrew Marks, who is proceeding in forma pauperis, as frivolous or malicious, pursuant to 28

U.S.C. § 1915(e)(2), and Fed. R. Civ. P. 7 and 8, because the complaint duplicates claims first

brought by plaintiff in two related cases filed in the United States District Court for the Western

District of Washington at Tacoma, where he is incarcerated as an alien pending the outcome of

deportation proceedings.[1]  In the alternative, Defendants move this Court to transfer the present

action to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a), under

---

[1] This motion is not premised on Fed. R. Civ. P. 12; thus none of the bases for dismissal under that rule are hereby waived.  Defendants note that plaintiff recently filed another case in this jurisdiction, captioned as Andrew Antolin Marks v. United States Congress, Individual Members 1-435, and United States Senate, Individual Members 1-100, Civil Action No. 08-175 (UNA) (D.D.C.), that was dismissed without prejudice for lack of subject matter jurisdiction by Memorandum Opinion issued by Judge John D. Bates on January 23, 2008 (C.A. 08-175 Document 3).

well-established principles prohibiting duplicative litigation, and for the convenience of the parties and witnesses and in the interest of justice.[2]

Plaintiff filed this lawsuit in the District of Columbia, where he has no apparent connection, to litigate his alleged disputes with officials at the Northwest Detention Center in Tacoma, Washington, where he is incarcerated, over plaintiff's request that the officials pay for a single mailing of "follow-up" letters to 285 Members of Congress, who did not respond to plaintiff's original letters seeking a private bill, and also over the alleged withholding of certain first-party information relating to his detention.  Plaintiff brought these same claims in two cases first filed in the Western District of Washington, where plaintiff and all relevant witnesses and records relating to these disputes are located.  Venue is therefore proper in that jurisdiction because this case could have been brought there, as required by 28 U.S.C. § 1404(a).  Hence, we move to transfer venue to an appropriate jurisdiction.

Defendants further request that the transfer order note that ten civil actions filed by plaintiff in the Western District of Washington were transferred to United States Magistrate Judge J. Kelly Arnold by Order dated August 31, 2007 (attached as Exhibit A, pages 1-4) ("In August of 2007, plaintiff [Antolin Andrew Marks] began filing documents which contain thinly veiled threats and disclosed security issues at the Northwest Detention Center.").  Magistrate Judge Arnold placed under seal all pleadings and materials filed by Plaintiff in the ten cases, and admonished Plaintiff

---

[2]  Defendants submit that the issue of venue should be resolved at this early stage in this litigation, and before the parties expend considerable resources on the case.  Accordingly, Defendants request that the Court stay the deadline by which Defendants must file an answer or otherwise respond to the complaint, which is due February 11, 2008, by previous order of the Court.  Because plaintiff is incarcerated and proceeding pro se, we have not endeavored to ascertain plaintiff's position with respect to this motion, as LCvR 7(m) is inapplicable in this case.

"to conform his conduct to the rules of civil litigation" or face sanctions (id.).  By Order dated January 25, 2008, Judge Arnold denied plaintiff's motion to remove or lift the sanctions order (attached as Exhibit A, pages 5-6).

The grounds for this motion are set forth more fully in the attached memorandum of points and authorities in support hereof.  Defendants submit proposed Orders consistent with the alternative relief sought in this motion.

Respectfully submitted,


        /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


        /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


        /s/
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney
Civil Division, Room E-4806
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served by First-Class mail, postage

prepaid to:


ANTOLIN ANDREW MARKS
A 34 316 600
1623 East J Street, Suite 5
Tacoma, Washington 98421


on this <u>11</u>th day of February, 2008.


_____/s/_____
JOHN G. INTERRANTE
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOLIN ANDREW MARKS,<br>1623 E. J. Street, Suite 5<br>Tacoma, Washington,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN P. TORRES, Director of ICE;<br>JACK BENNETT, AFOD; NEIL<br>CLARK, Field Office Director,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.: 07-1660 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT AS FRIVOLOUS OR MALICIOUS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER, AND TO STAY FURTHER PROCEEDINGS PENDING DISPOSITION OF MOTION

      Defendants respectfully submit this memorandum of points and authorities in support of Defendants' motion to dismiss the complaint filed by Plaintiff, Antolin Andrew Marks, who is proceeding pro se, as frivolous or malicious, pursuant to 28 U.S.C. § 1915(e)(2), and Fed. R. Civ. P. 7 and 8, or, in the alternative, to transfer this case to the Western District of Washington, pursuant to  28 U.S.C. § 1404(a), and Fed. R. Civ. P. 7 and 8, under well-established principles prohibiting duplicative litigation, and for the convenience of the parties and witnesses and in the interest of justice.[1]

---

[1]  This motion is not premised on Fed. R. Civ. P. 12; thus none of the bases for dismissal under that rule are hereby waived.  Defendants note that plaintiff recently filed another case in this jurisdiction, captioned as Andrew Antolin Marks v. United States Congress, Individual Members 1-435, and United States Senate, Individual Members 1-100, Civil Action No. 08-175 (UNA) (D.D.C.), that was dismissed without prejudice for lack of subject matter jurisdiction by Memorandum Opinion issued by Judge John D. Bates on January 23, 2008 (C.A. 08-175 Document 3).

Plaintiff filed this lawsuit in the District of Columbia, where he has no apparent connection, to litigate his alleged disputes with officials at the Northwest Detention Center in Tacoma, Washington ("NWDC"), where he is incarcerated, over plaintiff's request that the officials pay for a single mailing of "follow-up" letters to 285 Members of Congress, who did not respond to plaintiff's original letters seeking a private bill, and also over the alleged withholding of certain first-party information relating to his detention.  Plaintiff brought these same claims in two cases first filed in the United States District Court for the Western District of Washington at Tacoma ("Western District of Washington"), where plaintiff and all relevant witnesses and records relating to these disputes are located.  Thus, the Court should dismiss this case as frivolous or malicious under 28 U.S.C. § 1915(e)(2), or, in the alternative, transfer the case to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a).

## **BACKGROUND**

Plaintiff, Antolin Andrew Marks, 1623 E. J Street, Suite 5, Tacoma, Washington 98421, is incarcerated as an alien at the Northwest Detention Center in Tacoma, Washington, pending the outcome of deportation hearings (see Compl., ¶ 1).  Between May 31, 2007, and July 19, 2007, plaintiff prepared three civil complaints containing similar allegations relating to his detention at NWDC and his attempt to get information he deemed necessary to challenge his continued detention.  The first two complaints were filed in the Western District of Washington.  The third was filed in this jurisdiction.

Plaintiff filed the complaint in the instant case on September 20, 2007, seeking declaratory and injunctive relief against Defendants, based, in part, on the alleged refusal of NWDC officials to pay for a single mailing of plaintiff's "follow-up letters" to 285 Members of Congress in

Washington, D.C., who did not respond to his original letters requesting a private bill (Compl., ¶

16).  Specifically, plaintiff alleged that the original letters were sent to Members of Congress

because he "seeks a private bill to his benefit for assistance in his immigration case" (Compl., 10).

Plaintiff described the original letters to the 285 Members of Congress as follows:

> On or about February 2nd, 2007 the Plaintiff provided to defendants a document that
> sought that the document be copied.  This document included a letter to the members
> of Congress who are Democrats, a copy of the Visa Application for Rudder, Wayne,
> a scan of four pictures showing the Plaintiff at the age of 19, one document showing
> Rudder at the age of 14, and the exact same documents to the Senators who are
> Democrats and Independents.  Michael Melendez refused to copy the letters stating
> that it was unreasonable for the Plaintiff to seek copies of the letters.  Nevertheless,
> the Plaintiff received copies of the letters from another source and ultimately
> presented 285 letters to Melendez to be mailed to Congress.  After substantial
> resistance, over a period of a month, the letters were purportedly sent.  Yet, it is the
> date of June 29, 2007, 120 days later, and not one single response has come from those
> letters.  None of the letters have been returned and this leads the Plaintiff to
> believe that Melendez did not mail the letters as he stated he did.

(Compl., ¶ 14).  Plaintiff alleged that Defendants told him they mailed the original  285 letters as

a single mailing, but would only allow "Plaintiff to send five of the [follow-up] letters each week"

(id., ¶¶ 19-20).[2]  Plaintiff challenges the reasonableness of the decision to mail five "follow-up"

letters per week (see, e.g., Compl., ¶ 24).[3]

---

[2]  The "follow-up" letters, unlike the original letter, however, do not appear to have been
written to ask for a private bill, but rather were part of plaintiff's attempt to prove his suspicion
that the original letters were never sent by NWDC officials (see Compl., ¶ 16) ("NWDC, under
Melendez, has been very adept at listening to conversations on the telephone and acting on what
they hear.  Thus, on the date 6-28-07 the Plaintiff prepared another 285 letters – one for each
Democrat in Congress and one for each Democrat in the Senate, plus the two Independents, and
submitted them for mailing.  In the follow-up letters presented for mailing the Plaintiff
questioned why he had not been granted any responses to the previous letters.").

[3]  Plaintiff alleged that "it is unreasonable that the Plaintiff be restricted to five pieces of
mail each week where it is necessary to provide the letters to Congress all at once so that a
quorum may be found and discussion on the issue may be had by all pertinent representatives"
(Compl., ¶ 24).  However, it appears that Plaintiff was given this opportunity with the initial

In addition to his allegations about the letters to Members of Congress (see generally id. at ¶¶ 1-62), plaintiff further alleged that Defendants opened and illegally read his confidential and legal mail, and failed to provide first-party records requested under the Freedom of Information Act ("FOIA") and the Privacy Act (see generally id. at ¶¶ 63-120).  Plaintiff also alleged that he has filed grievances relating to his detention, but has been unable to get copies of the documents.  See, e.g., Compl., ¶ 117 ("Plaintiff claims that Melendez, Clark and the Defendants have copies of grievances and Tort Claim demands that were filed in conjunction with all the matters herein and other matters but has failed to provide the Plaintiff with a copy of those documents in violation of [FOIA] and the Privacy Act . . . .").

Prior to the filing of the instant action, Plaintiff filed two cases in the Western District of Washington which brought the same claims.[4]  Specifically, on July 23, 2007, Plaintiff, Antolin Andrew Marks, 1623 E. J Street, Suite 5, Tacoma, Washington 98421, filed the complaint in the case captioned as Antolin Andrew Marks v. Jack Bennett, AFOD, and Neil Clark, Field Office Director, Case No. 07-5372 (W.D.Wash.) (Attached as Exhibit B hereto).[5]  The complaint in the instant case is a duplicate copy of the complaint in Case No. 07-5372; paragraphs 14, 16, 19, 20 and 117 of the instant complaint, as cited in the preceding paragraphs, were also included in the complaint in Case

---

mailing and was unable to find a single congressional sponsor for his request for a private bill.

[4] LCvR 40.5(b)(2) provides that "[a]t the time of filing any civil, including miscellaneous, action, the plaintiff or his attorney shall indicate, on a form provided by the Clerk, the name, docket number and relationship of any related case pending in this court or in any other United States District Court.  The plaintiff shall serve this form on the defendant with the complaint." (emphasis added).  However, the civil cover sheet in this case did not list any related cases (see Document 1, Attachment 1).

[5] Plaintiff certified that he served the complaint in Case No. 07-5372 on July 18, 2007. Plaintiff certified that he served the complaint in the instant case the next day, July 19, 2007.

No. 07-5372, as paragraphs 12, 14, 17, 18, and 104.[6]  Furthermore, both complaints contain a

footnote one, which, in each complaint stated the following:

> A sister suit was sent for filing days before this one.  That suit targets Melendez and
> Clark and the United States and seeks damages under the FTCA.  This suit is
> maintained primarily against the defendants for an injunction rather than for
> damages. (Compl.,¶ 58 n.1; Exhibit B, ¶ 50 n.1.)[7]

Plaintiff sought to proceed in forma pauperis in Case No. 07-5372, but, by Order dated

August 28, 2007, Magistrate Judge J. Kelley Arnold of the Western District of Washington exercised

his discretion and denied Plaintiff's application to proceed in forma pauperis because "Plaintiff has

not shown that [he] is unable to pay the full filing fee to proceed with his lawsuit" (Order attached

as Exhibit C, pages 1-2, hereto).  Magistrate Judge Kelley's description of the Case No. 07-5372

confirmed that the Plaintiff in this case is that same Antolin Andrew Marks who filed the duplicate

complaint in the Western District of Washington:

> Plaintiff is incarcerated at the Northwest Detention Center and is going through the
> process of deportation proceedings.  In the proposed complaint, Mr. Marks alleges
> the names defendants refused to [m]ail 285 letters at one time as legal mail.  Mr.
> Marks alleges the letters are to congressmen.  Mr. Marks admits the defendants will
> mail the documents, at no cost to him, at the rate of five pieces of mail per week.
> (Exhibit C at 1.)

Case No. 07-5372 was dismissed by Order of Judge Ronald B. Leighton issued on November 9,

---

[6]  Jack Bennett and Neil Clark, officials of the U.S. Office of Immigration and Customs
Enforcement ("ICE"), United States Department of Homeland Security, were named as
Defendants in both complaints, and the individual paragraphs relating to them appear to be
identical.  The only difference between the two complaints appears to be that Plaintiff added a
few additional allegations in the complaint in the instant case relating to John Torres, Director of
ICE, claiming that Torres "has failed to adequately train his subordinates, Neil Clark and Jack
Bennett" (Compl., ¶ 1).

[7]  Plaintiff does not seek monetary damages in this case against any of the Defendants,
who are sued in their official capacity only, and has not served any Defendant individually.
Thus, plaintiff seeks declaratory and injunctive relief only in this action.

2007 (Attached as Exhibit C, page 3, hereto).  A final judgment of the District Court was entered

by the Clerk on November 13, 2007 (Attached as Exhibit C, page 4, hereto).

Although Plaintiff did not provide a case number for the "sister case" referenced in Case No.

07-5372, and in the duplicate complaint filed in the instant case, it is clear that the "sister case" was

also filed in the Western District of Washington, and was the first of the three related cases filed by

plaintiff.  Specifically, on June 4, 2007, Plaintiff, Antolin Andrew Marks, 1623 E. J Street, Suite 5,

Tacoma, Washington 98421, filed the complaint in the case captioned as <u>Antolin Andrew Marks v.</u>

<u>Gary Garman, Michael Melendez, Neil Clark, United States of America (United States Immigration</u>

<u>and Customs Enforcement)</u>, Case No. 07-5282 (W.D.Wash.), seeking damages and injunctive relief

(Attached as Exhibit D).  Plaintiff cited the  Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679,

as the basis for his damage claim in Case No. 07-5282, and further alleged violations of FOIA and

the Privacy Act, for the alleged withholding of first-party information requested by Plaintiff and

information he requested about others in connection with his pending legal matters  (<u>see</u> Exhibit D).[8]

By Order dated July 27, 2007, plaintiff's request to proceed <u>in forma pauperis</u> in Case No. 07-5282

was granted (Attached as Exhibit E).  A Scheduling Order was issued by Magistrate Judge Arnold

on October 29, 2007, setting a discovery deadline of March 14, 2008 (Attached as Exhibit F).

By Order dated August 31, 2007, Magistrate Judge Arnold entered an order in ten civil

actions filed by Plaintiff, Antolin Andrew Marks, that had been transferred to Magistrate Arnold

because "[i]n August of 2007, plaintiff [Antolin Andrew Marks] began filing documents which

contain thinly veiled threats and disclosed security issues at the Northwest Detention Center"

---

[8]  Plaintiff alleged that a FOIA request for "the A File that bears the number under which
he is held [A 34 316 600]," but that the file had not been produced (<u>see</u> Case No. 07-5282,
Compl., ¶¶ 17-19).

(attached as Exhibit A, pages 1-4).  Magistrate Judge Arnold placed under seal all pleadings and

materials filed by Plaintiff in the ten cases, and admonished Plaintiff "to conform his conduct to the

rules of civil litigation" or face sanctions (id.).  By Order dated January 25, 2008, Judge Arnold

denied plaintiff's motion to remove or lift the sanctions order in Case No. 07-5282, the "sister case"

(attached as Exhibit A, pages 5-6).

By Order dated October 16, 2007, Magistrate Judge Mary Alice Theiler of the Western

District of Washington issued a Report and Recommendation in Antolin Andrew Marks v. Peter D.

