Antolin Andrew Marks
1623 E. J. Street, Suite 5
Tacoma, Washington 98421

**RECEIVED**
FEB 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF COLUMBIA

Antolin Andrew Marks,

Plaintiff,

vs

John P. Torres, Director of ICE

Jack Bennett, AFOD

Neil Clark, Field Office Director

Defendant

Case No.: 07-1660 EGS
**PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

**Noted for March 21st, 2008**

    The Plaintiff comes to the Court to pose his Opposition To The Defendants' Motion To Dismiss Or Transfer This Case and states:

PROCEDURAL HISTORY

    As the Court can see from the Defendants' Exhibits to their Documents, the matter was originally filed in Washington State District Court against Jack Bennett, Michael Melendez, and Neil Clark. The Plaintiff would urge that the Court pay judicial notice to the PACER documentation regarding the case filed therein, 07-5372 RBL JKA and the Court will see the fact that **A. The matter was not filed against John P. Torres; 2. The matter was not litigated on the merits. 3. The matter was not commenced as the IFP was not granted.** These facts weigh heavily against the Defendants' attempt to paint this matter as "frivolous" "malicious" and "duplicative".

    For the reasons that follow, the Defendants' misguided motion must be denied.

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

- 1 -

**FACTS**

John P. Torres is the Director of Removal Operations under Immigration Customs and Enforcement which is an Agency under Department of Homeland Security. As such, John P. Torres is the top official of the Agency and, as the Chief of the Agency, his duties includes the training of the staff who work for him. This suits charges that Mr. Torres has failed to adequately train his underlings and, because of such failure to train, has violated the Plaintiff's substantial constitutional rights.

**DEFENDANTS' POSITION**

Defendants' position appears to be: 1. The matter was first brought in Washington District and res judicata should apply. 2. If res judicata does not apply the matter should be transferred to the Western District of Washington based upon original jurisdiction. They are wrong on both counts and their motion should be dismissed.

**ARGUMENT**

**RES JUDICATA DOES NOT APPLY IN THIS CASE**

It Is without dispute that 28 USC 1921 grants this Court authority to screen and determine the initial merits of any action filed in pro se using the provisions of 1915 (a).

Defendants argue, "Defendants hereby move this Court to dismiss the Complaint filed by Plaintiff Antolin Andrew Marks, who is proceeding in forma pauperis as frivolous or malicious pursuant to 28 USC 1915 (e) (2) and Fed. R. Civ. P. 7 & 8 because the complaint duplicates claims first brought by Plaintiff in two related cases filed in the United States District Court for the Western District of Washington at Tacoma where he is incarcerated…."

The Defendants must first meet the factor of proving that this Court lacks jurisdiction. To complain that the suit "duplicates claims" is a claim of res judicata. In this case, there can be no res judicata in the case as the case has never been heard by any court. The merits of this case has not

been reached by any court. **Moreover, their assertion to relief is patently faulty in that once IFP has been denied for the filing of a case, the case has never been "commenced" and res judicata does not apply.**

In this case, the Washington cases were never commenced as the Court denied In Forma Papueris based upon a disagreement regarding the Plaintiff's funds. The issues were never reached in the cases and the matter was dismissed by the Court. The Order of dismissal of the matter, Defendants' Exhibit E, shows the District Judge stated the following, "The Court adopted the Report and Recommendation and denied Plaintiff's application to proceed in forma pauperis. Plaintiff was directed to pay the filing fee within 30 days of the date of that Order, otherwise the action would be dismissed. Thirty days have passed since the Order Adopting the Report and Recommendation was entered on October 1, 2007, and the filing fee has not been paid. Accordingly, it is Ordered that this cause of action is dismissed."

Under Fed.R.Civ.P. 3, a civil action is not commenced until the complaint is filed. In accordance with Fed.R.Civ.P. 5(e), papers and pleadings, including the original complaint, are considered filed when they are placed in the possession of the Clerk of the Court. *See* C. Wright & A. Miller, *Federal Practice and Procedure* 1153 (1969); *see also Moffitt v. United States*, 430 F. Supp. 34, 36 (E.D. Tenn. 1976) Bernadin v INS, 2002 U.S. Dist. LEXIS 8766, (E.D. N.Y. 2006). For Res Judicata to apply as the Defendants would have the Court order, there must have been, not only the filing of a complaint, but the adjudication of the complaint on the merits. Here, there was neither, so the matter is neither duplicative, nor is it subject to a res judicata bar. Hence, it is also not frivolous or malicious. Rule 3 of the Federal Rules of Civil Procedure reads: '**A civil action is commenced by filing a complaint**

