# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| | : | |
| ANTOLIN ANDREW MARKS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-1660 (EGS) |
| | : | |
| JOHN P. TORRES, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss Complaint as

Frivolous or Malicious Or, in the Alternative, Motion to Transfer, and to Stay Further

Proceedings Pending Disposition of the Motion.  For the reasons stated herein, the Court will

transfer this action to the United States District Court for the Western District of Washington.

## I.   BACKGROUND

Plaintiff is detained by U.S. Immigration and Customs Enforcement ("ICE") at the

Northwest Detention Center ("NWDC") in Tacoma, Washington.  *See* Compl. at 1 (first ¶ 1).

According to ICE's website (http://www.ice.gov/pi/dro/facilities/tacoma.htm), NWDC is a

temporary detention center operated under contract with The GEO Group Inc. for individuals

awaiting either a determination of their immigration status or repatriation.

On or about February 2, 2007, plaintiff prepared for copying and mailing "a letter to the members of Congress who are Democrats, a copy of the Visa Application for Rudder, Wayne,[1] a scan of four pictures showing the Plaintiff at the age of 19, one document showing Rudder at the age of 14, and the exact same documents to the Senators who are Democrats and Independents." Compl. ¶ 14.  Plaintiff "presented 285 letters to [Michael] Melendez to be mailed to Congress."[2] *Id.*  Through these letters, plaintiff sought "a private bill to his benefit for assistance in his immigration case[.]" *Id.* ¶ 10.

After 120 days had passed without "one single response . . . from those letters," Compl. ¶ 14, plaintiff came "to believe that [Mr.] Melendez did not mail the letters as he stated he did." *Id.*  Plaintiff then prepared 285 "follow-up letters" and submitted them for mailing.  *Id.* ¶ 16. According to plaintiff, Mr. Melendez refused to mail the letters on the ground that they were "special correspondence" subject to a limit of five items per week.[3]  *Id.*  Legal mail was not

---

[1]      It appears that plaintiff is also known as Wayne Rudder.  Plaintiff "has used or has been known by over fifty aliases, including Vincent Daniel Hopper, Wayne Ricky Elison Rudder, and Antolin Andrew Marks."  *Marks v. Clark*, No. C06-1796-RSM, 2007 WL 2042243, *1 (W.D. Wash. May 29, 2007) (Magistrate Report and Recommendation on Marks' December 18, 2006 petition for writ of habeas corpus), *adopted as modified,* 2007 WL 2042242 (W.D. Wash. July 10, 2007).  His "fingerprints match the fingerprints of alien Wayne Ricky Elison Rudder, who is a native a citizen of Trinidad and who was admitted to the United States on or about March 7, 1974, as an immigrant."  *Id.*

[2]      Mr. Melendez is not a named defendant.  It is unclear whether he is an employee or official of ICE or an employee of The Geo Group, Inc.

[3]      The term "special correspondence" means:

detainees' written communications to or from private attorneys and other legal representatives; government attorneys; judges, courts; embassies and consulates; the president and vice president of the United States, members of Congress, the Department of Justice (including INS and the Office of the Inspector General); the

(continued...)

subject to such limits.  Rather, according to plaintiff, regulations provided that "[i]ndigent

detainees will be permitted to mail . . . at government expense . . . [a]ll correspondence related to

a legal matter, including correspondence to a legal representative, potential legal representative

and any court."  Compl. ¶ 22.  Mailing the 285 letters at the rate of five per week "mean[t] that it

would take Plaintiff a full year, one month and one week to send all the letters to Congress."  *Id.*

Plaintiff contends that his follow-up letters to Congress qualified as legal mail because

they are related to the "legal matter" of his immigration case.  *See* Compl. ¶¶ 39-42.  He asserts

that he has a right to petition Congress and that defendants' refusal to mail the follow-up letters

at government expense violates his First Amendment right to petition Congress and his Fifth

Amendment right to due process.  *See id.* ¶ 41.  Plaintiff brings this action against John Torres

for his alleged failure to train and supervise his subordinates, Jack Bennett and Neil Clark, with

respect to the due process rights of detainees and compliance with national detention standards

on the handling of detainees' mail.[4]  *See* Compl. ¶¶ 1-4, 42-43.  He further alleges that

defendants unlawfully opened legal and confidential mail, *see id.* ¶¶ 63-94, copied legal

---

[3](...continued)
U.S. Public Health Service; administrators of grievance systems; and representatives
of the news media. Correspondence will only be treated as special correspondence
if the title and office of the sender (for incoming correspondence) or addressee (for
outgoing correspondence) are unambiguously identified on the envelope, clearly
indicating that the correspondence is special.

ICE/DRO Detention Standard on Correspondence and Other Mail at 4.  The Operations Manual
ICE Performance Based National Detention Standards is available on ICE's website
(http://www.ice.gov/partners/dro/PBNDS/index.htm).