Keisler, Acting Attorney General, Case No. C07-1608-MJP, and recommended that Plaintiff's fifth

habeas petition be dismissed with prejudice.  See Exhibit G at 8.  Magistrate Judge Theiler noted

that Plaintiff had filed eleven civil rights complaints in the Western District of Washington, and

further described Plaintiff, Antolin Andrew Marks, as follows:

> Petitioner has used or has been known by over fifty aliases, including Vincent Daniel
> Hopper, Wayne Ricky Elison Rudder, and Antolin Andrew Marks.  Petitioner's
> fingerprints match the fingerprints of alien Wayne Ricky Elison Rudder, who is a
> native and citizen of Trinidad and who was admitted to the United States on or about
> March 7, 1974, as an immigrant.  (Exhibit G at 2 & n.2.)

### DISCUSSION

**I.    Plaintiff's Action Constitutes Malicious and Frivolous Litigation, Since Similar
        Claims Were Filed in Another Jurisdiction**

The Court may dismiss an action being prosecuted in forma pauperis that is "frivolous or

malicious."  See 28 U.S.C. § 1915(e)(2).[9]  Because Plaintiff is an incarcerated alien facing

---

[9]  Pursuant to 28 U.S.C. § 1915.  Proceedings in forma pauperis:

**(e)(1)**  The Court may request an attorney to represent any person unable to
employ counsel.
**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been
paid, the court shall dismiss at any time if the court determines that–

deportation, he is not a "prisoner" for purposes of the fee requirements of Prisoner Litigation Reform Act ("PRLA"), 28 U.S.C. § 1915. See LaFontant v. INS, 135 F.3d 158, 165 (D.C. Cir. 1998). However, Plaintiff's complaint is still subject to screening by this Court to determine if it is subject to dismissal under 28 U.S.C.§ 1915(e) because it is frivolous, malicious, or fails to state a claim upon which relief may be granted. See, e.g., In re Prisoner Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997).[10]  An in forma pauperis action is "malicious," and therefore subject to dismissal, where the complaint duplicates allegations of another pending lawsuit in another jurisdiction. See Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993).  A dismissal of this action as frivolous or malicious is appropriate and would be reviewable only for an abuse of discretion. Denton v. Hernandez, 504 U.S. 25, 31-34 (1992).

The instant complaint duplicated claims filed in the two cases plaintiff first brought in the Western District of Washington, Case Nos. 07-5282 and 07-5372.  Indeed, the allegations and claims in this case are identical to those in Case No. 07-5372, except that the instant complaint also alleged that Defendant John Torres, Director of ICE, "has failed to adequately train his subordinates, Neil Clark and Jack Bennett and the failure to train has violated the Plaintiff's rights to due process by

---

(A) the allegation of poverty is untrue; or
(B) the action or appeal–
   (I) is frivolous or malicious;
   (ii) fails to state a claim on which relief may be granted; or
   (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. 1915(e) (emphasis added).

[10]  The court must screen prisoner cases against a governmental entity at the initial stage of the litigation under 28 U.S.C. § 1915A, whose language overlaps with the language of 28 U.S.C. § 1915(e), except that the latter provision is "neither restricted to prisoners, nor to cases involving government defendants [and is] applicable throughout the entire litigation process." In re Prisoner Litigation Reform Act, 105 F.3d at 1137.

denying the Plaintiff his right to petition" (Compl., ¶ 1). However, plaintiff's complaint did not seek damages from Torres; rather, plaintiff sued Torres (and the other defendants in the two cases) in their official capacities only. Accordingly, the instant complaint merely duplicated the declaratory and injunctive relief sought in Case No. 07-5372, for the same alleged misconduct by NWDC and ICE officials – an alleged refusal to send, as a single mailing, "follow-up" letters to 285 Members of Congress, and the withholding of first-party information.

Prior to filing the instant case and Case No. 07-5372, Plaintiff filed a self-described "sister case" in the Western District of Washington, Case No. 07-5282. The "sister case" sued ICE officials, including Defendant Clark, for damages and injunctive relief based on the alleged withholding of information requested under FOIA, and otherwise requested in connection with plaintiff's pending legal matters. Thus, the complaint in this case duplicated the claims for declaratory and injunctive relief brought in Case No. 07-5282.

Because the instant case duplicated the claims previously brought by plaintiff in two cases filed in the Western District of Washington, the Court should dismiss this duplicative complaint as frivolous or malicious, pursuant to 28 U.S.C. § 1915(e).

II.    **Alternatively, This Case Should Be Transferred to the Western District of Washington, Pursuant to 28 U.S.C. § 1404(a), Under Well-Settled Principles Prohibiting Duplicative Litigation, and for the Convenience of the Parties and Witnesses and in the Interest of Justice**

Plaintiff, as stated, brought claims in this case that duplicated the claims he brought in two cases he first filed in the Western District of Washington. Thus, if the Court does not dismiss this case as frivolous or malicious, then this action should be transferred to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a), under well-established principles prohibiting duplicative litigation, and for the convenience of the parties and witness and in the interests of

justice.  In that forum, this case may be consolidated with Plaintiff's other pending cases, thereby facilitating judicial economy by allowing this case to be assigned to a judge already well-versed in plaintiff's many cases relating to his detention at the Northwest Detention Center in Tacoma, Washington, and his abuses of the civil litigation process.  In addition, the case should be transferred to the Western District of Washington because plaintiff filed this lawsuit in the District of Columbia, where he has no apparent connection, to litigate an alleged dispute with local officials at NWDC, where he is incarcerated, over his request that the officials pay for a single mailing of "follow-up" letters to 285 Members of Congress.  Plaintiff and all relevant witnesses and records relating to the mail dispute are located in the Western District of Washington.  Venue is therefore proper in that jurisdiction because this case could have been brought there, as required by 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  As a preliminary matter, venue in this case is appropriate in the Western District of Washington for purposes of 28 U.S.C. § 1404(a).  The general venue statute, 28 U.S.C. § 1391, provides in pertinent part:

> (e) A civil action in which a defendant is an officer or employee of the United States . . . . may, except as otherwise provided by law, be brought in any judicial district in which . . . . (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

Clearly, this case could have been brought in the Western District of Washington under 28 U.S.C. § 1391(e) because all disputed events or omissions giving rise to plaintiff's alleged claim took place at NWDC in Tacoma, Washington.   Indeed, not only could plaintiff have filed this action in the Western District of Washington, he did file it there.

Courts apply the "first-filed" rule to prevent simultaneous litigation in different fora if the matters at issue are sufficiently related as to be duplicative. See, e.g., WMATA v. Ragonese, 617 F.2d 828, 830 (D.D.C. 1980).[11] As the Supreme Court recognized in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), "[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." Thus, unlike the doctrine of issue preclusion, the first-filed rule does not require a precise identity of issues; rather, as both the U.S. Supreme Court and the D.C. Circuit repeatedly have held, the first-filed rule is a doctrine of equity that cannot be applied mechanically. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952); Columbia Plaza Corp. v. Secuity Nat'l

_____

[11] WMATA involved a contract between WMATA and a construction company, Square/La Fera. 617 F.2d 828, 829 (D.C. Cir. 1980). In 1974, WMATA terminated the contract upon a finding that Square/La Fera was in default. The termination was upheld on administrative appeal. Id. Thereafter, and pursuant to the dispute-resolution procedure established in the contract, Square/La Fera brought suit in the District Court for Eastern District of Virginia seeking review of WMATA's determinations. Id. at 830. Seven days later, WMATA brought suit in the District Court for the District of Columbia to enforce the contract, arguing that it was entitled to an immediate payment of damages, i.e., even before judicial review of the alleged default had been completed. While acknowledging that the issue of the timing of payment had not been raised in the first suit, this Court found that the issue nevertheless "properly could be raised before the district court in Virginia, which was already considering WMATA's entitlement to damages." Id. (emphasis added). Therefore, this Court dismissed the second suit without prejudice to refiling "once the issues of whether and when [WMATA] could file were resolved." Id.

The Court of Appeals affirmed. The Court noted that the issues raised by the two cases were not identical. 617 F.2d at 830. The Court characterized the first suit as focusing on whether WMATA was entitled to damages at all. It characterized the second suit as focusing on the "closely related" issue of the timing of WMATA's right to payment of damages. Id. Recognizing that resolution of the second question would be "premature" before resolution of the first, and that the second question might also be resolved in the Eastern District of Virginia case, the Court approved the dismissal without prejudice of the District of Columbia case. Id. at 830-31. The Court concluded that "traditional notions of comity . . . and orderly administration of justice" mandated permitting the Square/La Fera case "to run its course before hearing a WMATA enforcement action." Id.

Bank, 525 F.2d 620, 627 (D.C. Cir. 1975).[12]   The Supreme Court counseled in Kerotest that in

dealing with the "conduct of multiple litigation in the federal judicial system," courts should give

"regard to conservation of judicial resources and comprehensive disposition of litigation." 342 U.S.

at 183.   The Supreme Court also recognized that "an ample degree of discretion, appropriate for

disciplined and experienced judges, must be left to the lower courts," in resolving such issues. Id.

at 183-84.   Certainly, "the pendency of a related case in the proposed transferee forum is a powerful

reason to grant a motion for a change of venue," Supco Automotive Parts v. Triangle Auto Spring

Co., 538 F. Supp. 1187, 1192 (E.D. Pa. 1982).

Accordingly, claims and parties need not be identical for this principle of avoiding

duplicative litigation to apply.[13]  "District courts are accorded 'a great deal of latitude and discretion

---

[12]  In Kerotest, the Supreme Court approved use of the first-filed rule in related, but not
identical, cases.  The first suit was brought in the Northern District of Illinois by C-O-Two Fire
Equipment Co. against Acme Equipment Co. for allegedly infringing two patents.  The second
suit was brought in the District Court of Delaware by Kerotest, the manufacturer of the products
sold by Acme, seeking a declaration that C-O-Two's patents were invalid.  C-O-Two later
amended its Illinois complaint to add Kerotest as a defendant.  342 U.S. at 182.  Even though the
cases were not identical, and did not involve all the same parties, the Supreme Court upheld the
trial court's decision to stay the Delaware case pending resolution of the earlier-filed Illinois
case.  Id. at 186.  Among other justifications was the Court's desire to prevent forum-shopping
by the manufacturer.  Id. at 185-86.

[13]  As early as 1960, the D.C. Circuit applied the first-filed rule to "similar" cases filed in
different jurisdictions.  In Maher v. Murray, a probate action, the District Court for the District
of Columbia authorized the guardian ad litem for the decedent's mentally-incompetent widow to
bring suit in this Court to adjudicate "the validity vel non" of an ante-nuptial agreement in which
the widow had renounced any interest in the decedent's estate.  275 F.2d 12, 13 (D.C. Cir. 1960).
The Court authorized suit even though the widow's "committee" already had filed suit in
Maryland seeking to set aside the same agreement.  Id.  On appeal, the D.C. Circuit held that the
authorization to bring suit "violated well established principles of comity."  Id.  As the Court
explained:

> A similar suit was already pending in Maryland, against the proper parties and
> before a court of competent jurisdiction.  No circumstances are presented which

determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" Serlin v. Arthur Andersen, 3 F.3d 221, 223 (7th Cir. 1993).  In a closely analogous context (construing 28 U.S.C. § 1500, the statute that prohibits parties from pursuing a duplicative claim against the United States in the Court of Federal Claims), the Supreme Court has held that in analyzing whether a claim is duplicative, the particular legal theory on which the plaintiffs seeks to proceed in each action is not dispositive.  Keene Corp. v. United States, 508 U.S. 200, 212 (1993).

The application of these principles to this action and the two cases filed in the Western District of Washington demonstrates that Plaintiff's complaint in this case is duplicative of his claims in those cases, and any minor differences in the actions, including the dismissal of one of the cases for failure to pay the filing fee, are immaterial.  Accordingly, the obvious interests in efficient utilization of judicial resources counsel in favor of transfer.  The Court should therefore exercise its broad discretion and transfer this case to the Western District of Washington.

Transfer is also appropriate under 28 U.S.C. § 1404(a) and the decision in Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974) (en banc).  In Starnes, the U.S. Court of Appeals for the District of Columbia Circuit recognized that federal prisoner litigation, while perhaps technically permissible in the D.C. venue, may be more conveniently litigated in the prisoner's district of

---

would justify the bringing of a separate suit on the same issue in this jurisdiction-- a course wasteful not only of judicial time, but of the assets of the parties.

Id.  Accordingly, the Court of Appeals reversed, instructing the lower court to wait until the Maryland action had reached a final conclusion before assessing whether any further proceedings were necessary in the District of Columbia.  Id.

confinement.[14]  Because Plaintiff is an alien incarcerated pending the outcome of deportation proceedings, these same factors are relevant to consideration of this motion to transfer.  Factors to consider in prisoner litigation which may warrant a change of venue include: (1) the prisoner plaintiff's difficulty of communicating with legal counsel; (2) difficulty in transferring the prisoner,[15] (3) availability of witnesses and files; (4) speed of final resolution; and (5) whether the case involves issues of national policy which require testimony of high level administrators located in Washington, D.C.  Id. at 929-33.  Application of these factors in Plaintiff's case weigh heavily in favor of transferring venue to the Western District of Washington, where Plaintiff is incarcerated.

In the complaint in the instant case, Plaintiff challenged the alleged refusal to pay for a single mailing of follow-up letters to 285 Members of Congress, and also sought first-party information under FOIA.  This was precisely the same relief sought in Case No. 07-5372, and the FOIA relief is also sought in the complaint filing in the pending "sister case," Case No. 07-5282.  Not only does Plaintiff "reside" in the Western District of Washington, but all relevant witnesses and the requested records are located there. Furthermore, although Director Torres is named as a Defendant in the instant case, there is little likelihood that high level ICE officials located in Washington, D.C. would be required to testify in this case about the handling of plaintiff's mail in the Northwest Detention Center in Tacoma, Washington.  Perhaps, more importantly, the transportation of plaintiff to Washington, D.C. poses substantial safety, logistic, and financial burdens.  If plaintiff's presence

---

[14]  "[T]here is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia."  Starnes, 512 F.2d at 925 n.7.

[15]  "The burdens and dangers involved in transporting a prisoner across long distances [for court appearances] are, in our opinion, a significant inconvenience  to the Bureau of Prisons and will normally justify transfer." Starnes, 512 F.2d at 931.

14

were required in the District of Columbia for hearings, such an excursion would require government transportation to and from Washington, D.C., accompanying security personnel, housing within a secure facility in this jurisdiction, and escorts to, within, and from the courthouse.  Consequently, venue for plaintiff's cause of action should be transferred to the Western District of Washington, pursuant to Title 28 U.S.C. § 1404(a), which is plaintiff's district of incarceration.

Thus, although "[c]ourts ordinarily accord significant deference to a plaintiff's choice of forum . . . . many cases in this Circuit recognize that plaintiffs that neither reside nor have a substantial connection to their chosen forum, are entitled to less deference." Sierra Club v. Van Antwerp, 523 F.Supp.2d 5, 11 (2007) (citations omitted).  When a genuine choice of venue exists, the court has broad discretion to adjudicate a motion to transfer "according to [an] individualized, case-by-case consideration of convenience and fairness."  Id. (citations omitted).

In addition to the factors discussed above, plaintiff has filed multiple lawsuits in the Western District of Washington and his abuse of the rules of civil litigation are already being monitored in that district by Magistrate Judge Arnold, who is handling a number of transferred cases.  Plaintiff has already failed to follow the Local Rules of this Court.  Pursuant to LCvR 40.5(b)(2), "[a]t the time of filing any civil, including miscellaneous[] action, the plaintiff or his attorney shall indicate, on a form provided by the Clerk, the name, docket number and relationship of any related case pending in this court or in any other United States District Court.  The plaintiff shall serve this form on the defendant with the complaint" (emphasis added).  However, the civil cover sheet in this case did not list any related cases (see Document 1, Attachment 1).  Plaintiff should have advised the Court of the two related cases he had already filed in the Western District of Washington, which would have brought the venue issue to the Court's attention during its initial screening of plaintiff's

complaint, pursuant to 28 U.S.C. § 1915(e).

Finally, Defendants submit that the issue of venue should be resolved at this early stage in this litigation, and before the parties expend considerable resources on the case. Accordingly, Defendants request that the Court stay the deadline by which Defendants must file an answer or otherwise respond to the complaint, which is due February 11, 2008, by previous order of the Court, until disposition of the instant motion.