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

**with the court.**' As has been shown, there was no complaint filed here, so a civil action was not commenced and the power of the District Court was not properly invoked. McNeil v. United States, 508 U.S. 106, 112, 124 L. Ed. 2d 21, 113 S. Ct. 1980

### THE DISCTIRCT OF COLOMBIA IS THE PROPER FORUM

The Suit was brought against John P. Torres, a citizen of the District of Columbia. As this is the undisputed fact, 28 USC 1931 (b) clearly refutes the Defendants' assertions that the matter must be transferred to Washington State. Section 1391(b) states: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides …" As the statute clearly defines, "Venue is generally governed by 28 U.S.C. 1391. That statute provides that, in cases where the Defendants are federal agencies or officials, venue is proper in: (i) a district in which a Defendant resides; (ii) a district in which a substantial part of the events at issue occurred; or (iii) the district where the Plaintiff resides. 28 U.S.C. 1391(e). " Here, the criteria under 28 USC 1391 is clearly met because John P. Torres is a citizen fo Washington, D.C. and the Court's jurisdiction over him is iron clad. This is not a case that primarily challenges the actions of the lower rung defendants, it challenges the fact that John P. Torres, had he properly trained those persons, the Plaintiff's rights would not have been injured.

Smith v. Sperling, 354 U.S. 91, 93 n.1, 1 L. Ed. 2d 1205, 77 S. Ct. 1112 (1957). provides that an individual's residence at the time the law suit is commenced is prima facie evidence of his domicile. See Krasnov v.

*Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972); *see also District of Columbia v. Murphy*, 314 U.S. 441, 455-56, 86 L. Ed. 329, 62 S. Ct. 303 (1941) (residency for purposes of state taxes). Here, it is incontrovertible that John P. Torres resides and works in Washington, D.C.

Defendants cannot argue that John P. Torres is not a citizen of Washington, D.C.. Further, they cannot reasonably argue that events leading to the suit did not occur in Washington, D.C. as the suit targets the mens rea of John P. Torres. The suit challenges the decisions made by John P. Torres and those decisions were made in Washington, D.C. The Defendants, in essence, claim that the Plaintiff may not opt for one district over another when filing his action. It is not dispositive that suit was first sought to be brought in Washington State Federal Court. That suit sought damages against the employees of John P. Torres. This suit, on the other hand seeks "suit for an injunction **for: denial of due process guaranteed by the fifth amendment and under the privacy act and the FOIA**" as stated in the **complaint's caption.**

What the Defendants assert is untenable. They assert that the Plaintiff may not seek damages in one suit against certain defendants and then seek an injunction in another suit in another forum against their employer. There is absolutely no precedent that supports such a restriction on the right to sue, and there is no precedent that supports this absurd position.

Defendants state that the matter should be transferred because "all relevant witnesses and records relating to these disputes are located" in the Tacoma District of Washington. They are incorrect. The issues herein are whether John P. Torres failed to properly train his employees. The training

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

mechanism for those employees emanate from the State of Washington, D.C.. The guidelines and regimen occur in Washington, D.C. The action by Torres occurred in Washington, D.C. John P. Torres is headquartered in Washington, D.C. Thus, the suit is properly brought in Washington, D.C.

### MERITS OF THE CASE

As a first matter, the Court should notice that there is no matter currently pending in the Washington State Federal District Court on the issue of John P. Torres' actions or inactions. The suit described by the Defendants was never refilled. There is a suit in that District seeking damages from Michael Melendez and Gary Garman and Jack Bennett for violating FOIA and for violating the due process of the Plaintiff. Here, this suit challenges only the failure of John P. Torres to properly train the officials he hires to work under him.

Plaintiff asserts that the suit has merit and should be held in this Court's jurisdiction. First, it is an absolute uncontrovertible fact that a detainee who is indigent has the right to have his legal mail sent by the institution where he is confined and such mailing shall occur at the expense of the government or holding body.

Second, it is an absolute uncontrovertible fact that letters to lawyers must be mailed by the facility wherein the person is held and if he is indigent the mail must be sent at government expense.

Third, it is an absolute fact that an Agency must comply with the demands of the Freedom of Information Act and the Privacy Act.

Fourth, it is an absolute fact that an Agency must comply with the subpoenas that have been filed with it.

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

In this case, John P. Torres' lack of training led the underlings to devise plans and procedures that prevented the mailings and that prevented the disclosure of information sought through subpoenas and FOIA. In fact, the record will show that the Plaintiff submitted for mailing 285 letters to the congress and Senate's Democratic Members. This mailing was done in February of 2007. To this very date, there have not been one single response. That fact can only provide one answer, the letters were not mailed.