[4]      Plaintiff alleges that Mr. Torres is ICE's Director of Removal Operations.
Plaintiff' Opposition to the Defendants' Motion to Dismiss or Transfer at 2.  It appears that Neil
Clark is the Director of the ICE Field Office in Seattle, Washington.  Plaintiff describes Jack
Bennett as the Assistant Field Office Director.  Compl. ¶ 13.

documents, *see id.* ¶¶ 95-101, and improperly returned legal mail to sender, *see id.* ¶¶ 102-116.

In vague terms, plaintiff also alleges that defendants "failed to provide the Plaintiff with a copy

of . . . documents in violation of the Freedom of Information Act and the Privacy Act." *Id.* ¶ 117.

He demands declaratory and injunctive relief. *See id.* at 36-39 (Remedy).

Prior to the filing of the instant civil action, in June 2007, plaintiff filed a civil action in

the United States District Court for the Western District of Washington.  Memorandum in

Support of Defendants' Motion to Dismiss Complaint as Frivolous or Malicious or, in the

Alternative, Motion to Transfer, and to Stay Further Proceedings Pending Disposition of Motion

("Defs.' Mot."), Ex. D (*Marks v. Garman*, Civ. No. C07-5282 KDB/KLS (W.D. Wash. filed

June 4, 2007) (Complaint)).  In addition to claims against the federal government under the

Freedom of Information Act, the Privacy Act and the Federal Tort Claims Act, plaintiff alleged

that "he ha[d] been subjected to mental torture in violation of the Eighth Amendment under the

hands of Neil Clark, Gary Garman and Michael Melendez," *id.* ¶ 38, who "saddled the Plaintiff

with the name[] Wayne Rudder where that name is not the Plaintiff's name." *Id.* ¶ 46.

Ultimately the court dismissed plaintiff's FOIA claims without prejudice, dismissed the

constitutional claims with prejudice, and re-referred the Federal Tort Claims Act claim to a

Magistrate Judge. *Marks v. Garman*, No. C07-5282 KDB/JKA, 2008 WL 3540177 (W.D. Wash.

Aug. 11, 2008).

In July 2007, plaintiff filed another civil action in the United States District Court for the

Western District of Washington naming Jack Bennett and Neil Clark as defendants. *See* Defs.'

Mot., Ex. B (*Marks v. Bennett*, Civ. No. C07-5372 RBL/JKA (W.D. Wash. filed July 23, 2007)

(Complaint)).  Generally, plaintiff alleged that, on July 17, 2007, defendant Bennett "denied the

Plaintiff the ability to send letters to Congressional Representatives [and] Senate Representatives of the Plaintiff's Party." *Id.*, Ex. B ¶ 11.  In language that is practically identical to that set forth in paragraphs 10-18 of the instant complaint, plaintiff alleged that defendants refused to mail 285 follow-up letters to Congress at the same time, and, instead, declared the letters special correspondence subject to a limit of five items per week. *See id.* ¶¶ 12-20.  Adopting the Magistrate Judge's Report and Recommendation, the court dismissed this action because plaintiff neither qualified for *in forma pauperis* status and nor paid the filing fee. *See id.*, Ex. C (Order of Dismissal and Judgment in a Civil Case).

Plaintiff has been declared a "vexatious litigant" against whom the United States District Court for the Western District of Washington has imposed sanctions. *See Marks v. United States of America*, No. C07-5679 FDB, 2008 WL 803150, *1 (W.D. Wash. Mar. 24, 2008) (order imposing sanctions and removing "his ability to proceed *in forma pauperis* . . . unless he can show he is in imminent danger of serious bodily harm or death").  Since plaintiff's transfer to NWDC in 2005, he had filed 24 civil actions "show[ing] a pattern of harassing duplicative litigation and abuse of process." *Id.*; *see id.* (Magistrate Report and Recommendation setting forth histories of plaintiff's 24 civil actions).

## II.  DISCUSSION

Defendants move to transfer this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). *See* Defs.' Mot. at 9-16.[5]

---

[5]    In the alternative, defendants move to dismiss the complaint with prejudice as frivolous or malicious. *See* Defs.' Mot. at 7-9.  Review of the instant complaint and two complaints filed in the Western District of Washington reveals substantial similarities in the factual allegations giving rise to plaintiff's constitutional claims regarding the handling of his

(continued...)

Under 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." *Id.*

Where, as here, the district court's jurisdiction "is not founded solely on diversity of citizenship," a plaintiff may bring the action only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). Similarly, a civil action against an officer or employee of the United States government "acting in his official capacity or under color of legal authority . . . may . . . be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

Generally, the courts defer to a plaintiff's choice of forum. *See, e.g., Sec. & Exch. Comm'n v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (citations omitted). Less deference is warranted where the chosen forum is not plaintiff's home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Zakiya v. United States*, 267 F. Supp. 2d 47, 59 (D.D.C. 2003) (quoting *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991)). "Courts in this jurisdiction must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). "By naming [a] high government official[]

---

[5](...continued)
mail. The complaints are not identical, and each raises a claim, or names a defendant or demands relief that another does not. The Court denies defendants' motion to dismiss without prejudice.