WHEREFORE, Defendants request that this Court dismiss the present action as frivolous or malicious or, in the alternative, transfer the case to the Western District of Washington, and stay further proceedings until the case is transferred.

Respectfully submitted,


　　　/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


　　　/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


　　　/s/
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney
Civil Division , Room E-4806
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTOLIN ANDREW MARKS,**<br>**1623 E. J. Street, Suite 5**<br>**Tacoma, Washington,** | )<br>)<br>)<br>) |
| | ) |
| **Plaintiff,** | )    **Civil Action No.: 07-1660 (EGS)** |
| | ) |
| **v.** | ) |
| | ) |
| **JOHN P. TORRES, Director of ICE;**<br>**JACK BENNETT, AFOD; NEIL**<br>**CLARK, Field Office Director,** | )<br>)<br>) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>ORDER</u>

Upon Consideration of Defendants' Motion to Dismiss Complaint as Frivolous or

Malicious Or, in the Alternative, Motion to Transfer, and to Stay Further Proceedings Pending

Disposition of Motion, and the entire record herein, it is hereby **ORDERED** that the motion is

**GRANTED**.

It is further **ORDERED** that the complaint in this case is dismissed with prejudice.

It is **SO ORDERED** this _____ day of February, 2008.

_____
Emmet G. Sullivan
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTOLIN ANDREW MARKS,**<br>**1623 E. J. Street, Suite 5**<br>**Tacoma, Washington,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**JOHN P. TORRES, Director of ICE;**<br>**JACK BENNETT, AFOD; NEIL**<br>**CLARK, Field Office Director,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)  **Civil Action No.: 07-1660 (EGS)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Upon Consideration of Defendants' Motion to Dismiss Complaint as Frivolous or Malicious Or, in the Alternative, Motion to Transfer, and to Stay Further Proceedings Pending Disposition of Motion, and the entire record herein, it is hereby **ORDERED** that the motion to dismiss pursuant to 28 U.S.C. § 1915(e)(2) is **DENIED** without prejudice.

It is further **ORDERED** that the motion to transfer is **GRANTED**.

It is further **ORDERED** that this case is transferred to the United States District Court for the Western District of Washington at Tacoma, and the Clerk shall take such actions as are necessary to transfer the entire docket of this case to that jurisdiction.

It is further **ORDERED** that the Clerk shall notify the transferee court that this case was filed by the same plaintiff who has filed a number of civil actions in the Western District of Washington that were transferred to United States Magistrate Judge J. Kelly Arnold by Order dated August 31, 2007.

It is further **ORDERED** that further proceedings in this matter are stayed until further order of the Western District of Washington upon transfer of this case.

It is **SO ORDERED** this _____ day of February, 2008.

_____
Emmet G. Sullivan
United States District Judge

**EXHIBIT A**



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VINCENT DANIEL HOPPER AKA
ANTOLIN ANDREW MARKS,

     Plaintiff,

     v.

JOHN DOE MYERS, *et al.*,

     Defendants.

Case No. C05-5680RBL

ANTOLIN ANDREW MARKS,

     Plaintiff,

     v

JOHN DOE ALBIN, *et al.*,

     Defendants,

Case No. C06-5675RBL

ANTOLIN ANDREW MARKS,

     Plaintiff,

     v.

UNITED STATES OF AMERICA *et al.*,

     Defendant,

Case No. C07-5696RBL

ORDER - 1

ANTOLIN ANDREW MARKS,

     Plaintiff,

    v.                            Case No. C07-5007RBL

CHARLES Mc BURNEY *et al.*,

     Defendants

ANTOLIN ANDREW MARKS,

     Plaintiff.

    v.                            Case No. C07-5259RJB

 DEENA GEPHARDT, *et al.*,

     Defendants,

ANTOLIN ANDREW MARKS,

     Plaintiff,

    v.                            Case No. C07-5282FDB

GARY GARMAN *et al.*,

     Defendants,

ANTOLIN ANDREW MARKS,

     Plaintiff,

    v.                            Case No. C07-5371RBL

UNITED STATES OF AMERICA,

     Defendant,

ORDER - 2

1

2
ANTOLIN ANDREW MARKS,

3
        Plaintiff,

4
    v.
                            Case No. C07-5372RBL

5
JACK BENNETT *et al.*,

6
        Defendants,

7

8
ANTOLIN ANDREW MARKS,

9
        Plaintiff,
                            Case No. C07-5383RBL

10
    v.

11
UNITED STATES OF AMERICA *et al.*,

12
        Defendants,

13

14
ANTOLIN ANDREW MARKS,

15
        Plaintiff,

16
    v.
                            Case No. C07-5395RBL

17
UNITED STATES OF AMERICA *et al.*,

18

19
                            ORDER TRANSFERRING THESE
CASE NUMBERS TO

20
                            MAGISTRATE JUDGE ARNOLD
AND SEALING ALL FILINGS

21
                            FROM PLAINTIFF UNTIL THE
DOCUMENT IS UNSEALED BY

22
                            THE COURT

23

24
      These actions, brought pursuant to 42 U.S.C. 1983.  They have been referred to Magistrate

25
Judges pursuant to Title 28 U.S.C. § 636(b)(1)(B). In August of 2007, plaintiff began filing

26
documents which contain thinly veiled threats and disclosed security issues at the Northwest

27
Detention Center.  To prevent improper disclosure of information and to insure there is no repeat of

28
ORDER - 3

1  Mr. Marks conduct, with the authority of Chief Judge Robert S. Lasnik, the court now ORDERS:

2      1.    All of Mr. Marks cases will be referred or transferred to Magistrate judge Arnold for

3          all matters referred to a Magistrate Judge.

4      2.    All future filings in any federal action filed by Mr. Marks will be referred to the

5          Tacoma Clerks Office Prisoner Correspondence Clerk.

6      3.    The Clerk is directed to file all pleadings and materials submitted by Mr. Marks in

7          pending or future cases, under seal until such time as they have been reviewed by the

8          court to insure they do not contain improper statements or information that threatens

9          any person or facility.

10      3.    Mr. Marks is ordered to conform his conduct to the rules of civil litigation and he is

11          warned that any further misconduct on his part will result in sanctions.  Sanctions may

12          include monetary penalties, the dismissal of actions, and ultimately an order barring

13          Mr. Marks from filing future actions.

14

15  Dated this 31st day of August, 2007.

16

17                  */S/ J. Kelley Arnold*
                United States Magistrate Judge
                J. Kelley Arnold

18

19

20

21

22

23

24

25

26

27

28  ORDER - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN ANDREW MARKS,

         Plaintiff,

      v.

GARY GARMAN *et al.*,

         Defendants.

Case No.  C07-5282FDB/JKA

ORDER

    This <u>Bivens</u> action has been referred to the undersigned Magistrate Judge pursuant to Title 28

U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.

    Mr. Marks now litigates under a sanction as a result of improper filings.  As part of that sanction

documents filed by Mr. Marks are submitted under seal for court review.  Mr. Marks has filed one

documents since entry of the sanction order (Dkt. # 19). Document 19 is a request that the sanctions be

lifted. Mr. Marks has filed this motion in multiple cases. In <u>Marks v Gephardt</u>, 07-CV-5259RJB/JKA the

court denied the motion and stated:

        The final motion which can be ruled on by a Magistrate Judge is plaintiff's motion to
remove the sanctions in this case (Dkt # 50).  In August of 2007, plaintiff sent pleadings to
the court, which, by his own admission, contained "security details" from the facility where
he is housed. Plaintiff sent this document in hand written form and as a sealed filing.
Several days later, plaintiff presented the same information in typed form to the defendants,
allegedly for copying.  Plaintiff avers he took these actions to prove his pleadings were
being read by the defendants.  Plaintiff was immediately segregated.  Plaintiff contends "the
Plaintiff did seek to make a point to the Court and to the Defendants.  The point was well

ORDER
Page - 1

made but not well taken" (Dkt # 50, page 2). Plaintiff is wrong in assuming he has proven his pleadings were improperly being read. Nothing in the United States Constitution prevents prison officials, or in this case detention officials, from scanning outgoing mail, even legal mail. Allowing prison officials to scan outgoing mail helps insure the mail is actually entitled to the privileged status the plaintiff claims. Further, scanning of outgoing mail helps prevent a detainee or prisoner from sending out mail that contains plans to escape or plans to conduct other illegal activity.

Even a cursory glance at Plaintiff's August filings shows the documents are not proper legal filings. The documents are a threat to the security of the facility and are not entitled to any Constitutional protection.

The court's reaction has been to seal the documents in question, (a lesser sanction then dismissal of actions or a permanent bar order). Further, to insure plaintiff does not again submit any improper pleading, the court considers each filing under seal and then either enters an order that the document remains sealed or that the document be unsealed.

Plaintiff argues that the court indicating he submitted "improper filings" is something much worse that what actually occurred (Dkt. # 50, page 2). Plaintiff's filings tell a different story. The documents filed warrant the ongoing sanction. Plaintiff's motion is **DENIED.**

(Marks v Gephardt, 07-5259RJB/JKA Dkt. # 51).

The court will not consider plaintiff's motion in any other case as the motion has been ruled on.

Further, the filing of the same identical motion in multiple cases serves no valid purpose and is one of the

hallmarks of vexatious litigation. Plaintiff is cautioned to discontinue this practice.

The clerk's office is directed to send copies of this order to plaintiff and counsel.


DATED this 25 day of January 2008.


/S/ J. Kelley Arnold
J. Kelley Arnold
United States Magistrate

ORDER
Page - 2

**EXHIBIT B**

07-CV-05372-CMP



FILED        LODGED
RECEIVED

JUL 23 2007

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                              DEPUTY

1   1623 E. J. Street, Suite 5
    Tacoma, Washington 98421
2

3

4   O C I S            UNITED STATES DISTRICT COURT

5            IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

6   Antolin Andrew Marks,            Case No.: 07-5372-RBL/JKA
                                     SUIT FOR AN INJUNCTION
7   Plaintiff,                       FOR: DENIAL OF DUE PROCESS
                                     GUARANTEED BY THE FIFTH
8   vs                               AMENDMENT AND UNDER THE PRIVACY
                                     ACT AND THE FOIA
9   Jack Bennett, AFOD

10  Neil Clark, Field Office Director

11  Defendant

12                          **FACTS**

13        **1.** The Plaintiff is currently held by Immigration and Custom

14        Enforcement Agency. He is held at the Northwest Detention

15        Center headed by ICE. Plaintiff brings this Complaint to the

16        Court because his rights have been violated, deliberately

17        violated by Michael Melendez of ICE and the Plaintiff seeks an

18        injunction against the actions that injure the Plaintiff.

19        **2.** Plaintiff claims that all defendants here are federal

20        employees and acted within the framework of their respective

21        positions.

22        **VIOLATION OF THE RIGHT TO PETITION**

23  Plaintiff claims that he is an American and has a greater right to Petition.

24        **3.** Although Plaintiff is not a prisoner, even prisoners have a

25        First Amendment right to be free from certain interference

COMPLAINT FOR INJUNCTION - 1

1     with their "legal" mail. <u>Wolff v. McDonnell, 418 U.S. 539,</u>

2     <u>577, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)</u>; Watson v. Cain,

3     <u>846 F. Supp. 621, 626 (N.D. Ill. 1993)</u>; see also <u>Turner v.</u>

4     <u>Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64</u>

5     <u>(1987)</u>. Therefore, prison officials may only inspect, not

6     read, certain types of legal mail in the presence of the

7     inmate. <u>Wolff, 418 U.S. at 577</u>; <u>Bach v. People of State of</u>

8     <u>Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974)</u>; cert. denied,

9     <u>418 U.S. 910, 94 S. Ct. 3202, 41 L. Ed. 2d 1156 (1974)</u>. For

10     example, correspondence between an inmate and an attorney

11     (even a potential attorney or legal representative) is deemed

12     confidential and therefore must be opened in the presence of

13     the inmate. <u>Wolff, 418 U.S. at 577</u>; <u>Bach, 504 F.2d at 1102</u>;

14     <u>Watson, 846 F. Supp. at 629, 631</u>.

15   **4.**   Likewise, the Plaintiff has the right to his privileges and

16     immunities as a citizen of the United States, <u>Twining v. New</u>

17     <u>Jersey, 211 U.S. 78, 53 L. Ed. 97, 29 S. Ct. 14 (1908)</u>.

18     Twining gave these examples of privileges and immunities of

19     national citizenship, viz.:

20   **5.**   "The right to pass freely from state to state"; "the right

21     to petition Congress for a redress of grievances"; "the right

22     to vote for national officers"; "the right to enter the public

23     lands"; "the right to be protected against violence while in

24     the lawful custody of a United States marshal." 211 U.S. at

25     97. See also, <u>United States v. Cruikshank, 92 U.S. 542, 553,</u>

(23 L.Ed. 588; Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L. Ed. 745 (1867. It is the claim of the Plaintiff that the defendants here have denied him the twin rights of the right to petition the government secured to him by the First Amendment and the right to seek redress.

6. The Plaintiff further asserts that the Defendants have violated his rights to due process and denied him meaningful access to the Courts, Congress and to legal entities that could affect his incarceration.

7. Plaintiff claims that he has a right under the Fifth Amendment to have the Defendants obey their own administrative rules and that right has been violated by the defendants here.

1

8. First, the Plaintiff claims that it is unquestionable that he has a right to Petition Congress under the First Amendment. The question here is whether the Petitioner here has a right to have the Government Agency that holds him pay for the postage of the mail that he has submitted for delivery to Congress where he is an immigration detainee who seeks a private bill to his benefit for assistance in his immigration case and where their written policies state that the Plaintiff has such a right.

9. It is the claim of the Plaintiff that he has an unqualified right to petition the Congress of the United States.

10. We begin with the fact that the Plaintiff is an immigration detainee being held by the government. He is indigent and has submitted letters to be delivered to Congress because the Immigration and Naturalization Act contemplates the fact that Congress can grant relief to any immigration detainee through a private bill. As such, the Plaintiff must Petition Congress and Petition each member of Congress for a private bill which would alleviate the conditions of his confinement.

11. The last denial of this right came on the date of 7-17-07 when Jack Bennett, the newly installed Assistant Field Office Director of NWDC denied the Plaintiff the ability to send letters to Congressional Representatives, the Senate Representatives of the Plaintiff's Party.

12. On or about February 2nd, 2007 the Plaintiff provided to defendants a document that sought that the document be copied. This document included a letter to the members of Congress who are Democrats, a copy of the Visa Application for Rudder, Wayne, a scan of four pictures showing the Plaintiff at the age of 19, one document showing Rudder at the age of 14, and the exact same documents to the Senators who are Democrats and Independents. Michael Melendez refused to copy the letters stating that it was unreasonable for the Plaintiff to seek copies of the letters. Nonetheless, the Plaintiff received copies of the letters from another source and ultimately presented 285 letters to Melendez to be mailed to Congress.

After substantial resistance, over a period of a month, the letters were purportedly sent. Yet, it is the date of June 29, 2007, 120 days later, and not one single response has come from those letters. None of the letters have been returned and this leads the Plaintiff to believe that Melendez did not mail the letters as he stated he did.

**13.** It is the Plaintiff's claim and belief that the letters were not sent by Melendez as he stated and he is charged here with deliberately infringing upon the Plaintiff's right to seek to Petition Congress.

**14.** Thus, on the date of June 10th, 2007 the Plaintiff spoke to the Postmaster of the Tacoma Mail Office. That individual informed the Plaintiff to resubmit the letters for mailing and he would keep an eye out to determine whether or not the mail was being sent. NWDC, under Melendez, has been very adept at listening to conversations on the telephone and acting on what they hear. Thus, on the date 6-28-07 the Plaintiff prepared another 285 letters-one for each Democrat in Congress and one for each Democrat in the Senate, plus the two independents, and submitted them for mailing. In the follow-up letters presented for mailing the Plaintiff questioned why he had not been granted any responses to the previous letters. Because the Plaintiff must submit the letters for copying to Melendez, there is no question that Melendez read the letters and then realized that the Plaintiff was questioning why his mail had

not been responded to. Thus, on the date of 6-28-07 Michael Melendez stated that the letters would not be mailed. What Mr. Melendez stated was the following:

**15.** "You receive postage of all legal mail to the Courts. The documents to Congress are not legal and they are special correspondence. You are hereby limited to five pieces of special correspondence per week." Thereby, Melendez stated that he was not going to send the letters to congress in any timely manner, meaning that it would take Plaintiff a full year, one month and one week to send all the letters to Congress that he wishes to send. The question regarding this part of the suit is whether the actions of Melendez qualifies as a violation of the right to petition.