The Plaintiff submitted for mailing 244 letters to law firms seeking representation in his case as he is a citizen of the United States held by Immigration Services. There has been not one single response meaning that the reasonable assumption is that the letters were not mailed.

The Plaintiff has requested the file that purportedly pertains to him on numerous occasions using FOIA, the Privacy Act, and Subpoenas. Those files have never been produced.

**When the actions above occur under the policy of John P. Torres, and the Law of the United States provides contrary results, it must be and can be asserted that John P. Torres has failed to properly train his underlings.**
In fact, where the evidence will show that the Defendants do not even know their own policies and fail to follow their own policies, John P. Torres, under *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S. Ct. 499, 98 L. Ed. 681 (1954) John P. Torres can be ordered to obey his written policies.

Plaintiff sent for mailing requests to 27 embassies. Those letters were not mailed until a month later after the Plaintiff contacted the Court. It is actions like these that presaged that a suit must be filed in Washington,

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

D.C. against Mr. Torres because it is quite evident that his employees are not properly trained and it is he who must ensure such training takes place.

Finally, the Defendants state, "Clearly, this case could have been brought in the Western District of Washington", but they misconstrue the law. Their use of the word, "Could" clearly deflates their position. The word "could" connotates only the discretion to do something. There is no precedent that demands that the suit shall be brought in the Western District of Washington. Thus, the Defendants do not have a right to have this suit transferred.

As a final matter, defendant's argument that the "first-filed rule" plays a role here is mistaken. *See, e.g., Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) (the first-filed rule provides that "where the same parties have similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined."). The first-filed rule is generally applied only where the issues in the two cases are identical or where there is "substantial overlap" between the legal issues presented.[1] Where, as here, the case sought to be transferred is not identical, but

---

[1] *See TPM Holdings, Inc. v. Intra-Gold Indus.*, 91 F.3d 1, 4 (1st Cir. 1996) (noting that first-filed rule typically applies where overlap between two suits is "nearly complete," but in the event the overlap is "less than complete," transfer decision requires consideration of other factors); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (application of first-filed rule requires "substantial overlap" of issues); *see also* 17 James Wm. Moore et al., *Moore's Federal Practice* 111.13[1][o][ii] (3d ed. 2004). The Fourth Circuit has not yet adopted the "mirror image" requirement or a requirement of "substantial overlap." It is unnecessary to reach or decide this issue, however, because transfer is plainly warranted on the basis of the judicial economy gains to be had from litigating these related cases in the same forum.

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

related or similar to the cases pending in the transferee district, the first-to-rule is not the chief concern. Instead, in these circumstances, the more important consideration is judicial economy in having the same judge consider the same underlying facts and issues only once and thereby guarding against inconsistent results. <u>Ship Management, Inc., v Maersk Line, Limited, 357 F. Supp. 2d 924 (2005 E.D. VA)</u>. Here, the Defendants must fail because, quite simply, there is no matter filed in the Washington District. There was never a suit commenced and there is absolutely no reason for this Court to consider a transfer because there is no duplication of effort and there can be no inconsistent results as this is the only matter that is pending

For these reasons, the Plaintiff respectfully urges that the Court deny the Defendants' Motion and sets this matter for trial. The Plaintiff does note to the Court that he did offer the Defendants an opportunity to cease litigation on this suit. See attached letter. That letter was ignored. This matter should continue to trial because the Defendants are all wrong on the issues they have presented and the Plaintiff is provably correct on all the position she has taken in this litigation.

As a final matter, the Plaintiff notes that most of the Defendants' Exhibits, A, and G are not pertinent to the discussion of the issues herein and should never have been included by the Defendants..

Submitted on the date of 2-19-08

---

**PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.**

- 9 -

1  Antolin Andrew Marks

6  PROOF OF SERVICE

7  &

8  **DECLARATION**

I, Antolin Andrew Marks, AVER THAT I AM A PARTY TO THIS ACTION DO HEREBY AVER THAT I HAVE PROVIDED A COPY OF THE FOREGOING DOCUMENT:

**PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO DISISS OR TRANSFER**

    John G. Interrante
    Jeffrey Taylor
    Rudolph Contreras
    Assistant United States Attorney
    555 Fourth Street, N.W.
    Washington, D.C. 20530

THE ITEMS WERE MAILED FIRST CLASS MAIL ON THE DATE BELOW. Under the penalty of perjury of the laws of the United States.