[such as Mr. Torres] as [a] defendant[]," plaintiff "could bring a suit here that properly should be pursued elsewhere." *Id.*

Plaintiff argues that venue in the District of Columbia is proper under 28 U.S.C. § 1391. He characterizes this action as a "challenge[] [to] the decisions made by John P. Torres and those decisions were made in Washington, D.C." Plaintiff's Opposition to the Defendants' Motion to Dismiss or Transfer ("Pl.'s Opp'n") at 5. Specifically, plaintiff alleges that defendant Torres "failed to properly train his employees," and the "training mechanism for those employees emanate[d] from . . . Washington, D.C." *Id.* at 4-5. His arguments are not persuasive, as the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C.[,] is not determinative." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002).

In this case, plaintiff not only alleges defendant Torres' failure to train, but also challenges defendants' interpretation and implementation of ICE regulations pertaining to legal mail and special correspondence. The interpretation and implementation of the regulations occurred outside of this district, however. Plaintiff, then, cannot establish venue in this district either on the ground that he challenges an ICE policy or that a high-level ICE official based in Washington, D.C. is a named defendant. The Court concludes that venue is not proper in the District of Columbia. This action could have been brought in the Western District of Washington – the district of plaintiff's current incarceration and the place where events giving rise to his claims occurred. *See Zakiya v. United States*, 267 F. Supp. 2d at 59 (citation omitted) (concluding that venue in this district is not appropriate where plaintiff made a specific attack on the implementation of a Federal Bureau of Prisons policy by BOP officials to plaintiff's

particular situation and the implementation occurred at the facilities where he was incarcerated and not in this district); *Stern v. Fed. Bureau of Prisons*, No. 07-0564, 2007 WL 1555830, at *2 (D.D.C. Mar. 22, 2007) (transferring federal prisoner's case challenging the validity of the Inmate Financial Responsibility Program implemented by the Bureau of Prisons to the district where the prisoner was incarcerated and where all the events that gave rise to the action occurred); *Dominguez v. Bureau of Prisons*, No. 05-2242, 2006 WL 1445041, *4 (D.D.C. May 25, 2006) (concluding that venue is appropriate in the district where the implementation of a national policy occurred).

In considering whether transfer would be proper, the court considers, among others, the following factors:

> [T]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial.

*Sec. & Exch. Comm'n v. Page Airways*, 464 F. Supp. 461, 463 (D.D.C. 1978).  It is appropriate to transfer a civil action to the district where plaintiff and most of the defendants are located, and to the district where both witnesses and relevant evidence likely are located.  *See, e.g., Rogers v. Fed. Bureau of Prisons*, 257 F. Supp. 2d 147, 148 (D.D.C. 2003) (transferring action filed by incarcerated *pro se* plaintiff to district where he is incarcerated, where "all relevant witnesses and files are located," and where plaintiff sought "mandamus relief not related to this district"); *cf. Boers v. United States*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (transferring action challenging

8

foreclosure to district where land that was subject to foreclosure is located).  In this case, the proper district is the Western District of Washington.

Transfer particularly is appropriate in this case.  It appears that plaintiff purposely divided his various claims among three complaints filed in two federal districts.  He notes in his complaint that "[a] sister suit was sent for filing days before this one . . . target[ing] Melendez and Clark and the United States and seek[ing] damages under the FTCA," while the instant complaint "is maintained primarily . . . for an injunction rather than for damages."  Compl. ¶ 58 n.1; *see* Defs.' Mot., Ex. D at 15 (Remedy).  Given the similarities in plaintiff's complaints and in light of the March 2008 injunction order, to allow plaintiff to proceed in this district may circumvent the well-founded filing restrictions imposed in the Western District of Washington.  Transfer "avoid[s] the prospect of a litigant using one district court as a safe haven from the lawful orders of another."  *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (per curiam); *see Reddy v. O'Connor*, 520 F. Supp. 2d 124, 133 (D.D.C. 2007) (transferring action under § 1404(a) to the district where plaintiff and "virtually all of the remaining named parties are located," notwithstanding "the adverse decisions she has thus far received in those courts, including an order that limits her ability to file suit without leave of court"); *Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142, 151 (D.D.C. 2003) (transferring civil action where claims duplicate those advanced in plaintiff's suits in another district in order "to prevent the plaintiff from using this court as a 'safe haven'" from orders issued by another district court).

The court notes that the injunction order had not been issued at the time plaintiff filed the instant civil action in this district, and this court declines to consider whether it applies to the instant civil action.  The court is confident, however, that the judges of the Western District of

Washington are better positioned to determine whether the claims alleged in the instant

complaint are indeed duplicative of those set forth in plaintiff's prior cases or whether the claims

otherwise warrant further consideration.

An Order consistent with this Memorandum Opinion will be issued separately.


Signed:         EMMET G. SULLIVAN
                United States District Judge

Dated:          September 18, 2008