**16.** More than the right to petition, the Plaintiff claims that the mail should have been sent as a first matter because it was "Legal Mail" and the Supreme Court has held that the facilities that hold individuals must bear the cost of the postage where the postage is legal mail.

**17.** Plaintiff claims that since the Defendants now state that they did mail the original 285 letters, the question is why they state now that they will not do so.

**18.** In fact, the Defendants now state that they will allow the Plaintiff to send five of the letters each week. At that pace it would take over a year to send the letters to Congress. The question becomes, (What is the difference if they send the

letters all at once or send them five a week? In any case they
are still paying for the letters to be sent.)

19. There is a further factor that defeats any pretension to
penological interest in that they state that they did send the
documents the first time. It is reasonable that the Plaintiff
follow up on the letters where he has not received a response
in almost six months to any of the 285 letters he sent to the
Congress and Senate. It is in the Plaintiff's interest to seek
that the Congress identify whether they received the letters
at all because the suspicion here is that they were never sent
in the first place.

20. The Defendants have stated that it is "unreasonable", but
the ICE Standards clearly state: **Indigent detainees will be
permitted to mail the following at government expense: 1. All
correspondence related to a legal matter, including
correspondence to a legal representative, potential legal
representative and any court.**"

21. Mr. Bennett has claimed that the clause in the Section of
the ICE Standards where it states, "Indigent detainees will be
permitted to mail a reasonable amount of mail each week,
including at least five pieces of special correspondence and
three pieces of general correspondence" allows him to deny the
postage of the letters to Congress. Plaintiff asserts that the
reading of the rule is inconsistent with the intent that legal

1    mail that is directed to such a place as Congress must be

2    sent.

3    **22.** Plaintiff claims that is unreasonable that the Defendants

4    will prevent him from sending the letters to Congress as a

5    batch, but that they will still allow them to be all sent at a

6    pace of five per week. This unreasonability comes through the

7    fact that Congress works as a deliberative body and it is

8    unreasonable that the Plaintiff be restricted to five pieces

9    of mail each week where it is necessary to provide the letters

10   to Congress all at once so that a quorum may be found and

11   discussion on the issue may be had by all pertinent

12   representatives.

13   **23.** Plaintiff claims that the reading by the Defendants could

14   lead to the Plaintiff being restricted to five pieces of legal

15   mail to the Courts and to the lawyers who are representing the

16   parties where the Plaintiff has over ten cases pending.

17   **24.** Plaintiff claims that the restriction is a back door

18   attempt by the Defendants to prevent the Plaintiff from

19   sending his legal mail and Plaintiff claims that the mail is

20   routinely returned for spurious causes by the Defendants in

21   any case.

22   **25.** Moreover, it is absolutely important that the ICE Standards

23   does not state "five pieces" as a limitation, but states that

24   indigents will be able to send "At least five pieces of mail."

25   This is, the Plaintiff claims, consistent with the reading

1    that the INS intended the indigents to mail all his legal

2    material freely.

26. Plaintiff contends that the Defendants were, at the time

4    this matter arose, holding a money order in the amount of 100.

5    in the Plaintiff's name. The Plaintiff sought that they take

6    the 100. money order and pay for the postage. They refused.

7    This shows that their intent is to prevent the communication

8    with Congress and they would rather defend the lawsuit rather

9    than allow the Plaintiff to contact the Congress.

27. Another aspect here is the absolute fact that the

11    correspondence in this case represents a legal document. The

12    letters to Congress seeking a private bill must be respected

13    as not just a vehicle of petition, but also a legal vehicle

14    because any decision made by Congress is appealable.

28. Moreover, the Plaintiff claims that this is an avenue that

16    he must exhaust. The Court will demand that the Plaintiff

17    attempt at any and all relief that may be possible. If the

18    Plaintiff did not seek this type of relief, the Government in

19    their pleadings before the Ninth Circuit would then state, "He

20    could have asked Congress for a Private Bill but he failed to

21    do so."

29. On another vein, any pretended penological interest by the

23    Defendants is rebuttable by the fact that the Plaintiff, if he

24    were so inclined, could select persons from among the

25    population who are indigent and have them each send five

1    letters to Congress on his behalf. The letters, according to

2    the Standards cannot be opened, so the Defendants purportedly,

3    if they obeyed their own rules, they would not open the

4    letters and the letters would be automatically sent.

5    **30.** The Defendants here, the Plaintiff claims, are unreasonable

6    in their behavior and their behavior is meant to deny the

7    Plaintiff the opportunity to reach Congress because they know

8    that Congress will investigate and the Plaintiff will be found

9    to be a citizen of the United States.

10   **31.** The first question that must be answered then is whether

11   the mail qualified as legal mail and whether the mail should

12   have been regarded as legal mail, and whether Melendez should

13   have known that the mail was legal and that the Plaintiff had

14   a legal right to send the mail. Plaintiff is unaware of a

15   written definition of the term "legal mail," but here the

16   Plaintiff will state that where the mail states clearly that

17   it is legal mail, and it is directed to a party who can have

18   an impact, good or bad over the conditions of confinement or

19   the confinement of the person, then the mail must be

20   considered legal mail.

21   **32.** In this case, the mail to Congress clearly meets the

22   definition of legal mail. First, a person wishing to have a

23   private relief bill introduced must, of course, persuade a

24   member of Congress that he or she has a meritorious claim for

25   relief. If the Senator or Representative believes the matter

merits legislative consideration, the member of Congress

introduces the private bill for the relief of a named

individual or individuals. The bill is referred to the

Judiciary Committee of the house of Congress in which it is

introduced. Most such bills are introduced in the House of

Representatives. Note, Private Bills In Congress, 79 Harv. L.

Rev. 1684, 1688 (1966). The Senate rules of procedure for

private immigration bills are generally less formal than those

of the House. Any private bill request must include basic

biographical information on the proposed beneficiary. The

requisite composition of a private bill request varies

slightly based upon the status of the proposed beneficiary.

Subcomm. on Immigration, Senate Judiciary Comm., 105th Cong.,

Rules of Procedure: Private Immigration Legislation 1 (1999).

Having located the fact that there is the possibility that

Congress and the Senate can act on a person's immigration

matter and grant relief, the question becomes does the person

have the right to petition congress for the relief he seeks

and does that right bear the protection of the Constitution?

**33.** Plaintiff here claims that he has a right to Petition

Congress, a secondary right to seek relief under the private

bill and has a right to transmit that information to Congress

because he must persuade a member of Congress to introduce

such legislation to award relief. In order to gain the ear of

Congress, the Plaintiff must be able to write the letter or

1   the submission to the member of congress and he must be
2   assured that the letter he writes will actually be transmitted
3   to Congress. Plaintiff first states that for Michael Melendez
4   to state that he will not mail the letter to Congress is a
5   violation of the right to petition, the right to send legal
6   mail, and the right to seek redress, and a violation of due
7   process under the Fifth Amendment and the First Amendment.

8   **34.** In support of the right, ICE National Standards which
9   state, "Indigent detainees will be permitted to mail the
10  following at government expense: 1. All correspondence related
11  to a legal matter, including correspondence to a legal
12  representative, potential legal representative and any court."
13  It is clear here that the letters to Congress constituted
14  legal mail as they were "correspondence related to a legal
15  matter", where that legal matter is the Plaintiff's
16  immigration matter.

17  **35.** Further, the Standards state, Special correspondence" is
18  the term for detainees' written communications to or from
19  private attorneys and other legal representatives, government
20  attorneys, judges, courts, embassies and consulates, the
21  president and vice president of the United States, members of
22  Congress, the Department of Justice (including INS and Office
23  of the Inspector General), the U.S. Public Health Service,
24  administrators of grievance systems, and representatives of
25  the news media." Thus, the mail to Congress was guaranteed to

1    be sent due to the fact that it is special correspondence

2    related to a legal matter. As the ICE Standards establish the

3    right that the Plaintiff has to mail his letters to Congress,

4    Melendez erred when he failed to allow the letters to be

5    mailed.

6    **36.** Plaintiff claims that he has a right to have the Defendants

7    follow their own rules where those rules provide for due

8    process to the Plaintiff.

9    **37.** plaintiff claims that he has been harmed by the failure of

10   the Defendants to follow their own rules.

## PRIVATE BILL BY CONGRESS OR THE SENATE

12   **38.** Initially, the Attorney General had no discretion in

13   ordering deportation, and an alien's sole remedy was to obtain

14   a private bill from Congress. See <u>Foti v. INS, 375 U.S. 217,</u>

15   <u>222 (1963)</u>. The first measure of statutory relief was included

16   in the Alien Registration Act of 1940, 54 Stat. 670. Under the

17   statutory predecessor of § 244, suspension of a deportation

18   order could be granted only if the alien demonstrated

19   "exceptional and extremely unusual hardship." Immigration and

20   Nationality Act of 1952, § 244 (a)(1), Pub. L. 414, 66 Stat.

21   214. This provision was amended to require that the alien show

22   that deportation would result in "extreme hardship," Act of

23   Oct. 24, 1962, Pub. L. 87-885, § 4, 76 Stat. 1248.

24   **39.** The federal immigration laws are exceedingly complex. See

25   Lok v. INS, 548 F.2d 37, 38 (2d Cir. 1977) (federal

1    immigration laws bear "striking resemblance . . . to . . .

2    King Minos' labyrinth in ancient Crete."). The INA enumerates

3    thirty-three general categories of people who may not enter

4    the United States. See 8 U.S.C. § 1182. Deportable persons can

5    come from these or nineteen other categories. See 8 U.S.C. §

6    1251. Beyond this, the INA provides for many circumstances

7    which prevent a "deportable alien" from actual deportation.

8    See 8 U.S.C. § 1254 (petition to suspend deportation); 8

9    U.S.C. § 1158 (political asylum); 8 U.S.C. § 1255 (adjustment

10   to lawful permanent resident status); INS O.I. § 242(a)(22)

11   (deferred action status). Deportation cases may be reopened on

12   petition to consider evidence previously unavailable, or an

13   Immigration Judge or the Board of Immigration Appeals may

14   reopen the case sua sponte. See 8 C.F.R. §§ 3.22, 242.22. A

15   final administrative order of deportation can be stayed by the

16   district director, 8 C.F.R. § 243.4, by a private bill in

17   Congress, INS O.I. § 107.1, or if departure is "prejudicial to

18   the interests of the United States," 8 C.F.R. § 215.3. All

19   these determinations are appealable to the BIA, the Circuit

20   Courts of Appeals and, potentially, to the Supreme Court. See

21   8 U.S.C. § 1105a(a) (review of deportation decisions may be

22   had in federal appellate court); 8 C.F.R. § 3.1(b) (appellate

23   jurisdiction of 314).

24   **40**. Because of this skein of provisions, there is no assurance

25   that a (person) subject to deportation will ever be deported.

1    An illegal entrant might be granted federal permission to

2    continue to reside in this country, or even to become a

3    citizen. In light of the discretionary federal power to grant

4    relief from deportation, [a governmental authority] cannot

5    realistically determine that any particular undocumented

6    (person) will in fact be deported until after deportation

7    proceedings have been completed. It would of course be most

8    difficult for the [governmental authority] to justify a denial

9    of [a benefit] to a [person] enjoying an inchoate federal

10   permission to remain. Plyler v. Doe, 457 U.S. 202, 226, 72 L.

11   Ed. 2d 786, 102 S. Ct. 2382 (1982) (citations omitted).

**41.** In the past, there was legislative participation in some of

the adjustment procedures we have discussed, such as

suspension of deportation and relief under the Displaced

Persons and Refugee Relief Acts. But these were primarily

devices for administrative dispensation, with a requirement

for legislative scrutiny when administrative action was

favorable. However, the constitutionality of such legislative

participation is now doubtful to the extent that such

legislative approval is required before an administrative

decision can become final, See Chadha v. INS, 462 U.S. 919

(1983).

**42.** For many years there were increasing requests for direct

intervention by Congress in individual cases. When all other

roads have been explored, when administrative relief has been

1    denied and court action has proved fruitless, many persons

2    have sought to avert the impact of the immigration law by

3    special legislation. The introduction of a private immigration

4    relief bill does not in itself block removal. But in many

5    cases it will induce the administrative authorities

6    voluntarily to stay their hands until Congress can act, (For a

7    holding that court relief may be available if such a stay is

8    denied, see Knauff v. McGrath, 181 F.2d 839 (2d Cir. 1950).)

9    **43.** Private immigration bills serve an array of functions. They

10    allow for notions of fairness and equity to mitigate the

11    frequently harsh operation of general immigration standards.

12    More importantly, the proliferation of private bills of

13    similar substance may expose a current law's deficiencies and

14    spur Congress to amend the law of general applicability.

15    Private bills have provided impetus for changes in the

16    national origins quota system and exclusion laws, and have

17    highlighted systemic gender inequities under naturalization

18    laws, Robert Hopper & Juan Osuna, Remedies of Last Resort:

19    Private Bills and Deferred Action, 97-06 Immigr. Briefings 2-3

20    (June 1997). Conversely, general immigration laws may promote

21    private bills. Restrictive immigration measures like the

22    Illegal Immigration Reform and Immigrant Responsibility Act of

23    1996 (IIRAIRA), Illegal Immigration Reform and Immigrant

24    Responsibility Act of 1996 (IIRAIRA) (enacted as Division C of

25    Omnibus Consolidated Appropriations Act, 1997, Pub. L. No.

1    104-208, 110 Stat. 3009) often prove overinclusive in

2    practice, thus generating a bevy of private bill requests from

3    individuals with sympathetic claims, Hopper & Osuna, supra

4    note 3, at 1.

5    **44.** Statistics illustrate the ebb and flow in the popularity of

6    private immigration bills. In the 78th Congress (1943-1944),

7    163 private immigration bills were introduced; only twelve

8    were enacted, Immigration and Naturalization Service, Dep't of

9    Justice, 1992 Statistical Yearbook of the Immigration and

10   Naturalization Service 178 (1993) (Table 79). Thereafter the

11   number of bills and enactments rose sharply. In the 90th

12   Congress (1967-1968), 7,293 private immigration bills were

13   introduced and 218 were enacted. In the 91st Congress (1969-

14   1970), 6,266 private immigration bills were introduced and 113

15   were enacted, Office of Immigration Statistics, Dep't of

16   Homeland Security, 2002 Yearbook of Immigration Statistics 212

17   (2003) (Table 55) [hereinafter 2002 Immigration Statistics],

18   available                                                  at

19   uscis.gov/graphics/shared/aboutus/statistics/ybpage.htm (last

20   visited July 13, 2004). These bills accounted for almost half

21   of all bills, both public and private, introduced in Congress

22   during those years, See Sidney Rawitz, In the Hands of

23   Congress: Suspension of Deportation and Private Bills, 57

24   Interpreter Releases 76, 80 (Feb. 14, 1980).

25   Legislative Procedure

**45.** A person wishing to have a private relief bill introduced must, of course, persuade a member of Congress that he or she has a meritorious claim for relief. If the Senator or Representative believes the matter merits legislative consideration, the member of Congress introduces the private bill for the relief of a named individual or individuals. The bill is referred to the Judiciary Committee of the house of Congress in which it is introduced. Most such bills are introduced in the House of Representatives. Note, Private Bills In Congress, 79 Harv. L. Rev. 1684, 1688 (1966).

**46.** It is this last item that Plaintiff claims that makes the documents he sought to send to Congress legal mail, above and beyond the directive by ICE National Standards and above and beyond the rights to petition in the First Amendment.