SUBMITTED ON 2-19-08

Antolin Andrew Marks

PLAINTIFF'S OPPOSTION TO THE DEFENDANTS' MOTION TO DISMISS.

**Antolin Andrew Marks**
**1623 E. J. Street, Suite 5**
**Tacoma, Washington 98421**

Jeremy A. Taylor
Rudolph Contreras
John G. Interrante
Attorneys At Law
United States Attorney's Office
555 4th Street, N.W. R          Room E-4806
Washington, D.C. 20530

Dear Jeremy A.Taylor, Rudolph Contreras, John G. Interrante:

From your filings for extensions of time with the Court to respond to my filing in **Marks v Torres, Etal, 07-1660 EGS,** it appears that your offices are struggling to respond in this matter. In particular, it appears that your offices have not been able to fathom the issues that have been presented and why this has been presented in this jurisdiction in the first place. This letter is to inform you of the circumstances and to allow you the fullest information with which to make your decisions.

In short, this is an attempt to alienate the need for litigation of the issues of the Complaint if we can come to some agreement on the issues.

First, I inform you, as you should know, every claim to right made in the Complaint is supported by the ICE National Standards.

Second, I am aware that you shall attempt to claim res judicata on the claims, but none of these claims have ever been heard in any court previously. An attempt to make such a claim will utterly fail.

Moreover, as you have determined, I am a litigator who have the ability to file in any jurisdiction. The risk of dissatisfaction necessarily carries with it the risk that I will have to litigate the issues again and again, especially since I am right on the issues that are presented. This does not mean that I am disrespective of the process, it merely means that I shall not be deterred when I know that what I seek is right and just. As far as I concerned I have a right to bring suit, and that suit has a right to have a proper hearing to jury trial given the facts of each case. When that right is violated by shenanigans that involve blatant bias by the court and misrepresentations by the Defendants, further causes must be advanced until the Defendants see the light. That can be avoided in this case if we can come to an agreement on the issues.

The Complaint states the following claims for relief:

 a) **Order that the Defendants shall immediately mail all the letters that have been presented by the Plaintiff for delivery to Congress where he seeks a Private Bill. (Even after a hearing on this matter and the time that hearing would take, the letters would still be delivered prior to the time the Defendants contemplate by their five letter restriction.)**

 b) **Order that the Defendants allow all detainees to petition Congress on behalf of their Immigration Status or any other matter.**

 c) **Declare that the Detainees have the right to Petition Congress, and that Plaintiff has a special right as he is an American.**

 d) **Declare that the right to Petition is a legal right given that Detainees may receive the benefit of a private bill from Congress upon such petition.**

e) Declare that detainees who are indigent have a right to the mail to legal entities, such as Congress, be paid for by the facility that holds them.

f) Declare that the limitation of the Plaintiff to five special correspondence letters per week is unreasonable given the fact that the Plaintiff has over ten cases pending in the Courts of the United States.

g) Declare, specifically, that letters to Congress are protected communications under the First and Fifth Amendment.

h) Declare that it is unreasonable that the Plaintiff cannot send all his mail to Congress at once where, ultimately, Defendants will pay for each piece anyway if they are sent five at a time.

i) Cause the Defendants to provide proof that they mailed the original letters that the Plaintiff sent to Congress from which he has not received one answer.

j) Declare that it was unreasonable for the Defendants to not consider the Plaintiff's offer that the Defendants use the 100. Money Order for postage.

k) Declare that the fact that the Defendants purportedly sent the first 285 letters to Congress makes it unreasonable that they would not send the follow up letters.

l) Declare that mail to Congress meets the definition of legal mail and special correspondence.

m) Declare that the Plaintiff has a right to have the Defendants follow their own written rules where those rules protect the due process of the Plaintiff.

n) Declare that the routine of seeking and gaining a Private Bill from Congress is a legal mechanism available to detainees.

o) Declare that the Defendants shall not open legal mail or special correspondence that is outgoing from any detainee, consistent with the written rules of the Defendants.

p) Declare that the Defendants may not copy, read, or fax to their counsels any legal materials that is prepared by the Detainees unless the Detainee specifically requests that a member of the Defendants or their staff do so.

q) Declare that incoming special correspondence, as described by the ICE National Standards shall may be opened to check for contraband but shall not be read, copied by the Defendants or their staffs.

r) Declare that outgoing or incoming letters to newspapers, reporters or other print media may not be opened, read, copied by the Defendants, but may only be checked for contraband when the letter is incoming and such checking does not include reading the document or "scanning" the document.