**47.** Plaintiff claims that the Defendants violated that right.

**House Private Bills Procedures**

**48.** Since there are no statutory guides for such legislation, the standards for judgment are not fixed. However, the Subcommittee on Immigration and Claims of the House Judiciary Committee has published rules of procedure for private immigration legislation. Subcomm. on Immigration and Claims, House Judiciary Comm., 107th Cong., Rules of Procedure and Statement of Policy for Private Immigration Bills (2001) [hereinafter House Rules of Procedure], available at www.house.gov/judiciary/documents.htm (last visited July 12,

2004). **All requests for a private immigration bill must begin** with a letter to the chairman of the subcommittee detailing the relevant facts of the case and must include ``all pertinent documents.'' Id. at 1. These should include the basic biographical information of all proposed beneficiaries, close relatives, and interested parties, information detailing all entries and departures to and from the United States, the status of all pending petitions and immigration proceedings, occupational histories of proposed beneficiaries, and a signed statement from each beneficiary stating that he or she requests the relief sought by the private bill. Id. Most importantly, the request must include an exposition detailing how failure to provide for the desired relief will result in ``extreme hardship'' to the beneficiary. Id.

**49.** The showing above exposes the fact that the Plaintiff has the absolute right to seek relief through Congress and seeking such relief is a legal matter under the Fifth Amendment, not only a right of petition under the First Amendment.

**50.** Plaintiff claims that he resubmitted the documents for mailing on or about the date of June 20, 2007 and Melendez again refused to mail the documents and this prevented the Plaintiff from gaining due process in his immigration proceeding in that the Plaintiff had a right to seek the relief from congress under the law and that right was

1   deliberately taken away from him by Melendez and now by Jack

2   Benett[1].

3   **PREJUDICE FROM THE NOT MAILING OF THE DOCUMENTS**

4   **51.** Plaintiff is a citizen of the United States who is held by

5   ICE. He has a right to seek all available relief from the

6   continuing confinement and he has the right to seek relief

7   through the act of Congress. Plaintiff, because he has been

8   denied the opportunity to send the letters to Congress, is

9   caused to spend an overlong time in custody. First, Melendez

10  was wrong for not sending the first batch of letters and

11  pretending that he had. Next, Melendez was wrong for

12  preventing the mailing of the second bunch of letters that

13  were to be sent to Congress and this has caused the

14  Petitioner's claim not to be heard.

15  **52.** A private bill is provided for in 8 CFR, see <u>INS v Jong Ha</u>

16  <u>Wang, 450 U.S. 139, 140 and n.1 (1981)</u>. Mr. Melendez responded

17  that it was "unreasonable" to approve those copies despite the

18  fact that plaintiff has an absolute right to reach the

19  senators and the congressmen and women under two amendments;

20  the Due Process Clause of the Fifth Amendment provides the

21  right to reach the senators and the congress and the First

22  Amendment right to petition provides the right to reach the

23  Senators and the Congress. Yet, Mr. Melendez proclaimed that

24

25  [1] A sister suit was sent for filing days before this one. That suit targets Melendez
and Clark and the Untied States and seeks damages under the FTCA. This suit is
maintained primarily against the defendants for an injunction rather than for damages.

1    it was "unreasonable" to seek such copies and did not approve

2    them. When the copies were gained from other sources, Mr.

3    Melendez failed to mail the letters on two different occasions

4    that they were presented to him for mailing. Because Mr.

5    Melendez failed to mail the letters to Congress and wished to

6    place restrictions on the mailing of letters to Congress, he

7    violated my clearly established rights to petition and to seek

8    due process through a private bill from congress.

9    CLAIM TWO

10   ILLEGAL OPENING OF LEGAL MAIL/CONFIDENTIAL MAIL

11   **53.** Plaintiff    claims    that    Michael    Melendez    has    either

12   personally opened legal/confidential mail, or authorized the

13   opening of confidential legal mail to the detriment of the

14   Plaintiff's rights.

15   **54.** In particular, the Plaintiff claims that Michael Melendez

16   has authorized and approved the opening of correspondence, the

17   copying of correspondence, the reading of correspondence where

18   that correspondence was headed to the Seattle Times Newspaper

19   and legal entities.

20   **55.** Plaintiff claims that he has a right to communicate with a

21   reporter or the newspaper in a confidential letter. Moreover,

22   he claims that he has the right to such privacy given by ICE

23   National Standards which state, "Indigent detainees will be

24   permitted to mail the following at government expense: 1. All

25   correspondence    related    to    a    legal    matter,    including

COMPLAINT FOR INJUNCTION - 21

correspondence to a legal representative, potential legal

representative and any court." Further, the Standards state,

"Special correspondence" is the term for detainees' written

communications to or from private attorneys and other legal

representatives, government attorneys, judges, courts,

embassies and consulates, the president and vice president of

the United States, members of Congress, the Department of

Justice (including INS and Office of the Inspector General),

the U.S. Public Health Service, administrators of grievance

systems, and representatives of the news media."

56. The ICE Standards state, specifically, "Staff shall neither

read nor copy special correspondence." The fact is that the

Plaintiff will establish the fact that his special

correspondence was opened by Melendez, under Melendez's

authorization, and Melendez knew or should have known that it

was illegal and unconstitutional to breach the security of

that instrument which was opened, and copied and then used by

Melendez for his own purposes.

57. In fact, ICE National Standards state, "Outgoing special

correspondence will not be opened, inspected or read." Here,

Melendez went further than opening the mail, he authorized the

copying of the mail and reading of the mail and using of the

mailed letter in a disciplinary against the Plaintiff.

2

**58.** Melendez has also been involved in the opening of another piece of mail directed to the Australian Embassy. This mail was directed to the Australian Embassy and the mail was opened, the document removed and photocopied and used as an exhibit by ICE before the Immigration Court. Plaintiff claims that he was violated of his due process rights by the opening of his mail directed to the Australian Embassy.

**59.** Moreover, the Defendant may claim that he gained the document when it was presented for copying by the Plaintiff, but, even if the document was presented for copying, the Defendant has no right under the law to read that material where it is clearly a legal document on its face without it being read. The application to the Australian Embassy was a form seeking asylum in Australia away from the United States because of the problems he has been put through by the ICE agency. ICE has absolutely no right to read legal material presented for copying. In Wolff v. McDonnell, 418 U.S. at 575-77, the Court upheld a prison regulation that allowed staff to inspect, but not to read, inmates' legal mail. Lower courts have held that legal mail may not be read nor copied without the permission of the inmate. Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981); Ramos v. Lamm, 639 F.2d 559, 582 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 68 L. Ed. 2d 239, 101 S. Ct. 1759 (1981); Guajardo v. Estelle, 580 F.2d 748, 758-59 (5th Cir. 1978). The Ninth Circuit has previously

1    held that violation of confidentiality in legal documents

2    presented for copying violates the meaningful access to the

3    Courts, Casey v Lewis, 43 F. 3d 1261 (Overruled on other

4    grounds, Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S. Ct.

5    2174, 135 L. Ed. 2d 606 (1996). Although the matter was

6    overruled by the Supreme Court, it was not overruled on the

7    merits of the claims, but on the lack of standing to proceed

8    with the claims. In any case, the Supreme Court has previously

9    stated that the mail should be confidential and the copies

10   should be confidential.

11   60. Yet, the Plaintiff claims that Melendez has gone further

12   than this in his violations of the rights of the Plaintiff. In

13   particular, the Plaintiff complains to the fact that he, of

14   all 1,000 plus detainees at NWDC receives special treatment

15   for his copy requests. First, the Plaintiff alleges and will

16   prove that Melendez has allowed his staff to keep copies of

17   the legal papers submitted by the Plaintiff for copying. He

18   has allowed the reading of the papers, and he has allowed the

19   faxing of the papers to counsels adverse to the Plaintiff and

20   this will all be proven through discovery material held by ICE

21   and GEO.

22   61. Plaintiff has been injured by the continuing actions of

23   Melendez where the documents the Plaintiff prepares are

24   practically obsolete once he provides a document to be copies

25   because the documents are faxed to counsels by GEO under

1    Melendez's guidance and the counsels act on the content of the

2    documents   and   this   leaves   the   Plaintiff   at   a   marked

3    disadvantage.

4    **62.** Plaintiff has been bothered by stressful conditions of

5    confinement where he must present the materials to Melendez to

6    gain   copies   and   must   succumb   to   the   illegal   actions   of

7    Melendez.

8    **63.** Plaintiff has not been the lone person whose mail is

9    tampered with by Melendez and whose copies confidence are

10   violated by Melendez. One detainee, in particular, Damion

11   Bromfield's legal mail was opened by Geo acting under

12   Melendez's guidance.

13   **64.** Other detainees have routinely been denied their right to

14   confidential   mail   when   it   is   legal   mail.   Plaintiff

15   specifically claims and alleges that the Grievance files of

16   Geo and ICE will show the fact of the violations of law.

17

18

19                        **READING CONFIDENTIAL MAIL**

20   **65.** Plaintiff claims that the Court must enjoin the Defendants

21   of their behavior of reading and opening confidential mail.

22   **66.** Plaintiff claims that on several occasions, the latest

23   being   on   7-17-07   he   was   ordered   to   open   special

24   correspondence.

25

67. Plaintiff claims that he was ordered by Jack Bennett to open the letters directed to John P. Torres and once the letters were opened the letters were not mailed to John P. Torres.

68. Plaintiff claims that the letters to Torres contained a complaint for exhaustion and also contained the 285 letters that Bennett and Melendez and Clark refused to send to Congress.

69. Plaintiff claims that he sought that Torres, the ultimate supervisor of Clark, Bennett, and Melendez, order Clark, Bennett and Melendez to mail the documents. The Complaint also requested that Torres order the Defendants to fix the telephones so that there would be communication to counsel provided and that the communications be confidential.

70. Plaintiff claims that Bennett stated that Clark had ordered him not to send the letter.

71. Plaintiff claims that Bennett stated hat he had spoken to Melendez and to Clark.

72. Interestingly enough, Bennett also stated that he believed that the original letters to Congress had been made and he also stated that he wondered at the reasonability of sending the letters once and not sending them the second time.

73. Plaintiff claims again that the Defendants must be made to follow their own rules where those rules are for the protection of the Plaintiff's due process rights.

74. Plaintiff claims that the ICE Standards state, "Special Correspondence is the term for detainees' written communications to or from private attorneys and other legal representatives; government attorneys; judges, courts, embassies and consulates; the president and vice president of the United States, members of Congress, the Department of Justice, including INS and Office fo the Inspector General; The U.S. Public Health Service; administrators of grievance systems and representatives of the news media." ..."Outgoing special correspondence will not be opened, inspected or read."

75. Yet, on 7-17-07 Bennett ordered the Plaintiff to open the letters directed to John P. Torres, Director of the INS Removal Unit, Bennett's ultimate boss.

76. Yet, previously, Melendez presided over the opening of the Plaintiff's mail to the Seattle Times.

77. Yet, Melendez presided over the opening of the Plaintiff's letter to Neil Clark of ICE.

78. Yet, the documents that are printed in the law library where they are special correspondence are read liberally by the Defendants.

79. Yet, the Defendants keep a copy of the Plaintiff's legal material routinely and read that material,

80. Yet, the Defendants fax a copy of the legal documents of the Plaintiff to their counsel for their own purposes.

81. Yet, previously, Melendez presided over the opening of the Plaintiff's mail to the Australian Embassy and the copying of that mail to the Australian Embassy where the ICE Standards state specifically, Special Correspondence shall not be read or copied.

## COPIES OF LEGAL DOCUMENTS

82. Plaintiff cannot complain enough of the lack of confidentiality in his legal documents. First, the documents that are printed off the Computer are read by the librarian under direction by Melendez.

83. Second, the documents that are submitted for copying are read by the Warden under guidance and direction by Melendez.

84. Third, the documents are copies under the Direction of Melendez for the personal purposes of Geo and ICE.

85. Fourth, the documents submitted for copies are used by ICE and Geo for their own purposes including faxing documents to their counsels, and using the documents in "Declarations" to the District Court and the Immigration Court.

86. Plaintiff claims that it violates his right to meaningful access where the Defendants have copied his legal documents for their own purposes, used those documents for their own purposes, and faxed those documents to their counsels for their own purposes.

87. Plaintiff claims that when the documents printed in the library is read by the librarian it is a violation of the right to confidentiality.

88. Plaintiff claims that when he spoke to Mr. Bennett on 7-17-07 Mr. Bennett stated that Plaintiff's copies were sent to the Warden and held because the Plaintiff submits copies on a regular basis and those copies must be reviewed by the Warden. He did not state a reason why the Plaintiff's documents receive more scrutiny than other detainees where the other detainees copy requests are not sent to the Warden's Office, are not held for over long periods, are not read and are not faxed to the counsels of the Warden and ICE.

### REJECTING MAIL WITHOUT DUE PROCESS

89. Plaintiff claims that the Defendants' policy of returning mail without giving a person an opportunity to object to the return of mail is a denial of due process.

90. Plaintiff claims that his mail was returned on one occasion when that mail was sent by a counsel.

91. Plaintiff claims that the Defendant's policy of returning items received in the mail denies due process.

92. In particular, the Plaintiff claims that the Defendants have returned mail that have been sent to the detainees where those mails held documents that are to be used to support the immigration case.

93. Plaintiff claims that the Defendants must provide the Plaintiff and other detainees an opportunity to object to their mail being returned and they must be granted the right that the facility will hold that mail while the appeal is pending through the ultimate denial of that appeal by the Courts.

94. Plaintiff claims that his rights have been injured by the failure to train and supervise and through deliberate action to deny his due process in that Melendez, Bennett, Clark and the Defendants has approved THE GEO GROUP INC.'s employees mishandling of the Plaintiff's mail. It is the position of the Plaintiff that the mail must be placed in the First Class mail when it is designated.

95. It is further the Plaintiff's claim that the First Class mail, must actually be given to the Post Office Person who arrives to collect the mail.

96. It is the Plaintiff's claim that the only alternative to such mailing is to hand the letter directly to the person it is directed to or to place it into a box where it is general practice that the mail will be received by the person, such as Melendez, Bennett, Clark and the Defendants.

97. What Melendez, Bennett, Clark and the Defendants has done and has encouraged is to allow Geo Employees to not place the letters into the mail, to return the letters and they then demand that the Plaintiff place the First Class Mail into the ICE box in the unit where that box is susceptible to opening by detainees.

1   **98.**      It is the Plaintiff's claim that when he mails documents to any

2       person, including Michael Melendez, Bennett, Clark and the Defendants,

3       the mail is to either be placed into the U.S. Mails as directed, or

4       alternatively placed into the mailbox of Michael Melendez, Bennett,

5       Clark and the Defendants or the other person the Plaintiff seeks to mail

6       the letter to **especially** because these are legal defendants.

7   **99.**      Plaintiff claims that his due process has been violated by the

8       failure to mail his documents and such failure is a source of recurring

9       stress upon the Plaintiff.

10  **100.**     In fact, the Plaintiff claims that the American Correctional

11      Association's Recommended Standards include a clause that allows for

12      confidential communications with Melendez, Bennett, Clark and the

13      Defendants, Clark, or any other custodian.

14  **101.**     Moreover, ICE National Standards include a clause that allow

15      for confidential detainee communications with Melendez, Bennett, Clark

16      and the Defendants and any other person who works in the facility where

17      that person has a significant impact ability over the Plaintiff's

18      conditions of confinement or confinement.

19  **102.**     Plaintiff claims that his rights have been violated by the

20      deliberate returning of his mail, repeatedly, by Melendez, Bennett,

21      Clark and the Defendants and through approval by Melendez, Bennett,

22      Clark and the Defendants.

23  **103.**     Plaintiff claims that the recurring activities with his legal

24      mail is done specifically and solely to harass, molest and punish the

25      Plaintiff for maintaining legal actions in the Courts. In particular,

1   the Plaintiff claims that the mail is returned repeatedly over and over

2   again only to cause him to be late in his filings, to be late in his

3   letters to legal entities and to prevent him from communicating with

4   entities in a timely manner.

5   **104.**   Plaintiff claims that Melendez, Bennett, Clark and the

6   Defendants have copies of the grievances and Tort Claim demands that

7   were filed in conjunction with all the matters herein and other matters

8   but has failed to provide the Plaintiff with a copy of those documents

9   in violation of the Freedom of Information Act and the Privacy Act and

10   he maintains those copies of the documents solely to prevent the

11   Plaintiff from receiving the documents to use in legal cases that are

12   pending and in this case.

13   **105.**   Plaintiff specifically complains that he made demands for

14   production under the Privacy Act and under the FOIA Act and the

15   Defendants have refused to provide him with the following documents: Geo

16   Custody File and ICE Grievance File where those files pertain to the

17   Plaintiff.

18   **106.**   Plaintiff claims that he is injured because he has been denied

19   the ability to meaningfully litigate his actions in the District Court

20   because of the lack of the information in the grievances and Custody

21   File.

22   **107.**   Plaintiff claims that he has an automatic right to the file

23   under the Privacy Act and under the FOIA and the Defendants have

24   violated that right.