● Page 3    February 19, 2008

s)  Declare that communications to Embassies shall not be opened when the letter is outgoing and may only be inspected for contraband, without reading, if the letter is incoming.

t)  Declare that Plaintiff's copies are to be copied immediately and shall not be held for overlong periods, and in any case shall be returned to the Plaintiff the same day or, at the very latest, the next day after being presented for copying.

u)  Declare that documents printed in the library by the detainees shall not be subjected to reading or scanning by defendants or their employees. That all documents may be looked at on the face of the document to determine whether it is legal or not, but may not be read.

v)  Declare that under no conditions are the defendants to read confidential legal mail or special correspondence.

w)  Direct that detainees shall not be ordered to open their special correspondence that is outgoing for any reason.

x)  Direct that the Defendants shall not return any item received in the mails without allowing the detainee an opportunity to appeal the matter and Defendants shall hold the item in question until such time that all appeals are exhausted administratively and, if court action is sought by the detainee, until such court action is exhausted through the first level of appeals with the Court.

y)  Direct that when the detainees direct that their mail be sent by first class mail it must be sent by first class mail except that the defendants may place mail directed to an internal person into the mail box of that internal person.

z)  Direct that the defendants provide the Plaintiff a copy of all the grievances that they hold with the Plaintiff's name (s) upon those grievances and that a full and complete copy of the Geo Custody File be presented to the Plaintiff.

Of the above, items only items X and Z are not negotiable. It is my contention that items A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V W, Y, are items that are amply covered by the ICE National Standards. The suit has been brought because the people in question at the Northwest Detention Center, have failed to obey the dictates of the ICE National Standards. Mr. John P. Torres, your primary client, is the Chief of Detention and Removal, and, as Chief, he has a duty to ensure that these people are properly trained and follow the ICE National Standards.

It is my proposal that if Mr. John P. Torres signs a statement wherein he states that he will ensure that Jack Bennett, Neil Clark, and Michael Melendez will be properly trained and they will follow the ICE Standards in the future, these claims: A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V W, Y, will be dismissed with prejudice to refilling in any other venue.

● Page 4                                                                February 19, 2008

Secondly, the item stated in Paragraph X, is something that should have been examined under the prism of the ICE National Standards and the common principle of due process. I would urge that John P. Torres agree to look into the situation where items of mail are returned by Northwest Detention Center without giving the detainee an opportunity to contest the decision to return the item. At issue is the fact that documents related to asylum proceedings, evidence in removal proceedings, and other documentations, **many from counsels**, are returned to sender by the facility without any opportunity to contest the item's return. This has been responsible for the violation of due process to several detainees. A statement that the item is being returned, **after it has been returned**, is plainly insufficient. Northwest Detention Center must allow the item to be grieved and through the grievance the item most probably will be opened and the Center will then see that the item is legal in nature. The blanket return of items without any opportunity to contest the return is violative of due process and should be halted. If Mr. Torres agrees to look into the issue, it is my belief that he will ultimately do the right thing in this regard and cause change in the practice. Thus, upon such agreement, this claim can be dismissed with prejudice.

Finally, absolutely not negotiable is the fact that I must be given a copy of the ICE Grievance File and the Geo Custody File. The documents within those files are documents that are obtainable under the Freedom of Information Act and the Privacy Act. In fact, just under a request, the documents should be provided, but the Northwest Detention Center's ICE officials have been denying me a copy of my grievances and my custody file, **despite the fact that I have made numerous requests for the documents.** This is not negotiable. Mr. Torres must agree that I shall have a copy of my grievances and a copy of the Geo Custody File bearing the name they hold me by, Rudder, 34 316 600.

I would urge that you take these items seriously into consideration. I would approve an additional forty-five days beyond the February 10th, 2008 deadline for an answer if you opt to look into the proposed agreement seriously. You may inform the Court that I have agreed to such an extension to March 25th, 2008 for your response.

I am a person who litigates a lot of cases in the Courts. I have had measured success in my pleadings and have been published Three time sin the Ninth Circuit and once by the Court of Appeals of California. This is to say that I would not bring a frivolous matter into the Courts. This matter is neither duplicative or repetitive.

I would urge you to interact with your clients and seek that this matter be dismissed.

Finally, I note your statement that because I am incarcerated you have difficulty gaining my attention. You may contact me by calling 253 396 1611 and leaving a message for my A # 34 316 600. You may also contact Tim Black, my Deportation Officer at 253-779-6068 and he will relay any message to me. You may fax documents to 253-779-6096 and they will be received. You should reference my name and A # on any communication you fax.

I look forward to hearing from you.

Sincerely,

Antolin Andrew Marks