25

1

2

3

4

**REMEDY**

Wherefore, the Plaintiff prays that the Court provides the following

remedies:

a) Order that the Defendants shall immediately mail all the letters that
   have been presented by the Plaintiff for delivery to Congress where he
   seeks a Private Bill. (Even after a hearing on this matter and the time
   that hearing would take, the letters would still be delivered prior to
   the time the Defendants contemplate by their five letter restriction.)

b) Order that the Defendants allow all detainees to petition Congress on
   behalf of their Immigration Status or any other matter.

c) Declare that the Detainees have the right to Petition Congress, and
   that Plaintiff has a special right as he is an American.

d) Declare that the right to Petition is a legal right given that
   Detainees may receive the benefit of a private bill from Congress upon
   such petition.

e) Declare that detainees who are indigent have a right to the mail to
   legal entities, such as Congress, be paid for by the facility that
   holds them.

f) Declare that the limitation of the Plaintiff to five special
   correspondence letters per week is unreasonable given the fact that the
   Plaintiff has over ten cases pending in the Courts of the United
   States.

g) Declare, specifically, that letters to Congress are protected
   communications under the First and Fifth Amendment.

h) Declare that it is unreasonable that the Plaintiff cannot send all his mail to Congress at once where, ultimately, Defendants will pay for each piece anyway if they are sent five at a time.

i) Cause the Defendants to provide proof that they mailed the original letters that the Plaintiff sent to Congress from which he has not received one answer.

j) Declare that it was unreasonable for the Defendants to not consider the Plaintiff's offer that the Defendants use the 100. Money Order for postage.

k) Declare that the fact that the Defendants purportedly sent the first 285 letters to Congress makes it unreasonable that they would not send the follow up letters.

l) Declare that mail to Congress meets the definition of legal mail and special correspondence.

m) Declare that the Plaintiff has a right to have the Defendants follow their own written rules where those rules protect the due process of the Plaintiff.

n) Declare that the routine of seeking and gaining a Private Bill from Congress is a legal mechanism available to detainees.

o) Declare that the Defendants shall not open legal mail or special correspondence that is outgoing from any detainee, consistent with the written rules of the Defendants.

p) Declare that the Defendants may not copy, read, or fax to their counsels any legal materials that is prepared by the Detainees unless the Detainee specifically requests that a member of the Defendants or their staff do so.

q) Declare that incoming special correspondence, as described by the ICE National Standards shall may be opened to check for contraband but shall not be read, copied by the Defendants or their staffs.

r) Declare that outgoing or incoming letters to newspapers, reporters or other print media may not be opened, read, copied by the Defendants, but may only be checked for contraband when the letter is incoming and such checking does not include reading the document or "scanning" the document.

s) Declare that communications to Embassies shall not be opened when the letter is outgoing and may only be inspected for contraband, without reading, if the letter is incoming.

t) Declare that Plaintiff's copies are to be copied immediately and shall not be held for overlong periods, and in any case shall be returned to the Plaintiff the same day or, at the very latest, the next day after being presented for copying.

u) Declare that documents printed in the library by the detainees shall not be subjected to reading or scanning by defendants or their employees. That all documents may be looked at on the face of the document to determine whether it is legal or not, but may not be read.

v) Declare that under no conditions are the defendants to read confidential legal mail or special correspondence.

w) Direct that detainees shall not be ordered to open their special correspondence that is outgoing for any reason.

x) Direct that the Defendants shall not return any item received in the mails without allowing the detainee an opportunity to appeal the matter and Defendants shall hold the item in question until such time that all appeals are exhausted administratively and, if court action is sought by the detainee, until such court action is exhausted through the first level of appeals with the Court.

y) Direct that when the detainees direct that their mail be sent by first class mail it must be sent by first class mail except that the

defendants may place mail directed to an internal person into the mail box of that internal person.

z) Direct that the defendants provide the Plaintiff a copy of all the grievances that they hold with the Plaintiff's name (s) upon those grievances and that a full and complete sopy of the Geo Custody File be presented to the Plaintiff.

Submitted on the date of 7-18-07

Antolin Andrew Marks

1

**PROOF OF SERVICE**

2

&

3

**DECLARATION**

4

I, Antolin Andrew Marks, AVER THAT I AM  A PARTY TO THIS ACTION

5

DO HEREBY AVER THAT I HAVE PROVIDED A COPY OF THE FOREGOING

6

DOCUMENT:

7

**COMPLAINT FOR DAMAGES AND INJUNCTION**

8

**Kristen Johnson**

9

**700 Stewart Street, Suite 5220**

**Seattle, Washington 98102**

10

11

12

THE ITEMS WERE MAILED FIRST CLASS MAIL ON THE DATE BELOW. Under

13

the penalty of perjury of the laws of the United States.

14

15

SUBMITTED ON 7-14-0

16

17

Antolin Andrew Marks

18

19  ─────────────────────────

20

21

22

23

24

25

**EXHIBIT C**

1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

13  ANTOLIN ANDREW MARKS,

14          Plaintiff,

15      v.                                      Case No. C07-5372RBL

16  JACK BENNET et al.,                         REPORT AND
                                                RECOMMENDATION
17          Defendants.
                                                NOTED FOR:
18                                              September 21, 2007

19

20          This 42 U.S.C. § 1983/Bivens action has been referred to the undersigned Magistrate Judge

21  pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4. Plaintiff has filed a proposed

22  complaint and applied for *in forma pauperis* status (Dkt. # 1). Plaintiff is incarcerated at the

23  Northwest Detention Center and is going through the process of deportation proceedings. In the

24  proposed complaint Mr. Marks alleges the named defendants refused to mail 285 letters at one time

25  as legal mail. Mr. Marks alleges the letters are to congressmen. Mr. Marks admits the defendants

26  will mail the documents, at no cost to him, at the rate of five pieces of mail per week.

27          Review of his application to proceed *in forma pauperis* reveals that Mr. Marks has $811.40

28  REPORT AND RECOMMENDATION- 1

1    in his personal property and he is not indigent (Dkt. # 1). The district court may permit indigent

2    litigants to proceed *in forma pauperis* upon completion of a proper affidavit of indigence. *See* 28

3    U.S.C. § 1915(a). However, the court has broad discretion in denying an application to proceed in

4    forma pauperis. Weller v. Dickson, 314 F.2d 598 (9th Cir. 1963), *cert. denied*, 375 U.S. 845

5    (1963).

6        Based on the above, the Court should deny plaintiff's application to proceed *in forma pauperis*.

7    Plaintiff has not shown that is unable to pay the full filing fee to proceed with his lawsuit. The court

8    should direct Mr. Marks to pay the filing within 30 days of the court's order and if he fails to pay the

9    filing fee the clerk should be directed to dismiss this matter.

10        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

11    the parties shall have ten (10) days from service of this Report to file written objections. *See also*

12    Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

13    appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule

14    72(b), the clerk is directed to set the matter for consideration on **September 21, 2007**, as noted in

15    the caption.

16

17        DATED this 28 day of August, 2007.

18

19                        */S/ J. Kelley Arnold*
                         J. Kelley Arnold
20                        United States Magistrate Judge

21

22

23

24

25

26

27

28    REPORT AND RECOMMENDATION- 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN ANDREW MARKS, et al,

                Plaintiffs,

       v.

BENNETT, et al,

                Defendants.

CASE NO. C07-5372RBL

ORDER OF DISMISSAL

      The Court adopted the Report and Recommendation and denied Plaintiff's application to proceed *in forma pauperis*. Plaintiff was directed to pay the filing fee within 30 days of the date of that Order, otherwise this action would be dismissed. Thirty days have passed since the Order Adopting the Report and Recommendation was entered on October 1, 2007, and the filing fee has not been paid. ACCORDINGLY, **IT IS ORDERED**: This cause of action is **DISMISSED**.

      DATED this 9th day of November, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

AO 450 (Rev. 5/85) Judgment in a Civil Case  a

# United States District Court

## WESTERN DISTRICT OF WASHINGTON

ANTOLIN ANDREW MARKS

     v.

BENNETT, et al.,

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER: C07-5372RBL

___ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

<u>XX</u> **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

Thirty days have passed since the Order Adopting the Report and Recommendation was entered on October 1, 2007, and the filing fee has not been paid.

IT IS ORDERED AND ADJUDGED

This cause of action is **DISMISSED**.

 

<u>  November 13, 2007  </u>
Date

<u>   BRUCE RIFKIN   </u>
Clerk

<u>   s/CM Gonzalez    </u>
Deputy Clerk

`

**<u>EXHIBIT D</u>**

1  Antolin Andrew Marks
2  1623 E. J. Street, Suite 5
   Tacoma, Washington 98421



3

# UNITED STATES DISTRICT COURT

4

# IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

5

6                                    ) Case No.: C07-5282 FDB/KLS
   Antolin Andrew-Marks,             ) **COMPLAINT FOR DAMAGES**
7                                    ) **UNDER BIVENS, & FOR**
           Plaintiff,                ) **INJUNCTION**
8                                    ) **FOR:**
        vs                           )
9  GARY GARMAN,                      ) **DENIAL    OF    RIGHTS    TO**
   MICHAEL MELENDEZ,                 ) **INFORMATION   UNDER   THE**
10 NEIL CLARK,                       ) **PRIVACY   ACT;   DELIBERATE**
   UNITED STATUS OF AMERICA          ) **DENIAL   OF   DUE   PROCESS   &**
   (UNITED STATES IMMIGRATION AND    ) **MENTAL TORTURE**
11 CUSTOMS ENFORCEMENT               ) **FOR 750,000.00**
   UNITED STATES CITIZEN AND IMMIGRATION )
12 SERVICES.) Real Parties in Interest. )
13         Defendants                ) **JURY TRIAL DEMAND**
                                     )
14 _____  )
                                     )
15                      **JURISDICTION**

16     The  Jurisdiction  of  the  Court  is  invoked  under  28  USC  1331,

   Federal Question & under 5 USC 552a (g) (1) (D); 5 USC 552a (g) (2)
17
   (A), and 5 USC 552a (g) (2) B) and 5 USC 552a (g) (3) (A) and under 28
18
   USC 2679.
19
                          **PARTIES**
20
   1. Plaintiff is Antolin Andrew Marks, a person who was born Vincent
21
      Daniel Hopper and who changed his name in 2006 to Antolin Andrew
22
      Marks.
23
   2. Gary Garman is a person who is employed by ICE and is sued in his
24
      personal capacity and his professional capacity.
25

07-CV-05282-CMP

3. Michael Melendez is a person who is employed by ICE and is sued in his personal capacity and his professional capacity.

4. Neil Clark is a person who is employed by ICE and is sued in his personal capacity and his professional capacity.

5. The United States of America is sued under 28 USC 2679.

### EXHAUSTION

The Plaintiff specifically pleads and claims that he has submitted a Tort Claim for sum certain, against the United States, and against all individual defendants, in the amount of 750,000 against the actions of persons who work for the United States. The ICE Agency did deny the Claim and this suit is timely in that it is being filed within six months of the denial of the Tort Claim.

# CLAIMS

1. The Plaintiff claims that the Defendants here have violated his rights under the Privacy Act by conspiring to prevent the Plaintiff from succeeding in his legal proceedings by deliberately preventing the Plaintiff from gaining access to the records held by the Defendants and the Plaintiff has been the victim of prejudice in that he has been prevented from adequately supporting his legal pleadings and has had adverse rulings because of the inability to adequately support his pleadings.

2. Plaintiff claims that the Defendants, Clark, Melendez, and Garman has engaged in mental torture against the Plaintiff and

the Plaintiff has suffered emotional distress based upon their actions.

3. The Plaintiff claims that the Defendants have violated 5 USC 552a (d) (1), 5 USC 552a (d) (2) (A), 5 USC 552a (d) (2) (B) (1).

4. The Plaintiff claims that the Defendants have violated 5 USC 552.

5. Plaintiff claims that the Defendants have violated his due process under the Fifth Amendment by deliberately placing upon him mental torture through which he has suffered actual injury in the form of brain injury, stress, and emotional distress.

6. Plaintiff claims that the Defendants have violated his rights under the Eighth Amendment by deliberately placing upon him mental torture through which he has suffered actual injury in the form of brain injury, stress, and emotional distress.

## FACTS

### VIOLATION OF THE RIGHT TO INFORMATION

1. The Plaintiff submitted FOIA Application for the receipt of a file held by the USCIS where that file is in the name of Joanne Rudder. This file was needed by the Plaintiff to generate subpoenas for the appearance at the Immigration Hearing of the Plaintiff where Joanne Rudder would be able to testify that the Plaintiff is not Wayne Rudder as is asserted by the Defendants.

2. Plaintiff claims that he made the personal request to Garman who had possession of the file at the time the request was made.

COMPLAINT- 3

3. Plaintiff claims that he made the personal request to Melendez who had possession of the file at the time the request was made.

4. Plaintiff claims that he also submitted a completed FOIA Application to USCIS where he sought the file in the name of Joanne Rudder.

5. None of the Defendants, nor the USCIS granted the information to the Plaintiff and as a result the Plaintiff was unable to generate the information necessary for his legal proceedings.

6. Plaintiff specifically claims that the file would have led to further discoverable information in the form of DNA tests, other siblings of Joanne Rudder, and to Rudder himself/herself, but the inability to gain the file has injured the Plaintiff.

7. The failure to produce the file denied the Plaintiff the opportunity to utilize the information within the file in order to support his legal proceeding and ultimately he lost his case when he would have won the case had he had access to the information.

8. The Plaintiff submitted FOIA Application for the receipt of a file held by the USCIS where that file is in the name of Marva Rudder. This file was needed by the Plaintiff to generate subpoenas for the appearance at the Immigration Hearing of the Plaintiff where Marva Rudder would be able to testify that the Plaintiff is not Wayne Rudder as is asserted by the Defendants.

9. Plaintiff claims that he made the personal request to Garman who had possession of the file at the time the request was made.

10. Plaintiff claims that he made the personal request to Melendez who had possession of the file at the time the request was made.

11. Plaintiff claims that he also submitted a completed FOIA Application to USCIS where he sought the file in the name of Marva Rudder.

12. None of the Defendants, nor the USCIS granted the information to the Plaintiff and as a result the Plaintiff was unable to generate the information necessary for his legal proceedings.

13. Plaintiff specifically claims that the file would have led to further discoverable information in the form of DNA tests, other siblings of Marva Rudder, and to Rudder himself/herself, but the inability to gain the file has injured the Plaintiff.

14. Plaintiff claims that under the Freedom of Information Act, he was to have received a response from the USCIS, Gary Garman and Michael Melendez regarding his queries and he should have received the files involved.

15. The failure to produce the file denied the Plaintiff the opportunity to utilize the information within the file in order to support his legal proceeding and ultimately he lost his case when he would have won the case had he had access to the information.

16. The Plaintiff seeks that the Court orders the delivery of the Joanne Rudder and Marva Rudder files to the Plaintiff where those files are numbered 34 316 599 & 34 316 601.

2

17. Plaintiff claims that he submitted to the USCIS an Application seeking the production of the A File that bears the number under which he is held.

18. There has been no production of that A File that bears the number A 34 316 600.

19. Plaintiff claims that his rights under the FOIA is violated and it has been prejudicial in that the Plaintiff has been unable to properly utilize the file in the courts.

20. In particular, the Plaintiff alleges that the file holds information regarding applications filed by the Plaintiff where those applications could be utilized and were sought to be utilized in the legal proceedings. The failure to produce the file denied the Plaintiff the opportunity to utilize the information within the file in order to support his legal proceeding and ultimately he lost his case when he would have won the case had he had access to the information.

3

21. Plaintiff claims that he has sought that Michael Melendez provide him with copies of documents in the form of documents held by the Agency File where those documents are the Geo Custody File.

22. This Geo Custody File is an ICE Record that is covered by the Privacy Act.

23. Plaintiff specifically claims that he has sought that the Geo Custody File be presented to him by Michael Melendez, but Melendez has refused to provide that file without giving any adequate explanation of his denial of the file.

24. Plaintiff specifically claims that he needs the file to utilize the file in hi legal matters and he has been prejudiced by the failure to deliver the file by being unable to adequately support his legal documents.

25. Plaintiff specifically claims that the Geo Custody File contains Information Reports referencing the plaintiff.

26. Plaintiff specifically claims that the Geo Custody File contains Incident Reports where those reports are absolutely necessary to the Plaintiff's legal matters and the denial of the documents has harmed the Plaintiff.

27. Plaintiff specifically claims that the Geo Custody File contains grievances where those grievances are absolutely necessary to the Plaintiff's legal matters and he has been denied the use of those documents in his legal pleadings.

28. Plaintiff specially claims that the Geo Custody File contains Kites where those Kites will show affirmative actions who acted to deny his rights and can show the further actions of the

Defendants where he can utilize those files in pursuit of his legal ends and has been prevented from accessing those files.

4

29. Plaintiff claims that he has repeatedly sought that ICE provide him with his grievance file that is currently held by Melendez.

30. He claims that he made the request under the Privacy Act for the file.

31. Plaintiff claims that Michael Melendez stated, "Sue me and you'll get it," in response to the reasonable request for a copy of the file.

32. Plaintiff claims that he needed the files in the possession of Michael Melendez in order to utilize those files in his legal proceedings and has been denied access to the files and has been violated through prejudice by the failure to utilize those files in the legal proceedings.

5

33. The Plaintiff claims that he has sought the Evercom Telephone Contract and Tariff under the Freedom of Information act from the Michael Melendez, USCIS and USICE and they have failed to provide that contract.

34. Plaintiff claims that the Contract falls under the Freedom of Information Act and he has submitted the required request over a year and a half previously and has not been granted access to the files.

35. Plaintiff specifically claims that he has been injured in his legal proceedings by failing to have the Evercom Contract.

6

36. Plaintiff specifically claims that the Melendez has deliberately violated the Privacy Act by failing to grant copies of those files where he was requested to do so.

37. Plaintiff specifically claims that he has been violated of his rights under the Privacy Act where he made demand to view the record pertaining to him and to gain a copy of that record pertaining to him but he has been denied that record (s) through rouge action of the Defendants.

VIOLATION OF THE EIGHTH AMENDMENT

38. Plaintiff claims that he has been subjected to mental torture under the hands of Neil Clark, Gary Garman and Michael Melendez.

39. Plaintiff claims that Mental Torture consists of, "prolonged mental harm caused by or resulting from: the intentional infliction or threatened infliction of severe physical pain or suffering; the threat of imminent death; or the threat that another person will imminently be subjected to death, [or] severe physical pain or suffering."

40. In particular, the Plaintiff arrived into the custody of the Defendants and indicated that his name was Antolin Andrews, a pseudonym of Vincent Daniel Hopper.

41. The Defendants began to utilize the name, Antolin Andrews for the Plaintiff.

42. The Plaintiff filed some papers with the Superior Court of Pierce County and that Court needed the Plaintiff to show that his name was Antolin Andrews as well as Vincent Daniel Hopper, the name he was born with.

43. The Plaintiff then requested that employees of the Center change his name to Vincent Daniel Hopper on their records.

44. As a result, the record in the computers were changed to reflect the following: Antolin Andrews aka Vincent Daniel Hopper.

45. Immediately Gary Garman and Michael Melendez acted to harm the Plaintiff.

46. They immediately saddled the Plaintiff with the name, Wayne Rudder where that name is not the Plaintiff's name.

47. The Defendants are fully aware that Rudder is not the Plaintiff's name, but they believe that the Plaintiff would be harmed if he is forced to utilize the name Rudder.

48. The Defendants began to insist that the Plaintiff use the name Rudder on all documents he generated to be sent to the Court and insisted that the Plaintiff use the name Rudder on all envelopes that he sent out of the facility.

49. Plaintiff protested bitterly that his name was not Rudder and the Defendants knew that his name was not Rudder.'

50. Plaintiff protested bitterly that there was no penological interest in forcing him to use the name Rudder and such was done only to harass, and torture the Plaintiff.

51. The fact is that for over eight months the name used had been Antolin Andrews and there had been no necessity to change the use of that name.

52. Plaintiff alleges that Michael Melendez and Gary Garman specifically placed the name of Wayne Rudder upon the Plaintiff to cause the Plaintiff grief, distress, and emotional instability.

53. Plaintiff claims that he is repeatedly tortured by being called Wayne Rudder where that name is not his name and where the Plaintiff's name is properly Vincent Daniel Hopper until it was legally changed.

54. Plaintiff claims that in response to his complaints Michael Melendez and Gary Garman stated that the Plaintiff must provide a court order changing the name to Antolin Andrew Marks.

55. The Plaintiff submitted documents to the Pierce County District Court and on the date of March 17, 2007, the name was changed from Vincent Daniel Hoper to Antolin Andrew Marks.

56. The Plaintiff, because he knew that the Defendants would utilize whatever they had to deny him, also placed the name Wayne Rudder" unto the name change application so that the name reflected in the records should be Antolin Andrew Marks.

COMPLAINT- 11

57. Instead of honoring their words, the Defendants refused to use the name as changed by the District Court of Washington's Pierce County.

58. This decision has left the Plaintiff at the mercy of persons who use the name Wayne Rudder to the Plaintiff and has caused the Plaintiff must stress and much emotional distress.

59. Plaintiff specifically pleads that he is the victim of a brain injury and the actions by the Defendants by the very high levels of stress and emotional distress that they have placed upon the Plaintiff has actually exacerbated that brain injury.

60. Plaintiff specifically pleads that because he has been the victim of a gunshot wound to the spinal column where the bullet rests in the Third Lumbar of the spinal column, it is impossible to provide an MRI of the brain because of the existence of the bullet. As a result, the Plaintiff has not been able to gain a proper diagnosis of the brain injury and this causes the stress factors to go untreated, causing more pain and suffering to the Plaintiff.

61. Plaintiff specifically claims that all Defendants are aware of his brain injury and have committed the actions purely to deny the Plaintiff his due process and to torture the Plaintiff.

62. Plaintiff claims that the Defendants now has the Plaintiff answering to Rudder, writing documents with the name Rudder upon it and this has become an adoptive admission that the Plaintiff

is Rudder when that is at issue in the Courts of the United
States as the Plaintiff is not Rudder.

63. Plaintiff specifically claims that the Defendants have done this
act only to cause the Plaintiff mental torture and that there is
no penological purpose to this action.

64. Plaintiff also alleges that while the Defendants, Garman,
Melendez, and Clark have sought that the Plaintiff only use the
name Rudder and he is called by the name Rudder by the staff and
detainees, and forced to use that name on the documents he
submits such as grievances and Kites, the very same Defendants
have denied him access to the Agency files of Joanne Rudder,
Marva Rudder, and Wayne Rudder on the very grounds that
Plaintiff is not Rudder. This marks a denial of due process to
the Plaintiff.

65. Plaintiff specifically alleges that he has been harmed by the
actions of the Defendants in that he needed the documents from
within the files in order to provide a prima facie case to the
District Court in several cases and the denial of the
information denied him his right to do so.

66. Plaintiff claims that it has been mental torture by the
Defendants where they have ritually subjected the Plaintiff to
being called by the name Rudder where the Plaintiff is not
Rudder. They have forced the Plaintiff into adoptive admissions
by the fact that they have continually referred to the Plaintiff

1    by the name Rudder when they are aware that the Plaintiff is not

2    Rudder.

3    67. Plaintiff claims that numerous persons, because the Defendants

4    have called him Rudder, now calls him Rudder and it is not only

5    annoying; it is harassing and causes deep emotional distress to

6    the point that it leads to depression because of the final

7    nature of the actions by the Defendants. Because the Defendants

8    have forced the Plaintiff to place the name Rudder on documents,

9    Plaintiff has routinely had to explain to the Courts and to

10   other parties why the name Rudder is there.

11   68. Plaintiff claims that the actions to the Plaintiff has become

12   cruel and unusual punishment because the Defendants know the

13   Plaintiff is not Rudder but has forced him to wear this name on

14   his person, and on all his papers even though they are aware of

15   his true identity. Moreover, the facts will show that the

16   Defendants had first placed the Plaintiff's name as Antolin

17   Andrews and kept that name for nine months until they made the

18   decision, for no apparent purpose, to force the name of Rudder

19   upon the Plaintiff.

20   69. Plaintiff claims that the action was mental torture and was

21   calculated to have the very effect that it has had by causing

22   the Plaintiff distress.

23   70. Plaintiff claims that when he complained to Michael Melendez

24   about the name Michael Melendez and Gary Garman both stated that

25   the Plaintiff would need a court order. When the Plaintiff got

the Court Order the Defendants still refused to honor the Plaintiff's name.

71. Plaintiff does not seek to change the Defendants records, an daunting task, but the Plaintiff should not be subjected to the arbitrary actions of the Defendants. In other words, the Plaintiff should be called by his legal name, Antolin Andrew Marks and not be forced to carry the name, Wayne Rudder especially where the entire issue of identity is at issue.

REMEDY

Plaintiff seeks that the Court affords him a jury trial.

Plaintiff seeks that the Court affords him damages in the amount of 750,000.

Plaintiff seeks that the Court awards him costs.

Plaintiff seeks that the Court orders that the Defendants may keep their records in any name they desire, but they may not force the Plaintiff to use the name Rudder, to sign the name Rudder, or to answer to the name, Rudder when they know that the Plaintiff's name is properly Antolin Andrew Marks.

Plaintiff seeks that the Court orders the Defendants to provide the following files previously sought by the Plaintiff under FOIA or the Privacy Act:

    a) File of Rudder, Wayne A 34 316 600

    b) File of Rudder, Marva A 34 316 599

    c) File of Rudder, Joanne A 34 316 601

    d) File of Elson John (Father of Rudder)

    e) Geo Custody File of the Plaintiff.

f) ICE grievances and kites submitted by the Plaintiff to ICE.

Submitted on the date of 5-31-07

Antolin Andrew Marks

PROOF OF SERVICE

&

DECLARATION

I, Antolin Andrew Marks, do hereby aver that I have provided a copy of the foregoing document:

Complaint

Kristen Johnson
AUSA
700 Stewart Street, Suite 5220
Seattle, Washington 98102

Ami De Celle
Ken Diamond
Winterbaur & Diamond
1200 Fifth 1910
Seattle, Washington 98101

I WILL TESTIFY UNDER THE PENALTY OF PERJURY THAT THIS IS THE TRUTH.

THE ITEMS WERE MAILED FIRST CLASS MAIL ON THE DATE BELOW.

SUBMITTED ON 5-31-07

Antolin Andrew Marks

**EXHIBIT E**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN ANDREW MARKS,

                    Plaintiff,

        v.

GARY GARMAN, *et al.*,

                    Defendants.

Case No.  C07-5282 FDB/KLS

ORDER GRANTING
APPLICATION TO PROCEED
*IN FORMA PAUPERIS*

Plaintiff's application[1] for leave to proceed *in forma pauperis* (Dkt. # 1) is **GRANTED**.  Plaintiff is currently detained at the Northwest Detention Center, Tacoma, Washington, and does not appear to have funds available to afford the $350.00 court filing fee.

The Clerk is directed to mail a copy of this Order to Plaintiff.

DATED this  27th  day of July, 2007.

                    Karen L. Strombom
                    United States Magistrate Judge

---

[1]The Account Activity Ledger submitted by Plaintiff in support of his application is for an individual named Wayne Rudder, a name different than the name Plaintiff uses in his Complaint.  In response to the Court's Order to Show Cause in Case No. 6-5696RBL, Plaintiff provided evidence sufficient to satisfy the Court that he and Wayne Rudder are the same person.

ORDER
Page - 1

FILED_____ LODGED
_____ RECEIVED

JUN 14 2007

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

Cause No. _COY 5282 FDB/KLS____

## ACKNOWLEDGMENT AND AUTHORIZATION

By choosing to bring a civil rights action, I acknowledge I am responsible for payment of the full $350.00 filing fee under 28 U.S.C. § 1915. I authorize the agency having custody of me to collect from my account and forward to the Clerk of the United States District Court the initial partial filing fee calculated under the Certification and Calculation section and payments pursuant to 28 U.S.C. § 1915(b). I understand I am required to make monthly payments of twenty (20) percent of my preceding month's income credited to my account and the agency having custody of me will forward funds to the Clerk of the United States District Court each time the amount in the account exceeds ten ($10.00) dollars until the filing fee is paid in full.

___7-11-07___                           _____
DATE                                    SIGNATURE OF APPLICANT


___RUDDER, WAYNE___                     ___34-316-600___
COMMITTED NAME OF APPLICANT             INMATE #



07-CV-05282-1FP

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

ANTOLIN ANDREW MARKS

        Plaintiff,

vs.

GARY GARMAN, ETAL

        Defendant(s).

C07-5282 FDB|KLS

WRITTEN CONSENT FOR
PAYMENT OF COSTS FROM ANY
RECOVERY UNDER LOCAL RULE
CR3(b)

I,   ANTOLIN ANDREW MARKS  , hereby consent that any

recovery in damages that I may receive in the above-captioned cause may be reduced, if so directed

by the court, in such an amount as is necessary for payment of the unpaid fees and costs which are

taxed against me in the course of this litigation.

DATED this   11TH   day of   JUNE  , 20 07 .

Signature of Plaintff

**EXHIBIT F**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTOLIN MARKS,

          Plaintiff,

   v.

GARY GARMAN, *et al.*,

          Defendants.

Case No. C07-5282FDB

SCHEDULING ORDER

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge

pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR

3, and MJR 4. One of the named defendants in this action has filed an answer (Dkt. # 17). A

Scheduling order is appropriate. It is hereby ORDERED:

Discovery

     All discovery shall be completed by March 14, 2008. Service of responses to interrogatories

and to requests to produce, and the taking of depositions shall be completed by this date. Federal

Rule of Civil Procedure 33(b)(3) requires answers or objections to be served within **thirty (30) days**

after service of the interrogatories. The serving party, therefore, must serve his/her interrogatories at

least **thirty (30) days** before the deadline in order to allow the other party time to answer.

ORDER - 1

1

<u>Motions</u>

2      Any dispositive motion shall be filed and served on or before April 18, 2008. The motion

3 shall include in its caption (immediately below the title of the motion) a designation of the Friday

4 upon which the motion is to be noted upon the court's calendar. That date shall be the fourth Friday

5 following filing of the dispositive motion. All briefs and affidavits in opposition to any motion shall

6 be filed and served not later than 4:30 p.m. on the Monday immediately preceding the Friday

7 appointed for consideration of the motion. If a party fails to file and serve timely opposition to a

8 motion, the court may deem any opposition to be without merit. The party making the motion may

9 file, not later than 4:30 p.m. on the Thursday immediately preceding the Friday designated for

10 consideration of the motion, a response to the opposing party's briefs and affidavits. The documents

11 must indicate in the upper right-hand corner the name of the magistrate judge to whom the

12 documents are to be delivered.

13      If a motion for summary judgment is filed, it is important for the opposing party to note the

14 following:

15      A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

16      Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine

17 issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled

18 to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or

19 other sworn testimony), you cannot simply rely on what your complaint says. **Instead, you must set out specific facts in declarations, deposition, answers to**

20 **interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and**

21 **show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be**

22 **entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

23

24 <u>Rand v. Rowland</u>, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added). Furthermore, Local

25 Rule CR 7(b)(4) states that a party's failure to file necessary documents in opposition to a motion for

26 summary judgment may be deemed by the court to be an admission that the opposition is without

27 merit.

28 ORDER - 2

<u>Joint Status Report</u>

Counsel and *pro se* parties are directed to confer and provide the court with a joint status report by no later than August 22, 2008. The joint status report shall contain the following information by corresponding paragraph numbers:

1. A short and concise statement of the case, including the remaining legal and factual issues to be determined at trial;

2. A narrative written statement from each party setting forth the facts that will be offered by oral or written documentary evidence at trial;

3. A list of all exhibits to be offered into evidence at trial;

4. A list of the names and addresses of all the witnesses each party intends to call along with a short summary of anticipated testimony of each witness.

5. Whether the parties agree to arbitration or mediation under this district's arbitration program, and if so whether the arbitration will be final and conclusive or the right to trial de novo will be preserved (see Local Rule CR 39.1(d));

6. Whether the case should be bifurcated by trying the liability issues before the damages issues, or specially managed in any other way;

7. Any other suggestions for shortening or simplifying the trial in this case;

8. The date the case will be ready for trial, considering Local Rule CR 16 deadlines;

9. The dates on which trial counsel are unavailable and any other complications to be considered in setting a trial date;

10. Whether the trial will by jury or non-jury;

11. The number of trial days required, and suggestions for shortening trial;

12. The names, addresses, and telephone numbers of all trial counsel and unrepresented (pro se) parties who intend to appear at trial.

If the parties are unable to agree on any part of the report, they may answer in separate paragraphs. **Separate reports are <u>not</u> to be filed.** Plaintiff's counsel (or plaintiff, if *pro se*) will be responsible for initiating communications for the preparation of the joint status report.

ORDER - 3

1                              Proof of Service & Sanctions

2          All motions, pretrial statements and other filings shall be accompanied by proof that such

3  documents have been served upon counsel for the opposing party (or upon any party acting pro se).

4  The proof shall show the day and manner of service and may be by written acknowledgment of

5  service, by certificate of a member of the bar of this court, by affidavit of the person who served the

6  papers, or by any other proof satisfactory to the court.  Such proof of service shall accompany both

7  the original and duplicates filed with the Clerk.  Failure to comply with the provisions of this Order

8  can result in dismissal/default judgment or other appropriate sanctions.

9          The Clerk of Court is directed to send a copy of this Order to plaintiff and to counsel for

10  defendant(s).

11

12          DATED this 29 day of October, 2007.

13

14

15                                   */S/ J. Kelley Arnold*

16                                  J. Kelley Arnold
                                   United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28  ORDER - 4

**EXHIBIT G**

1

2

3

4

5

6
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7
AT SEATTLE

8

ANTOLIN ANDREW MARKS,

9
                Petitioner,                    CASE NO.  C07-1608-MJP

10

     v.

11
                                 REPORT AND

PETER D. KEISLER, Acting Attorney      RECOMMENDATION

12
General,[1]

13
                Respondent.

14

15
## I.  INTRODUCTION

16
    On October 4, 2007, petitioner Antolin Andrew Marks, proceeding pro se, filed a Petition

17
for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  This is the fifth habeas petition petitioner

18
has filed in this Court since he was transferred from the California State Prison – Solano in

19
Vacaville, California, to the Northwest Detention Center in Tacoma, Washington, in August 2005.

20
*See Hopper v. Roach*, Case No. C05-1812-RSL; *Marks v. Clark,* Case No. C06-717-RSL; *Marks*

21

22

23
     [1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), acting Attorney General Peter D.

24
Keisler is automatically substituted for former Attorney General Alberto R. Gonzales as
respondent in this case.

25

REPORT AND RECOMMENDATION

26
PAGE – 1

1    *v. Clark*, Case No. C06-1679-JLR; *Marks v. Clark*, Case No. C06-1796-RSM.[2] In the instant case,

2    petitioner claims that his removal proceedings are improper because he is a United States citizen.

3        Having reviewed the petition and the balance of the record, the Court recommends that

4    petitioner's habeas petition be denied for lack of jurisdiction.

5                                    II. <u>BACKGROUND</u>

6        Petitioner has used or has been known by over fifty aliases, including Vincent Daniel Hopper,

7    Wayne Ricky Elison Rudder, and Antolin Andrew Marks. (*Hopper v. Roach*, Case No. C05-1812-

8    RSL, Dkt. #37 at L508-509-Pt. 1; L567-Pt. 1; L571-Pt. 1). Petitioner's fingerprints match the

9    fingerprints of alien Wayne Ricky Elison Rudder, who is a native and citizen of Trinidad and who

10   was admitted to the United States on or about March 7, 1974, as an immigrant. (*Hopper v. Roach*,

11   Case No. C05-1812-RSL, Dkt. #37 at L383-84-Pt. 1; R1034-35-Pt. 1; R1021-Pt. 1).

12

13   A. <u>Petitioner's First Removal From the United States</u>

14       On or about September 24, 1991, the former Immigration and Naturalization Service[3]

15   ("INS") issued an Order to Show Cause ("OSC"), placing petitioner in deportation proceedings and

16   charging petitioner with being deportable from the United States for having been twice convicted

17   of Possession of a Controlled Substance. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37

18   at L555-69-Pt. 1; R301-302-Pt. 1). Petitioner appeared for his deportation hearing before an

19   _____

20       [2] Petitioner has also filed eleven civil rights complaints in the Western District of
     Washington at Tacoma. *See* 06-5057-FDB; 05-5662-FDB-KLS; 06-5058-FDB-JKA; 06-5085-
21   RBL-JKA; 06-5282-RBL-KLS; 05-5680-RBL-JKA; 06-5675-RBL; 07-5007-RBL-KLS; 06-
     5696-RBL-KLS; 07-5259-RJB-KLS; 07-5282-FDB-KLS.
22
         [3] Effective March 1, 2003, the Immigration and Naturalization Service was abolished
23   pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6
     U.S.C. § § 101, *et seq.*, and its immigration functions were transferred to the Department of
24   Homeland Security ("DHS").

25   REPORT AND RECOMMENDATION
26   PAGE – 2

1  Immigration Judge ("IJ") and admitted the allegations contained in the OSC and conceded

2  deportability as charged.  Instead of deportation, petitioner filed an application for waiver of

3  inadmissability under INA § 212(c) and an application for asylum and withholding of deportation.

4  On July 26, 1993, the IJ denied petitioner's applications, and ordered petitioner deported from the

5  United States to Trinidad on the charges contained in the OSC.  (*Hopper v. Roach*, Case No. C05-

6  1812-RSL, Dkt. #37 at R999-1021-Pt. 1).  Petitioner filed an appeal of the IJ's decision to the

7  Board of Immigration Appeals ("BIA"), which was denied on November 4, 1993.  (*Hopper v.*

8  *Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1022-31-Pt. 1).  On November 18, 1993, petitioner

9  filed a direct appeal of the BIA's decision in the Ninth Circuit Court of Appeals, which was

10  dismissed for lack of jurisdiction.  (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. # 37 at R753-

11  54-Pt. 1).  Petitioner also filed a Petition for Emergency Stay of Deportation in the United States

12  Court of Appeals for the District of Columbia Circuit, which was dismissed on December 6, 1993,

13  for improper venue.  (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R755-57-Pt. 1).  On

14  December 8, 1993, petitioner filed a Motion for Emergency Stay of Deportation with the United

15  States Supreme Court, which was denied the same day.  (*Hopper v. Roach*, Case No. C05-1812-

16  RSL, Dkt. #37 at R842-872-Pt. 1; L278-Pt. 1).  On December 9, 1993, petitioner was removed

17  from the United States to Trinidad.  (*Hopper v. Roach*, Case No. C05-1812-RSL Dkt. #37 at L269-

18  70-Pt. 1; L274-Pt. 1).

19

20       B.  Petitioner's Second Removal Proceedings

21       On January 14, 1994, only one month after he had been removed, petitioner illegally reentered

22  the United States without inspection.  He remained in the United States illegally for more than

23  eleven years before he was discovered at the California State Prison – Solano, where he was serving

24

25

26  REPORT AND RECOMMENDATION
    PAGE – 3

1   his sentence for a conviction for Grand Theft. On August 18, 2005, petitioner was released from

2   the California State Prison and transferred to ICE custody. Petitioner claimed that he was Daniel

3   Vincent Hopper, born in Los Angeles, California, and that he had been deported to Trinidad in 1993

4   illegally. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R996-98-Pt. 1). A fingerprint

5   comparison performed by the Department of Homeland Security Forensic Laboratory showed that

6   petitioner's fingerprints matched the fingerprints of an alien who went by the alias Ricky Elison

7   Rudder who had been deported to Trinidad on December 9, 1993. (*Hopper v. Roach*, Case No.

8   C05-1812-RSL, Dkt. #37 at R1033-34-Pt. 1).

9

10      On August 18, 2005, petitioner was served with a Warrant for Arrest of Alien, a Notice of

11  Custody Determination, and a Notice to Appear, placing him in removal proceedings and charging

12  him with removability for entering the United States without being admitted or paroled, and for

13  reentering the United States after being ordered deported without being admitted or paroled.

14  (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L530-35-Pt. 1). On September 26, 2005,

15  petitioner appeared before an IJ, claiming that this was a case of mistaken identity and that he is a

16  United States citizen and was wrongfully removed in 1993. On October 12, 2005, petitioner filed

17  an application for asylum and withholding of removal. (*Hopper v. Roach*, Case No. C05-1812-

18  RSL, Dkt. #37 at L583-576-Pt. 1). His case was scheduled for trial on February 22, 2006, on the

19  issues of removability and asylum from Trinidad. (*Hopper v. Roach*, Case No. C05-1812-RSL,

20  Dkt. #37 at R1043-1045-Pt. 1; Dkt. #39 at 3 n.1).

21      On March 23, 2006, however, petitioner was transferred to the custody of the Tacoma Police

22  Department for extradition to California pursuant to a September 1, 2005, warrant for his arrest for

23  a parole violation. (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #59). On March 28, 2006,

24

25

26  REPORT AND RECOMMENDATION
    PAGE – 4

1   ICE filed a motion in the Immigration Court requesting that petitioner's pending removal

2   proceedings be administratively closed because petitioner was no longer in ICE custody. On March

3   29, 2006, the IJ issued an Order administratively closing petitioner's removal proceedings. (*Hopper*

4   *v. Clark*, Case No. C05-1812-RSL, Dkt. #58, Ex. B). On April 11, 2006, petitioner returned to the

5   NWDC after California officials decided not to extradite him, and his removal proceedings were

6   reopened.

7        On December 1, 2006, after a removal hearing, the IJ denied petitioner's application for

8   asylum, withholding of removal, and withholding of removal under Article III of the Convention

9   Against Torture, and ordered him removed to Trinidad and Tobago (*Marks v. Clark*, Case No. C06-

10  717-RSL, Dkt. #22). On February 1, 2007, the IJ denied petitioner's request for a change in

11  custody status. *Id.* Petitioner timely appealed the IJ's removal order and bond order to the BIA.

12  On April 11, 2007, the BIA dismissed petitioner's appeal of the IJ's removal order. Accordingly,

13  petitioner's order of removal became administratively final on April 11, 2007. On April 20, 2007,

14  the BIA dismissed petitioner's appeal of the IJ's bond order and vacated the IJ's bond order as

15  moot, noting that neither the IJ nor the BIA had authority to set bond conditions because a final

16  order of removal had been entered. *Id.*

17       On May 3, 2007, petitioner filed a Petition for Review of the BIA's decision and a motion

18  for stay of removal in the Ninth Circuit Court of Appeals. The Ninth Circuit denied and dismissed

19  the petition and the accompanying motions on July 27, 2007. *Rudder v. Gonzales*, No. 07-71756

20  (9th Cir. filed May 3, 2007).

21       Petitioner has filed several dozen other petitions for review in the Ninth Circuit Court of

22

23

24

25  REPORT AND RECOMMENDATION

26  PAGE – 5

1   Appeals without success, challenging various administrative and district court decisions.[4] As Circuit

2   Judge Marsha S. Berzon recently stated, "[a]lthough petitioner has become as adept as the best

3   attorney at accessing the courthouse clerk's office, his success rate on the merits of his cases is

4   much less enviable. And therein lies Andrew's problem." *Andrews v. Cervantes*, 493 F.3d 1047,

5   1049 (9th Cir. 2007).

6                                   III. DISCUSSION

7       The sole and exclusive avenue for review of a citizenship claim is by direct petition for review

8   to the United States Court of Appeals. *See Baeta v. Sonchik*, 273 F.3d 1261, 1263-64 (9th Cir.

9   2001) (citing INA § 242(b)(5), 8 U.S.C. § 1252(b)(5)). Section 242(b)(5) of the Immigration and

10  Nationality Act provides:

11
12          (A) If the petitioner claims to be a national[5] of the United States and the court
            of appeals finds from the pleadings and affidavits that no genuine issue of material fact
13          about the petitioner's nationality is presented, the court shall decide the nationality
            claim.
14          (B) If the petitioner claims to be a national of the United States and the court
            of appeals finds that a genuine issue of material fact about the petitioner's nationality
15          is presented, the court shall transfer the proceedings to the district court of the United
            States for the judicial district in which the petitioner resides for a new hearing on the
16          nationality claim and a decision on that claim as if an action had been brought in the
            district court under section 2201 of Title 28.
17          (C) The petitioner may have such nationality claim decided only as provided in
            this paragraph.
18
19  8 U.S.C. § 1252(b)(5). Further, "[i]f an alien in a removal proceeding is ordered removed, but

20  contends that [he] is a United States citizen, § 1252(b)(5) is the exclusive statutory method of

21      [4] The Ninth Circuit has imposed a pre-filing order against petitioner. *See Andrews*, No.
22  05-80067 (9th Cir. filed July 25, 2007).

23      [5] Under the Immigration and Nationality Act "[t]he term 'national of the United States'
    means (A) a citizen of the United States, or (B) a person, who, though not a citizen of the
24  United States, owes permanent allegiance to the United States." INA § 101(a)(22); 8 U.S.C. §
    1101(a)(22).

25  REPORT AND RECOMMENDATION
26  PAGE – 6

1    determining the claim of citizenship, and it is brought as a petition for review of a final order of

2    removal." *Taniguchi v. Schultz*, 303 F.3d 950, 956 (9th Cir. 2002). Accordingly, the Court does

3    not have jurisdiction to consider the merits of petitioner's claim that his removal proceedings are

4    improper because he is a United States citizen. *See* INA § 242(b)(5), 28 U.S.C. § 1252(b)(5).

5         When a citizenship claim is improperly brought in the district court, the court must consider

6    whether the action should be transferred to the Court of Appeals. *See* 28 U.S.C. § 1631; *see also*

7    *Baeta*, 273 F.3d at 1264. Section 1631 provides:

8
> Whenever a civil action is filed in a court as defined in section 610 of this title or an
9  > appeal, including a petition for review of administrative action, is noticed for or filed with
   > such a court and that court finds that there is want of jurisdiction, the court shall, if it is
10 > in the interest of justice, transfer such action or appeal to any other such court in which
   > the action or appeal could have been brought at the time it was filed or noticed, and the
11 > action or appeal shall proceed as if it had been filed in or noticed for the court to which
   > it is transferred on the date upon which it was actually filed in or noticed for the court
12 > from which it was transferred.

13   28 U.S.C. § 1631. Thus, under the transfer statute, the Court must determine whether: (1) the

14   Ninth Circuit would have had jurisdiction on the date the habeas petition was filed in this Court; (2)

15   this Court lacks jurisdiction over this case; and (3) the transfer is in the interests of justice. *See*

16   *Baeta*, 273 F.3d at 1264. Here, transfer is not appropriate because the first and third requirements

17   are not met. First, petitioner's claim that his removal proceedings are improper because he is a

18   United States citizen has already been considered and denied by the Immigration Court, the BIA,

19   and the Ninth Circuit. The Ninth Circuit determined that petitioner's claim lacks merit and has

20   entered a pre-filing order against petitioner. As the Ninth Circuit has already resolved petitioner's

21   claim of citizenship, the Ninth Circuit would not have had jurisdiction on the date the habeas

22   petition was filed in this Court. For these same reasons, transfer to the Ninth Circuit is not in the

23   interests of justice.

24

25   REPORT AND RECOMMENDATION
26   PAGE – 7

1      Finally, the REAL ID Act of 2005 has stripped the district court of habeas jurisdiction to

2  consider a challenge to a final order of removal. *See* REAL ID Act of 2005, Pub. L. No. 109-13,

3  Div. B, 119 Stat. 231 (May 11, 2005). Such challenges may only be reviewed by the appropriate

4  court of appeals. *See* INA § 242(a)(5),[6] 8 U.S.C. § 1252(a)(5). Given the fact that petitioner is

5  now subject to an administratively final order of removal, judicial review of his claim that his

6  removal proceedings are improper because he is a citizen of the United States is available only

7  before the court of appeals, not the district court. Accordingly, the petition must be dismissed for

8  lack of jurisdiction.

## IV.  CONCLUSION

      For the foregoing reasons, the Court recommends that petitioner's Petition for Writ of

Habeas Corpus be dismissed with prejudice. A proposed Order accompanies this Report and

Recommendation.

      DATED this <u>16th</u> day of October, 2007.

Mary Alice Theiler
United States Magistrate Judge

---

[6] "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e)."

REPORT AND RECOMMENDATION
PAGE – 8